**Sheehan & Associates, P.C.**

505 Northern Boulevard, Suite 311, Great Neck, NY 11021
tel. 516.303.0552
fax 516.234.7800
spencer@spencersheehan.com

August 13, 2019

District Judge Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     1:19-cv-00768-BMC
        Sharpe v. A & W Concentrate Company et al

Dear District Judge Cogan:

This office, along with co-counsel Michael Reese, of Reese LLP, represents the plaintiff. On August 1, 2019, the parties exchanged expert reports, in accordance with your Honor's Discovery Scheduling Order.  ECF Order, May 31, 2019.  The analytical chemist who conducted the testing for plaintiff, Dr. Thomas G. Hartman, Laboratory Director, Mass Spectrometry Facility, Center for Advanced Food Technology, Rutgers, The State University of NJ, has informed plaintiff's counsel that he does not wish to be deposed, for two reasons.

First, Professor Hartman has cited, and his Faculty Page confirms, his ongoing work on behalf of industry clients, which include the largest carbonated soft drink and flavor companies in the world.  Dr. Hartman reasonably does not wish to jeopardize his economic livelihood by expounding upon the results of his findings through oral testimony, which may negatively impact those in industry – current and prospective clients.  This office has made diligent attempts to convince Dr. Hartman to be deposed, but his position is firm, and given his explanation, it is also reasonable.  At the time Dr. Hartman performed the analysis provided by plaintiff to the Court and defendants, counsel was not aware of Dr. Hartman's position or his unwillingness to testify against the industry from which he earns a living.

Second, Professor Hartman has emphasized to me that he is an analytical chemist in material science, who specializes in chromatography, including gas chromatography–mass spectrometry (GC-MS), an analytical method that separates different substances within a test sample.  Dr. Hartman stated that whether his test results reveal the presence of compounds derived from actual vanilla beans is a question he is not suited to answer, but appropriately addressed by a flavor chemist, a sub-specialty of analytical chemistry.  I have been informed that while an analytical chemist carries out testing through a machine, a flavor chemist is someone who interprets these results and is responsible for identifying the compounds and molecules associated with natural and artificial flavoring sources in food.

This detection is particularly specialized with respect to identifying flavor derived from vanilla beans in a food, detectable through volatile trace compounds.  This is because it is required to have detailed knowledge on the source of the natural flavoring ingredients and their chemical composition.  Further, since flavor chemists have backgrounds in advanced chemistry in addition to extensive industry experience, they are more capable in knowing the adulterants and markers for vanilla flavors.

1

Dr. Hartman recommended to plaintiff's counsel that Dr. Daphna Havkin-Frenkel, testify with respect to his GC-MS analysis and serve as the designated expert in this action.   He recommended Dr. Havkin-Frenkel based on her familiarity with his lab operations at Rutgers University, her decades of experience as a flavor chemist in private industry, her academic and scholarly background, including editorship of the leading reference work with respect to vanilla[1], and their work and training together on vanilla issues, from graduate studies to the present.  Dr. Hartman has advised me that though he believes his report speaks for itself, he will answer any questions about his methodologies, protocols, concentrations, etc., in writing.

What Professor Hartman proposed in lieu of his deposition appears consistent with Fed. R. Evid. 703.   See *Roman v. Sprint Nextel Corp.*, No. 12-cv-276, 2014 WL 5026093, *11-12 (S.D.N.Y. Sept. 29, 2014) ("Rule 703 allows an expert to proffer an opinion based on facts 'that the expert has been made aware of or personally observed,' or, alternatively, on facts or data that 'experts in the particular field would reasonably rely on' in forming the opinion."); *Reynolds v. American Airlines*, No. 14-cv-2429, 2017 WL 5613115, *6 (E.D.N.Y. Nov. 21, 2017) ("plaintiff fails to cite any provision of the Federal Rules of Civil Procedure that prohibits an expert from reviewing another expert's reports in order to come to his conclusions. In fact, Rule 703 of the Federal Rules of Evidence specifically contemplates that an expert witness may rely on inadmissible facts or data, so long as 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'").

In addition to trying to convince Professor Hartman to submit to a deposition by defendant's counsel, plaintiff's counsel has been diligently seeking a laboratory that can perform the same type of analysis performed by Professor Hartman.  This has been complicated because there are few laboratories that perform GC-MS of vanilla compounds and have the experience of Dr. Hartman in performing this kind of testing.[2]

Nevertheless, plaintiffs' counsel have engaged a laboratory as of last week to perform a GC-MS analysis, should the Court not permit Dr. Hartman to submit written responses to questions about his methodology or otherwise confirm to any interested parties that his testing was accurate and in accordance with all accepted standards of care.  While the laboratory plaintiff has engaged lacks the capabilities of Professor Hartman's Mass Spectrometry Facility, Dr. Hartman is willing to, and will, inform this laboratory of the protocols he followed.

Plaintiff's counsel previously informed defendants' attorneys that Dr. Hartman was unlikely to be deposed.  However, Dr. Havkin-Frenkel was willing to be deposed and offered to be available any time and day during the third week in August 2019.  Defendants' counsel indicated they wished to depose Dr. Hartman, since he performed the chemical analysis on the products.

In light of the above, plaintiff respectfully requests that should the Court not permit Dr. Havkin-Frenkel to testify regarding Professor Hartman's report, an extension be granted until September 15, 2019, to obtain a second GC-MS  report, coupled with the conclusions drawn by a

---

[1] Daphna Havkin-Frenkel, and Faith C. Belanger, eds. *Handbook of vanilla science and technology*. Chichester, UK: Wiley-Blackwell, 2011.

[2] Compared to GC-MS, defendants' testing method of high-performance liquid chromatography ("HPLC") is known in the industry as a less advanced and less accurate method for authenticating vanilla, due to its inability to generate and identify the numerous compounds and elements in a vanilla-type product; compare Dr. Hartman report, submitted May 24, 2019, identifying no fewer than 15 compounds, with defendants' report, identifying only four (4) compounds.

flavor chemist, and that depositions of plaintiff's experts occur by October 15, 2019.

Lastly, plaintiff requests that the Court instruct defendant to provide the flavor breakdown, or formula, for the entirety of the natural and artificial flavor ingredients in the products.  Presently, plaintiff has only been provided with one-half of the natural flavor ingredient.  The natural and artificial flavors consist of flavor compounds including ethyl vanillin, which are likely to resemble real vanilla bean flavor when observed in GC-MS analysis.  By knowing what other compounds and elements are supposed to be in the products, and their sources, the Court will be able to answer the question it posed to the parties about the presence of vanilla.  Thank you.

Respectfully submitted,
 /s/ Spencer Sheehan
Spencer Sheehan

Certificate of Service

I certify that on August 13, 2019, I served the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email |
|---|---|---|---|
| Defendants' Counsel | ☒ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ |

 /s/ Spencer Sheehan
Spencer Sheehan