**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LaShawn Sharpe, *individually on behalf of himself and all others similarly situated*,<br><br>                       Plaintiff,<br><br>    – against –<br><br>A&W Concentrate Company and Keurig Dr. Pepper Inc.,<br><br>                    Defendants. | No. 19-cv-00768-BMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

STANDARD FOR SUMMARY JUDGMENT....................................................................... 6

LEGAL ARGUMENT........................................................................................................... 7

    I.       DEFENDANT IS WRONG ON THE FACTS........................................................ 7

    II.      DEFENDANT IS WRONG ON THE LAW. .......................................................... 7

        A.  TECHNICAL ACCURACY DOES NOT INSULATE DEFENDANT FROM
            CLAIMS OF DECEPTIVE LABELING................................................................ 8

        B.  FINE PRINT DISCLOSURES DO NOT INSULATE DEFENDANT FROM
            CLAIMS OF DECEPTIVE LABELING.............................................................. 11

CONCLUSION................................................................................................................... 13

## TABLE OF AUTHORITIES

### CASES

*Ackerman v. Coca-Cola,* No. CV–09–0395 (JG)(RML),
2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................................................... 9

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ............................................ 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 6

*Atik v. Welch Foods, Inc.,* 15-CV-5405 (MKB) (VMS),
2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ...................................................... 8, 9

*Comfort v. Ricola USA, Inc.,* 19-CV-6089 CJS,
2019 WL 6050301 (W.D. N.Y. Nov. 15, 2019) ...................................................... 12

*GeBBS Healthcare Sols., Inc. v. Orion Healthcorp, Inc.*, No. 1:16-cv-2206-GHW,
2017 WL 1251143 (S.D.N.Y. Apr. 4, 2017)............................................................. 6

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......... 11

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000).................................. 6, 7

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005) ......................................................... 6

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM,
2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).......................................................... 10

*Mantikas v. Kellogg Co.,* 910 F.3d 633 (2d Cir. 2018)............................................. passim

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*, 18-CV-2250 (NGG) (RML),
2019 WL 3409883 (E.D.N.Y. July 26, 2019)........................................................... 9

*Sitt v. Nature's Bounty Inc.*, No. 15-cv-4199 (MKB),
2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ........................................................ 10

*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 (JG)(RML),
2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ...................................................... 10, 11

*Solak v. Hain Celestial Group, Inc*., No. 3:17 CV 0704 (LEK) (DEP),
2018 WL 1870474 (N.D.N.Y. April 17, 2018) ........................................................ 10

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).................................................. 12

## RULES

FED. R. CIV. P. 56 ............................................................................................................... 6

## REGULATIONS

21 C.F.R. § 169.175 ........................................................................................................... 2

Plaintiff LaShawn Sharpe ("Plaintiff") respectfully submits the following in opposition to the motion filed by defendants A&W Concentrate Company and Keurig Dr. Pepper Inc., (collectively, "Defendant") for Summary Judgment (ECF No. 28-1) ("Def. Mem."). For the reasons stated below, the Court should deny Defendant's Motion in its entirety.

## PRELIMINARY STATEMENT

Defendant's motion for summary judgment must be denied because it is premised on misstatements of the facts and the law.

With respect to the facts, Defendant erroneously states that "Plaintiff's claims are based on a single factual assertion: that A&W Root Beer and A&W Cream Soda are not made from real vanilla." Def. Mem. at 1. This is gross mischaracterization. The Complaint alleges that the "MADE WITH AGED VANILLA" claim emblazoned on the front labels of A&W Root Beer and A&W Cream Soda ("Products") is misleading and deceptive because consumers interpret it to mean that all the vanilla flavor comes from "aged vanilla" (which the Parties agree means vanilla extract sourced from vanilla beans), and not from non-aged vanilla sources.

Additionally, Defendant falsely claims that Plaintiff has no evidence to support his assertions. Def. Mem. at 1. This too is untrue. Even though only limited discovery has occurred to date, Plaintiff has well-established laboratory analysis, as well as the report of Dr. Havkin-Frenkel (a renowned vanilla expert), that show that there are synthetic, artificial vanilla flavors in the Products, which mimic vanilla flavor but are not derived from vanilla extract sourced from vanilla beans. Specifically the laboratory analysis and vanilla expert report evidence that ethyl vanillin, a synthetic chemical that is not derived from vanilla extract or vanilla bean, is in the Products. Defendant's expert also testified that a product containing artificial ethyl vanillin would be "misdescribed" if claimed to be flavored with vanilla.

Second, Defendant is dead wrong on the law. The Second Circuit in *Mantikas v. Kellogg Co.,* 910 F.3d 633 (2d Cir. 2018), reversed a district court when it dismissed an action based on the same arguments Defendant tries to make here. The Second Circuit held that when there is a "Made With" claim on the front of a food package, consumers should be able to assume that the ingredient that follows is the sole or predominant type of that ingredient, and not a lesser or minor ingredient. Here, the packaging of Defendant's Products state "Made With Aged Vanilla," yet the predominant (if not sole) source of the vanilla flavor is not from real vanilla, aged or otherwise, but rather from artificial sources. Accordingly, Defendant's contentions that there may be some amount of real vanilla in the Products are irrelevant to whether they have engaged in deceptive labeling, and this Court should refuse to be led astray by Defendant's mischaracterization of the facts or the law. Rather, this Court should deny Defendant's motion for summary judgment in its entirety.

## STATEMENT OF FACTS

### Vanilla Flavor from the Vanilla Bean

Vanilla comes from an orchid plant that was first cultivated in Mexico, but is now grown in other parts of the world as well. The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for real vanilla flavorings, including "aged vanilla." The vanilla bean is not consumed by itself. It is necessary to scrape the seed from the pod, infuse it, or extract it. Vanilla extracts are considered the product type most equivalent to vanilla and are defined by regulations as solution in aqueous ethyl alcohol of the sapid and odorous principles extractible from vanilla beans. *See* 21 C.F.R. § 169.175 ("Vanilla extract"). "Aged vanilla" is natural vanilla from vanilla extract that has been aged. *See* Declaration of Michael R. Reese in Support of Opposition to Motion

2

for Summary Judgment ("Reese Opp. Decl."), Exhibit A, September 12, 2019 Expert Report of

Daphna Havkin-Frenkel ("Frenkel Report").

**Defendants' Labeling of Its Products**

Defendants labels their Products as "Made with Aged Vanilla" as follows:



As seen above, Defendants' Products do not state on the front of the packaging "Artificial Vanilla"

or "Artificially Flavored Vanilla," or "Vanilla Artificial Flavored."

**The Predominant Source of Defendants' Vanilla Flavor Is Artificial Ethyl Vanillin**

The limited discovery conducted to date in this case has revealed that the vanilla flavoring

in the Products, as sold to consumers, does not come from aged vanilla extract sourced from vanilla

beans. Instead the flavoring comes predominantly from ethyl vanillin, which is an artificial

ingredient used as a cheap substitute for vanilla extract. None of Defendant's evidence in support

of its motion for summary judgment refutes the presence of ethyl vanillin.

3

The laboratory report from Alliance Technologies and Dr. Frenkel's expert report evidences that the Products contain ethyl vanillin, an artificial vanilla flavor not found in aged vanilla. *See* Reese Opp. Decl."), Exhibit A, (Frenkel Report), at ¶ 40 ("To the extent the Root Beer Products may taste similar to the flavor imparted by vanilla beans, this is likely due to the presence and relative amount of ethyl vanillin, covering an area of 0.71 %."), ¶ 44 ("The proportion of ethyl vanillin in the Cream Soda Products is more than ten (10) times the vanillin content, based on the relative area covered by their respective peaks - 4.61 % to 0.29%."); Exhibit 1 to Frenkel Report (Alliance Technologies Analysis of A&W Root Beer and Cream Soda for Vanilla Flavors concluding that ethyl vanillin is present in A & W Root Beer and A & W Cream Soda); 21 C.F.R. § 182.60 (listing ethyl vanillin as a one of several "Synthetic flavoring substances and adjuvants").

Defendant's own expert, Dana Krueger, testified under oath that Defendant's Products, as sold to the consumer, does not contain enough vanilla flavor derived from real vanilla, aged or otherwise, to reliably detect.

> Q:  Did you detect any vanillin in the retail shelf products? In other words, the A&W Root Beer and A&W Cream Soda that you yourself purchased from a retail store?
>
> A:  …[M]y recollection is that the correct analysis pretty much revealed nothing at levels that were high enough to reliably detect.

Reese Opp. Decl., Ex.B (transcript of deposition of defendant's expert Dana Krueger) ("Krueger Depo. Transcript") at 56:13-21.

Mr. Krueger then testified that with respect to the Root Beer Products, he could not tell whether the Root Beer Products contained any real vanilla, and with the vanilla flavor from the Cream Soda Products, it "is definitely not from vanilla."

> Q:  So as you sit here today, you cannot tell us whether or not the vanillin listed in Table 1 [for A&W Root Beer in the Krueger Report] is from a natural or synthetic

4

source; correct?

A:  I cannot say it definitely….

* * *

Q: And is the same true for the compounds listed in Table 2 [of the Krueger report for A&W Cream Soda]?

A: [I]n the case of the compounds in Table 2, they are not in proportions typical of pure vanilla extract. ***It's clear that most of the vanillin in the sample in Table 2 derives from a non-vanilla source. Whether it's synthetic or artificial---from the data available, I can't say. But it's definitely not from vanilla***.

Krueger Depo. Transcript at 61:4-62:1 (emphasis added).

Ms. Krueger then testified that if a product containing ethyl vanillin, a synthetic chemical,

it cannot be described as flavored with real vanilla.

Q:  And what is ethyl vanillin?

A:  Ethyl vanillin is a synthetic analog of vanillin.

* * *

Q:  And is it also your understanding that ethyl vanillin does not come from vanilla beans?

A:  Yes, that's correct.

* * *

Q: And if you were testing a product to determine if it . . . contained natural vanilla extract and results showed it had ethyl vanillin in it, what conclusion would you reach upon that?

A:  ***If we found ethyl vanillin in something that was purporting to be a vanilla extract, we would conclude that that was a product which was misdescribed.***

Q:  And why would you reach that conclusion?

A:  ***Because ethyl vanillin is not a constituent of natural vanilla extract.***

Krueger Depo. Transcript at 25:2-4, 26: 13-15, 37:4-15 (emphasis added).

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Defendant, as the moving party, has the burden to show it is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). In evaluating Defendant's Motion, the Court must "view the evidence in the light most favorable to the party opposing summary judgment, [] draw all reasonable inferences in favor of that party, and [] eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst.*, 101 F.3d 845, 854 (2d Cir. 1996)). The party opposing a motion for summary judgment must show there is an issue of material fact that is in dispute and set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *see also* FED. R. CIV. P. 56(c). Thus, "summary judgment should only be granted only if ***after discovery***, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (citing *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996)) (internal quotations omitted) (emphasis added).

It is important that the nonmoving party have "'***the opportunity to discover information that is essential to his opposition'* to the motion for summary judgment."** *Hellstrom*, 201 F.3d at 97 (emphasis added); *see also GeBBS Healthcare Sols., Inc. v. Orion Healthcorp, Inc.*, No. 1:16-cv-2206-GHW, 2017 WL 1251143, *5 (S.D.N.Y. Apr. 4, 2017) (summary judgment is the proper procedural device to consider facts unearthed in discovery). Consequently, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the

opportunity to conduct discovery." *Hellstrom*, 201 F.3d at 97. Here, Plaintiff has not yet been afforded the opportunity to conduct discovery on the issue that Defendant now moves for summary judgment. Therefore, if the Court is inclined to rule in favor of Defendant, Plaintiff respectfully requests the opportunity to conduct discovery to ascertain the truth of the facts that Defendant set forth in its Motion.

## LEGAL ARGUMENT

### I.    DEFENDANT IS WRONG ON THE FACTS.

Defendant argues that "Plaintiff has not met his burden of proving the absence of real vanilla in the A&W beverages." Def. Mem. at 4. As stated above, however, at issue here is ***not*** whether or not the Products contain some small amount of real vanilla (something that is in dispute here), but rather, whether ***any*** of the vanilla flavoring is not derived from vanilla extract sourced from vanilla beans. With respect to that question – does the vanilla flavoring in the Products come from any non-real vanilla sources – both Parties agree that the limited, expert-only discovery developed to date evidences that the vanilla flavoring comes predominantly from non-real vanilla ingredients. Specifically, much, if not all, of the vanilla flavor comes from ethyl vanillin, which is a synthetic, artificial flavor.

### II.    DEFENDANT IS WRONG ON THE LAW.

In the context of deceptive advertising claims, the Second Circuit uses the reasonable consumer standard: is the alleged act "likely to mislead a reasonable consumer acting reasonably under the circumstances"? *Mantikas*, 910 F.3d at 636. In moving for summary judgment here, Defendant ignores the two basic tenets of the reasonable consumer standard established by the Second Circuit, namely that: (1) even technically accurate statements are actionable under the

consumer protection laws, and (2) a reasonable consumer should not be expected to consult the fine-print ingredient lists to correct prominent misleading information.

### A. TECHNICAL ACCURACY DOES NOT INSULATE DEFENDANT FROM CLAIMS OF DECEPTIVE LABELING

The Second Circuit decision in *Mantikas* is on point and governs here.

At issue in *Mantikas* was whether the phrase "Made With Whole Grain" on the front of the packaging of Cheez-its crackers would lead consumers to believe that all (or at least most) of the grain in the products was from whole grain. The district court dismissed the case with prejudice, finding that no reasonable consumer would be misled by the "Made With Whole Grain" statement on the packaging because the products did, in fact, include some whole grain.

On appeal, the Second Circuit reversed the district court, finding that it had committed reversal error. The Second Circuit held that the "Made With" claim could convey to consumers that the grain in the product was exclusively, or at least predominantly, from whole grain – a fact that was not true given that the products contained non-whole grains. Specifically, the Second Circuit held that the:

> 'Made with WHOLE GRAIN' claims on front and center of the Defendant's packaging communicates to the reasonable consumer the false message that the grain content of the cracker is exclusively, or at least predominantly whole grain.

*Mantikas*, 910 F.3d at 638-39. In other words, the fact that the front label may have borne a technically accurate statement regarding grain content – *i.e.* that the products contained whole grain – was insufficient to dispel the plaintiffs' allegation that the "Made with WHOLE GRAIN" claim deceptively implied all or most of the grain came from whole grain. *See also Atik v. Welch Foods, Inc.,* 15-CV-5405 (MKB) (VMS), 2016 WL 5678474, *10 (E.D.N.Y. Sept. 30, 2016) (the phrase "Made With REAL Fruit," while technically true, still actionable because "a reasonable

consumer could expect a fruit snack to contain a significant amount of fruit, especially where, as here, the packaging and labeling emphasize the presence of fruit in the Products."); *Ackerman v. Coca-Cola,* No. CV–09–0395 (JG)(RML), 2010 WL 2925955, *12, (E.D.N.Y. July 21, 2010) (name "vitaminwater" actionable even though product contains vitamins and water).

It is uncontested that the predominant source of the vanilla flavor in the Product is from ethyl vanillin, a synthetic chemical not from the vanilla bean. Defendant nonetheless argue that the "Made with AGED VANILLA" claim is non-actionable as long as the Products contain some amount of real vanilla, whether aged or not, no matter how small and minute. Defendant makes the same doomed argument that has been repeatedly rejected, that its product need only contain some amount of the touted ingredient in order to defeat a claim of deceptive labeling. But the issue here is not whether real vanilla is present at all; rather it is whether Defendant's labelling may mislead as to the *relative* amount of real, aged vanilla. As the Second Circuit explained:

> The rule . . . that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling [and] would validate highly deceptive marketing.

*Mantikas*, 910 F. 3d at 638.

Defendant's attempt to distinguish *Mantikas* is unavailing. Defendants argue, "Unlike the crackers in *Mantikas*, no reasonable consumer would conclude that A&W Root Beer or A&W Cream Soda are made predominantly of vanilla – or, for that matter, that either beverage contains a particular amount of vanilla." Def. Mem.at 6. But the above quotation makes clear that the Second Circuit had a broader view of deception that applies to *any* specified ingredient.[1]

---

[1] Similarly, in *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, 18-CV-2250 (NGG) (RML), 2019 WL 3409883, *4 (E.D.N.Y. July 26, 2019), cited by Defendant (Def. Mem. 5), the court distinguished *Mantikas* on the basis that "Plaintiff did not allege that Defendant's mashed potatoes

9

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013), also is on point. In that case, the defendant (Frito-Lay) described a number of its snack products as being made with "natural" ingredients. 2013 WL 4647512, at \*1. At issue was just one of the ingredients (corn) that was alleged to be non-natural due the fact that it was a genetically modified organism (GMO), whereas it was uncontested that the other ingredients were natural. Defendant Frito-Lay argued (as Defendant here now argues) that it would be "objectively unreasonable for any consumer to view the inclusion of the word 'natural' on a product label as an implicit representation that the [product does not contain any synthetics]." *Id.* at \*13. The Court rejected this argument and denied the defendant's motion for dismissal. In reaching its conclusion, the court also cited a FTC's statement that a "product might be appropriately advertised as 'natural' **only if it does not contain <u>any</u> artificial or synthetic ingredients.**" *Id.* (emphasis added). *See also Sitt v. Nature's Bounty Inc.*, No. 15-cv-4199 (MKB), 2016 WL 5372794, \*14 (E.D.N.Y. Sept. 26, 2016) (prominent statements on label that the product was comprised of "Natural Whole Herb" and offered "Natural Menopausal Relief" "could lead a consumer to reasonably conclude that all ingredients are natural").

In *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 (JG)(RML), 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015), the use of artificially flavored root beer was at issue. In that matter, the defendant manufactured and sold a popular root beer beverage that the defendant marketed as a "Natural Brew Root Beer," "made from all natural ingredients," and "brewed in small batches with

---

contained more margarine than butter." Here, Plaintiff does allege that the vanilla flavoring from the Product is derived predominantly from artificial sources rather than real, aged vanilla. And the only other case relied upon by Defendant, *Solak v. Hain Celestial Group, Inc.*, No. 3:17 CV 0704 (LEK) (DEP), 2018 WL 1870474 (N.D.N.Y. April 17, 2018), was decided before *Mantikas* and conflicts with that decision.

the finest natural ingredients." *Silva*, 2015 WL 5360022, at \*1-2. The plaintiff brought an action for the same New York consumer protection claims at issue here, namely, New York General Business Law sections 349 and 350. The defendant moved to dismiss, arguing that no reasonable consumer could be misled by the "natural" representations and marketing to believe the product did not contain synthetics. *Id.* at \*9. The court rejected this argument and held:

> [The complaint includes] actual photographs of the Natural Brew label and packaging, and allege[s] that Smucker represents Natural Brew to be "natural," that it "blends tradition and quality, naturally," and is the result of "add[ing] vanilla extract and other natural flavors to our recipe," all of which are direct quotes from the label. The [complaint] further alleges that, "Smucker uses its 'Natural Brew' product line to fool consumers into believing that its root beer is not artificially flavored, colored, or chemically preserved. ***In so doing, Smucker has misled and deceived consumers, and it has violated consumer protection laws***.

*Id.* at \*9 (emphasis added).

In *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014), the plaintiff brought an action under New York General Business Law sections 349 and 350, alleging that the use of the term "Active Naturals" to describe an array of soaps and other personal care products was deceptive because the products at issue contained synthetic ingredients. The defendant moved to dismiss, arguing that no reasonable consumer could be misled by the "natural" representations and marketing to believe the products did not contain synthetics. The court rejected the defendant's argument—and denied the motion—noting that "Defendant prominently places the phrase 'Active Naturals' on the product packaging . . . [h]owever, Defendant allegedly fails to adequately inform consumers that most of the ingredients are synthetic and unnatural." *Id.* at 471.

Simply put, Defendant's summary judgment motion based on alleged (but disputed) technical accuracy is foreclosed by the law of this Circuit.

### B. FINE PRINT DISCLOSURES DO NOT INSULATE DEFENDANT FROM CLAIMS OF DECEPTIVE LABELING

Contrary to Defendant's argument, the supposed disclosures in fine print on the packaging do not rectify its misleading statements prominently stated on the front. Def. Mem. at 3, 5 ("The A&W Root Beer and A&W Cream Soda labels also conspicuously state, in multiple locations, that the beverage contains "natural and artificial ingredients," dispelling any confusion."). *Mantikas* again governs here and requires denial of Defendant's motion. The Second Circuit specifically rejected the notion that consumers must verify through inspection of small-print informational panels whether the phrase "whole grain" on the front of the label meant the food was, in fact, predominantly made with whole grains. The Second Circuit held:

> Reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.

*Mantikas*, 910 F.3d at 637; *see also Comfort v. Ricola USA, Inc.,* 19-CV-6089 CJS, 2019 WL 6050301, *4 (W.D. N.Y. Nov. 15, 2019) ("The Second Circuit's decision in *Mantikas* does not support [the defendant's] argument that labeling on the front of a package could be ambiguous and that additional labeling on the sides or back could clarify the ambiguity and render the front of the package not deceptive."); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("We do not think the FDA requires an ingredient list so that manufactures can mislead consumers and then rely on the ingredients list to correct those misrepresentations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."). Defendant cannot rely upon fine print disclosures to dispel the "MADE WITH AGED VANILLA" claim emblazoned on the front labels of the Products. Defendant does not use "aged vanilla" as the predominant vanilla flavoring in its Products, and it cannot prevail on its summary judgment motion.

12

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment should be denied.

Respectfully submitted,

Dated:  January 31, 2020                      **REESE LLP**

By: */s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
*spencer@spencersheehan.com*
505 Northern Blvd., Suite 311
Great Neck, New York 11021
Telephone:  (516) 303-0552
Facsimile:   (516) 234-7800

*Counsel for Plaintiff and the Class*