UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LASHAWN SHARPE, JIM CASTORO and CHRISTINE COONEY, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

A&W CONCENTRATE COMPANY and KEURIG DR PEPPER INC.,

Defendants.

---

**MEMORANDUM DECISION AND ORDER**

19-cv-768 (BMC)

**COGAN**, District Judge.

This is a putative class action brought under New York's consumer protection law. Plaintiffs are purchasers of defendants' root beer and cream soda beverages (collectively "the products"). They allege that defendants have misleadingly stated on the front of the products' labels that the beverages are "MADE WITH AGED VANILLA," even though the vanilla flavor comes predominantly – if not exclusively – from an artificial, synthetic ingredient called ethyl vanillin. Plaintiffs claim that consumers interpret defendants' representation to mean that the characterizing flavoring derives from the vanilla plant, not a cheap inferior substitute for the natural substance. Before me is defendants' motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) on two grounds: (1) that plaintiffs lack standing for injunctive relief; and (2) that a reasonable consumer cannot be misled because the products contain real vanilla and are conspicuously labeled as "Natural and Artificially Flavored."

The motion is granted in part and denied in part. Defendants' motion to dismiss plaintiffs' request for injunctive relief for lack of standing is granted. But plaintiffs have

adequately alleged that the "MADE WITH AGED VANILLA" representation on the front of defendants' packaging communicates to the reasonable consumer the false message that the vanilla flavoring comes from real vanilla, when in reality, the product contains no "aged vanilla" whatsoever. The complaint reiterates that, even if the products contain any aged vanilla, "it is in trace or *de minimis* amounts not detectable by advanced scientific means." Therefore, defendants' misleading message that the drink contains "aged vanilla" is not dispelled by the information that the beverages are "Natural and Artificially Flavored," which fails to communicate that the quantity of the artificial flavoring far exceeds the quantity of natural vanilla. Because plaintiffs have stated sufficient facts to make out claims of violations under New York General Business Law §§ 349 and 350 and unjust enrichment, defendants' motion to dismiss those claims is denied.

Defendants also seek reconsideration as to sanctions I imposed upon them for needlessly multiplying motion practice. This motion is granted in part, and I will reduce the sanctions imposed to $1000.

**SUMMARY OF COMPLAINT**

To understand this case, one must understand vanilla. Vanilla comes from an orchid plant, which produces a fruit pod, the vanilla bean, from which natural vanilla flavoring is derived. The vanilla bean itself is not consumed. Rather, one must scrape the seed from the pod, infuse it, or extract it by soaking vanilla beans in a solution of ethanol and water.

Defendants produce, market, and sell root beer and cream soda soft drinks under the A&W brand. Defendants prominently state "MADE WITH AGED VANILLA" on their products' labels. The products are sold in different size plastic and glass bottles and aluminum cans:


12
PACK
A&W
ROOT BEER
SINCE 1919
MADE WITH
AGED
VANILLA
Naturally and
Artificially Flavored
12-12 FL OZ
CANS (144 FL OZ)
12-355 mL CANS (4.3 L)
170


12
PACK
diet
A&W
Cream
Soda
MADE WITH
AGED
VANILLA
Naturally &
Artificially Flavored


LOW SODIUM
CAFFEINE FREE
Nutrition Facts
12 servings per container
Serving size 1 Can
Amount per serving
Calories 170
% Daily Value
Total Fat 0g 0%
Sodium 80mg 4%
Total Carbohydrate 47g 17%
Total Sugars 46g
Includes 46g Added Sugars 92%
Protein 0g
Not a significant source of saturated fat, trans fat, cholesterol, dietary fiber, vitamin D, calcium, iron, and potassium.
CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, CARAMEL COLOR, SODIUM BENZOATE (PRESERVATIVE), NATURAL AND ARTIFICIAL FLAVORS, QUILLAIA EXTRACT.
PRODUCED UNDER THE AUTHORITY OF DR PEPPER/SEVEN UP, INC., 5301 LEGACY DRIVE, PLANO, TX 75024.
™ & © 2018 DR PEPPER/SEVEN UP, INC.
1-866-720-2379
rootbeer.com


LOW SODIUM
CAFFEINE FREE
Nutrition Facts
About 6 servings per container
Serving size 12 fl oz (355mL)
Amount per serving
Calories 170
% Daily Value
Total Fat 0g 0%
Sodium 70mg 3%
Total Carbohydrate 46g 17%
Total Sugars 46g
Includes 46g Added Sugars 91%
Protein 0g
Not a significant source of saturated fat, trans fat, cholesterol, dietary fiber, vitamin D, calcium, iron, and potassium.
CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, SODIUM BENZOATE (PRESERVATIVE), CARAMEL COLOR, CITRIC ACID, YUCCA EXTRACT, NATURAL AND ARTIFICIAL FLAVORS.
PRODUCED UNDER THE AUTHORITY OF DR PEPPER/SEVEN UP, INC., 5301 LEGACY DRIVE, PLANO, TX 75024.
™ & © 2018 DR PEPPER/SEVEN UP, INC.


Cream
Soda
Naturally & Artificially Flavored
MADE WITH
AGED
VANILLA
2 LITERS (2.1 QT)
NO CAFFEINE

Plaintiffs purchased defendants' soft drinks after seeing that the products contained aged vanilla.[1] They relied on defendants' representation about the flavored beverages, believing that a characterizing flavor of the product was vanilla and that any flavor came from the macerating process described above.

Plaintiffs were not the only consumers to believe that the statement "MADE WITH AGED VANILLA" meant that vanilla extract formed the characterizing flavor of the products. In a survey of 411 consumers conducted in March 2020, around 89% of the consumers stated this representation led them to believe that the product was vanilla flavored. These consumers also interpreted the representation to mean that the vanilla flavor came exclusively (if not predominantly) from the natural vanilla – not artificial sources. Specifically, around 68% of surveyed consumers believed that the statement meant that the vanilla flavor "comes from a vanilla plant, such as a vanilla extract, which is made from vanilla beans from the vanilla plant."

Plaintiffs claim this representation is false and misleading, and they allege defendants' products do not contain any real vanilla at all. Scientific testing of the products by an independent laboratory revealed that the vanilla flavoring of the products does not come from the vanilla plant. Rather, the opposite is true. Testing disclosed that the predominant, if not exclusive, source of the vanilla flavor derives from an artificial, synthetic ingredient – ethyl vanillin. A cheap and inferior substitute for real vanilla, ethyl vanillin does not come from the vanilla plant. Had plaintiffs known the truth about the origin of the vanilla flavoring, they would not have purchased the product at a premium price. If the products are reformulated such that the vanilla flavor comes exclusively or predominantly from the vanilla plant or the products are no longer deceptively labeled, plaintiff would purchase the drinks again in the future.

[1] It is unclear whether plaintiffs purchased the 12-pack, 20-fluid ounce bottle, or a two-liter bottle.

## DISCUSSION

### I. Standard of Review

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### II. Materials Considered

On this motion, I considered the amended complaint, the findings of a survey that plaintiffs' counsel caused to be conducted, and images of the products' labels contained within the amended complaint.

Defendants also enclosed competing images of the products' labels when briefing this motion.[2] At the motion to dismiss stage, a court may consider "factual allegations in plaintiffs' amended complaint, … documents attached to the complaint as an exhibit or incorporated in it by reference, … matters of which judicial notice may be taken, or … documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). Matters suitable for judicial notice include, among others, materials such as product labels and packaging referenced numerous

[2] I imposed a $5000 sanction on defendants for seeking to enclose images in their reply for the first time. Defendants' motion for reconsideration is discussed further below.

times in the complaint. See Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 673 (E.D.N.Y. 2017); see also Silva v. Smucker Natural Foods, Inc., No. 14-cv-6154, 2015 WL 5360022, at *1 (E.D.N.Y. Sept. 14, 2015) (taking judicial notice of the offending product's label and packing).

An issue arises because both sides submitted images of the products from the perspective most favorable to their respective position. The images contained in plaintiffs' amended complaint show the products prominently displaying the "MADE WITH AGED VANILLA" label and from an angle from which the "Natural and Artificially Flavored" disclosure defendants rely upon is not visible:




On the other hand, images provided by defendants are from a different angle, in which the "MADE WITH AGED VANILLA" statement is masked and unintelligible, while the statement "Natural and Artificially Flavored" is clearly visible:







For the purposes of this motion, I will consider both sides' images, while drawing all reasonable inferences in plaintiffs' favor.[3]

## III. Standing for Injunctive Relief

Before deciding the case on the merits, I must first determine whether plaintiffs have standing for injunctive relief. <u>See</u> <u>All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.</u>, 436 F.3d 82, 85 (2d Cir. 2006).

To satisfy the requirements of standing under Article III of the Constitution, a plaintiff must establish three elements: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. <u>Nat'l Org. for Marriage, Inc. v. Walsh</u>, 714 F.3d 682, 688 (2d Cir. 2013) (quoting <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560-61 (1992)). To demonstrate an injury in fact when seeking

---

[3] The amended complaint only contained a portion of the products' labels, so I also considered the images provided by defendants to obtain the full scope of defendants' labeling and packaging. Some of the images presented by defendants are inconsistent. In one version of an image of a 12-pack of soda, the words "Natural and Artificially Flavored" is directly above the statement, "MADE WITH AGED VANILLA." In another photo, the disclosure is a few inches to the left and below the representation.

injunctive relief, "a plaintiff cannot rely on a past injury alone," Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (quoting City of Los Angeles v. Lyons, 461 U.S. 95 (1983)), but must establish "a 'real or immediate threat' of injury," Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016) (quoting Lyons, 461 U.S. at 111-12). "The Supreme Court has repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." Daniel v. Tootsie Roll Indus., LLC, No. 17-cv-7541, 2018 WL 3650015, at *16 (S.D.N.Y. Aug. 1, 2018) (quoting Am. Civil Liberties Union v. Clapper, 785 F.3d 787, 800 (2d Cir. 2015)).

In a deceptive business practice action under GBL § 349 and § 350, the Second Circuit has determined that absent an intent to "purchase the offending product in the future," a plaintiff lacks standing to seek injunctive relief. Kommer v. Bayer Consumer Health, 710 F. App'x 43, 44 (2d Cir. 2018).

As in Kommer, plaintiffs have not shown that they are likely to be subjected to further injurious sales of the beverages because they fail to allege that they intend to purchase the offending products in the near future. See id. at 44. In fact, the "allegations show [plaintiffs'] resistence to engaging in such a commercial transaction again." Yee Ting Lau v. Pret A Manger (USA) Ltd., No. 17-cv-5775, 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018). Specifically, plaintiffs allege that had they "known the truth – that the 'Made With Aged Vanilla' representation relied upon in making the purchase was false, misleading, and deceptive – plaintiff[s] would not have purchased the Product at a premium price." They further emphasize that they would purchase the products again "if there were assurances that the Products' representations were no longer misleading."

On the face of the complaint, plaintiffs concede that they would not have purchased the sodas if they had known of the beverages' true vanilla composition. And now that they are aware of the drink's ingredients, plaintiffs state they do not intend to purchase it again, unless defendants change either the product or the labeling. Because plaintiffs admit that they are unlikely to purchase the products at issue, unless the products are changed, they lack standing to seek injunctive relief. See In re Amla Litig., 320 F. Supp. 578, 593 (S.D.N.Y. 2018) (plaintiffs lacked standing to seek injunctive relief under GBL § 349 where they "adduce[d] no evidence that they are likely to repurchase the product, and indeed allege[d] that they would not have purchased the product in the first place had they known of its alleged defects").

Plaintiffs do not address Kommer, instead basing their arguments in favor of standing on several district court cases that "follow[] the Ninth Circuit's lead," Yee Ting Lau, 2018 WL 4682014, at *2. These cases hold "that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids purchasing the offending product from seeking injunctive relief." Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (internal quotation marks omitted). Most of these decisions predate the Second Circuit's holding in Kommer, and like the court held in Yee Ting Lau, I am "not persuaded that plaintiffs have demonstrated injury deserving of a departure from Lujan's rules and the Second Circuit's clear inclination to decline to find standing in circumstances such as these." 2018 WL 4682014, at *2; see Gonzalez v. Costco Wholesale Corp., No. 16-cv-2590, 2018 WL 4783962, at *6 (E.D.N.Y. Sept. 29, 2018) (plaintiff lacked standing to seek injunctive relief because her claim that she would resume purchasing the offending products in the future if the misleading conduct was remedied was insufficient to establish likelihood of future injury).

Defendants' motion to dismiss plaintiffs' request for injunctive relief for lack of standing is granted. Because plaintiffs do not individually have standing to seek injunctive relief, they also lack standing to seek injunctive relief on behalf of the class. Buonasera, 208 F. Supp. 3d at 564.

## IV. Misleading Statement

To state a claim for false advertising or deceptive business practices under New York consumer law, a plaintiff must plausibly allege that the deceptive conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances." Fink v. Time Warner Cable, 714 F.3d 739, 740-41 (2d Cir. 2013) (citation omitted). When determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. Id. at 742. I therefore must consider the challenged advertisement as a whole, including disclaimers and qualifying language. See id. ("[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception.").

The issue on this motion is whether a reasonable consumer would be misled by defendants' statement that their products are "Made With Aged Vanilla." Defendants contend that I should dismiss the complaint because plaintiffs effectively concede that the beverages do, in fact, contain aged vanilla. This argument fails for two reasons. First, plaintiffs never acknowledged in their amended complaint that the offending products contain any vanilla extract.[4] And second, the Second Circuit's decision in Mantikas v. Kellogg Co., 910 F.3d 633 (2d Cir. 2018), forecloses defendants' argument.

---

[4] The amended complaint states that "if" the products contain any aged vanilla, "it is in trace or *de minimis* amounts not detectable by advanced scientific means." In any event, this is alleged in the alternative and plaintiffs also claim the offending products do not contain any aged vanilla at all.

Mantikas concerned the packaging of Cheez-Its crackers, the boxes of which were conspicuously labeled "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN." But it was undisputed that the grain content was comprised of predominantly enriched white flour and a smaller amount of whole grain flour. The front panel disclosed the number of grams of whole grain per serving (5 or 8 grams per serving size) and the actual composition of the crackers was accurately listed in the Nutrition Facts panel on the box (i.e., a serving size was 29 total grams and the first ingredient listed was "enriched white flour"). Despite these disclosures, the Second Circuit held that the plaintiffs had stated a plausible claim because the crackers' labeling "falsely impl[ied] that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion." Id. at 637. Therefore, even the technically accurate Nutrition Facts panel did not "render [p]laintiffs' allegations of deception implausible." Id. Rather, the Court concluded that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." Id.

The same principle applies here. Foremost, the use of the word "aged" suggests to consumers that the vanilla content is naturally derived and has acquired a desirable quality upon the passage of time.[5] By holding out their products as containing "aged vanilla," defendants' representation is the equivalent to stating the beverages are "Made With Natural Vanilla."

Indeed, in some respects, this case presents a stronger case of misrepresentation than in Mantikas. There, the disputed ingredient, whole grain, was at least present in a discernable quantity (5 to 8 grams out of a serving size of 29 grams). In contrast, plaintiffs here allege that

---

[5] The Merriam-Webster Online Dictionary defines "aged" as "having attained a specified age" or "having acquired a desirable quality or undergone an expected and desired change with the passage of time." See www.merriam-webster.com/dictionary/aged.

the desired or preferred ingredient is entirely absent or, alternatively, *de minimis* in quantity when compared to the artificial and synthetic substitute for vanilla.

Furthermore, in Mantikas, it was undisputed that the Nutrition Facts panel was accurate – the quantity of whole grain was correctly displayed and, as required by federal regulation, the ingredients were listed in the order of their predominance, with the primary ingredient – enriched white flour – listed first and before whole wheat flour. See 21 C.F.R. § 101.4 (generally requiring ingredients to be listed "in descending order of predominance by weight"). In our case, the existence of ethyl vanillin, the substance plaintiffs allege is exponentially present compared to natural vanilla, is never explicitly disclosed to consumers. Therefore, by looking at the products' Nutrition Facts, plaintiffs could not even confirm the presence of ethyl vanillin in the beverages. Rather, it took advanced scientific testing to reveal this.

After viewing the label of the products in context and accepting plaintiffs' allegations as true, I hold that plaintiffs have plausibly alleged that the "MADE WITH AGED VANILLA" representation – prominently displayed underneath the A&W logo and on front of the bottle or box, bolded and in all capital letters – falsely implies that any vanilla content derives predominantly from the vanilla plant, instead of its artificial and synthetic counterpart. This determination is further bolstered by the persuasive extrinsic evidence that the overwhelming percentage of consumers share this misconception. See Danone, US, LLC v. Chobani, LLC, 362 F. Supp. 3d 109, 120 (S.D.N.Y. 2019) (considering consumer survey that indicated very few consumers were likely to understand Chobani's advertisement).

It is true that the products' labels disclose that the beverages are "Natural and Artificially Flavored." A consumer, however, does not know if this is referring to vanilla or to the host of

other ingredients present in the drinks, including the root beer or cream soda flavoring.[6] More importantly, to adequately review this disclosure on some of the products, one must maneuver and rotate the bottle. If the Court in Mantikas emphasized that a consumer should not be expected to turn and consult the side of a box to correct misleading information set forth in large bold type on the front of the box, I see no reason why a consumer purchasing a bottle of soda should be expected to do the same. See 910 F.3d at 637.

Defendants attempt to distinguish Mantikas on the basis that the case involved a misrepresentation as to the cracker's primary or main ingredient – grain. They therefore contend that, even assuming the offending products contained only trace or a *de minimis* amount of real vanilla, this claim is not actionable because any purported misrepresentation pertained to a non-predominant ingredient (i.e., not the product's main ingredient). At first blush, this is a tempting interpretation. The Second Circuit did distinguish several California district court cases cited by the defendants that "alleged that [consumers] were misled about the quantity of an ingredient that obviously was not the product's primary ingredient." Id. at 638. But a careful reading of Mantikas reveals that the Court ultimately rejected the same argument defendants have raised here:

> [T]he rule that [d]efendant contends emerges from these district court decisions – that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling. Such a rule would permit [d]efendant to lead consumers to believe its Cheez-Its were made of whole grain so long as the crackers contained an iota of whole grain, along with 99.999% white flour. Such a rule would validate highly deceptive marketing.

Id.

---

[6] According to the products' Nutrition Facts, they contain the following ingredients: carbonated water, high fructose corn syrup, caramel color, sodium benzoate (preservative), natural and artificial flavors, quillaia extract, citric acid, and yucca extract.

I cannot disregard the Circuit's rejection of this argument and therefore conclude that the principle resulting from Mantikas may also apply in circumstances in which the alleged misrepresentation pertains to a preferred, non-primary ingredient. Other district courts in this Circuit have declined to confine the application of Mantikas to only instances in which the representation relates to a product's primary or main ingredient. See, e.g., Harris v. Mondelēz Global LLC, No. 19-cv-2249, 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) ("Unlike Mantikas, [p]laintiffs do not allege, for example, that the amount of cocoa [in Oreo cookies] is *de minimis* relative to the amount of alkali."); Izquierdo v. Panera Bread Co., No. 18-cv-12127, 2020 WL 1503557, at *6 (S.D.N.Y. March 30, 2020) (the labeling related to the blueberry composition of a bagel was actionable under Mantikas when the imitation blueberry component exceeded the real blueberry content – the consumer's preferred ingredient); Sarr v. BEF Foods, Inc., No. 18-cv-6409, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) ("Here, unlike in Mantikas, the plaintiffs concede that the Mashed Potatoes' predominant fat ingredient is the one emphasized in the defendant's labeling – butter."); Comfort v. Ricola USA, Inc., No. 19-cv-6089, 2019 WL 6050301, at *3-4 (W.D.N.Y. Nov. 15, 2019) (pursuant to Mantikas, cough drops plausibly misleading when labeled as "Naturally Soothing" and thus a consumer could reasonably believe that all the soothing ingredients were natural, despite the ingredients list disclosing artificial ingredients); Reyes v. Crystal Farms Refrigerated Distribution Co., No. 18-cv-2250, 2019 WL 3409883, at *4 (E.D.N.Y. July 26, 2019) (distinguishing Mantikas because the plaintiff did not allege that the defendant's mashed potatoes contained more margarine than butter).[7]

---

[7] Magistrate Judge Bulsara explained in recommending the dismissal of a claim regarding graham crackers, "[s]tating the grahams are 'made with real honey' is a factually true statement about the product" that "does not foreclose the use of other sweeteners" so as to "make the representation deceptive." Kennedy v. Mondelēz Global LLC, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020). That case is distinguishable because the plaintiffs there

Narrowly construing Mantikas to apply only in cases in which a product's primary ingredient is at issue makes little sense and would encourage highly deceptive marketing. There are many scenarios in which a consumer's "preferred" or "desired" ingredient may not necessarily be the product's main or predominant ingredient. A chocolate chip cookie may not necessarily be comprised predominantly of chocolate (one can only dream), but it would still likely be misleading to label it as "Made With Natural Chocolate" if the cookie's chocolate's content is 99.999% artificial and synthetic. Likewise, a frozen pizza manufacturer that labels its products as "Made with Real Pepperoni" likely cannot prevail at the motion to dismiss stage under Mantikas by unabashedly using 99.999% artificial or synthetic meat fillers and simply arguing a pizza's main ingredient is dough. The list goes on. Plaintiffs' allegations are analogous to both of these incredible scenarios, and at this stage, the "allegedly misleading statement must be viewed 'in light of its context on the product label or advertisement as a whole.'" Mantikas, 910 F.3d at 633 (citation omitted).

Accordingly, I cannot say as a matter of law that no reasonable consumer would be misled by defendants' labeling of its products, especially when plaintiffs allege in the amended complaint that the beverages never contained any natural vanilla. Plaintiffs' GBL § 349 and § 350 and unjust enrichment claims may therefore proceed.[8]

---

did not dispute that real honey was actually present in the offending product or that any of the honey representations were false. Here, plaintiffs claim that the products do not contain any aged vanilla, or alternatively, that any aged vanilla content is *de minimis* compared to its artificial and sythentic counterpart.

[8] To the extent plaintiffs bring a separate cause of action premised on an alleged violation of a Food and Drug Administration ("FDA") regulation, the claim is dismissed. There is no private right of action to enforce FDA regulations. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997); Boata v. Pfizer, Inc., No. 10-cv-4390, 2010 WL 4878872, at *5 (S.D.N.Y. Dec. 1, 2010); Verzani v. Costco Wholesale Corp., No. 09-cv-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010).

## V. Sanctions

By order dated June 19, 2020, I imposed a $5000 sanction on defendants for needlessly multiplying motion practice. Specifically, on June 10, 2020, after defendants had filed their motion to dismiss and, over a week after plaintiffs had already filed their opposition, defendants requested a pre-motion conference in connection with an anticipated motion. The motion requested that the Court take judicial notice of the labels for defendants' products. Defendants claimed that the images included in plaintiffs' amended complaint did not accurately reflect the labels on the products, and thus defendants sought to rely upon the "accurate" labels in reply.

But permitting defendants to raise new arguments on their reply for the first time would have been improper, see Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993), since plaintiffs had no chance to respond to these belatedly offered images. I therefore granted defendants' motion to take judicial notice of the product labels contained in their submission, while permitting plaintiffs to submit a surresponse to defendants' reply.

Defendants seek reconsideration as to my order imposing sanctions, claiming they "should not be penalized for bringing to the Court's attention … the differences between the images in the Amended Complaint and the actual products' labels." Defendants are mistaken. I would not have imposed sanctions on them for simply bringing to my attention relevant information. What compelled me to impose sanctions was the fact that defendants should have raised the issue when they initially filed their motion to dismiss. This would have permitted plaintiffs to respond to the new materials and arguments in opposition. By waiting until after plaintiffs had already opposed, however, defendants put the Court in the position of either: (1) having to strike significant portions of defendants' reply, thereby depriving me of relevant

information when considering this instant motion; or (2) permitting plaintiffs to submit a surresponse and prolonging the motion practice. I chose the latter option, and plaintiffs' attorneys were forced to draft another substantive brief because of defendants' untimely submission.

Whether this belated disclosure was due to deliberate gamemanship or a careless oversight is inconsequential. As defendants stated in their motion for reconsideration, they were "very familiar with the labels of A&W Root Beer and A&W Cream Soda and knew that the images in the Amended Complaint did not reflect the actual product labels." If they in fact were "very familiar" with the products' labels, then defendants never explained why this issue was not raised before or on their motion to dismiss and why they decided to wait until plaintiffs had already filed their opposition.

In any event, I will reduce the sanctions imposed. One reason I imposed sanctions was to compensate plaintiffs' counsel for the inconvenience of having to further research and submit another substantive brief on short notice. But plaintiffs' counsel submitted a five-page surresponse, and only a small portion of it was dedicated to responding directly to the new images contained in defendants' reply. The sanctions are therefore reduced to $1000.

**CONCLUSION**

Defendants' [36] motion to dismiss is granted in part and denied in part. Defendants'

motion for reconsideration as to sanctions [51] is granted in part. By separate order, the Court will set a status conference to determine whether further discovery is necessary.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
August 23, 2020