UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                        :

LASHAWN SHARPE and JIM CASTORO,     :    **MEMORANDUM DECISION**
individually and on behalf of all others        :    **AND ORDER**
similarly situated,                             :
                                       :
                      Plaintiffs,     :    19-cv-768 (BMC)
                                         :
          - against -                    :
                                         :
A&W CONCENTRATE COMPANY and       :
KEURIG DR PEPPER INC.,                :
                                         :
                     Defendants.     :
                                         :
-------------------------------------------------------- X

**COGAN**, District Judge.

       In New York City, a few attorneys are behind many lawsuits about vanilla.  See

Cosgrove v. Oregon Chai, Inc., No. 19-cv-10686, 2021 WL 706227, at *1 (S.D.N.Y. Feb. 21,

2021) (collecting cases).  The flavor, long synonymous with "ordinary," is apparently one of the

most controversial ingredients around.  Various products claim to be "vanilla," the plaintiffs say,

but the flavor comes from synthetic substitutes, not the real thing.  The plaintiffs claim they were

misled.  But most cases fail at the first step.  See, e.g., Pichardo v. Only What You Need, Inc.,

No. 20-cv-493, 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020) (granting a motion to

dismiss).

       This case, however, survived for a unique set of reasons.  See Sharpe v. A&W

Concentrate Co., 481 F. Supp. 3d 94, 104 (E.D.N.Y. 2020).  Plaintiffs now move for certification

of a class action under Rule 23 of the Federal Rules of Civil Procedure.  Because plaintiffs have

satisfied Rule 23(a) and Rule 23(b)(3), the motion is granted.

## BACKGROUND

Plaintiffs Lashawn Sharpe and Jim Castoro are self-professed fans of A&W Root Beer and Cream Soda.  Like many sodas, these have vanilla flavor.  But how much, if any, of that flavor comes from "real vanilla" is contested.  Plaintiffs contend that the flavor derives mostly from ethyl vanillin, a synthetic ingredient, and that defendants market the soda as if the flavor derived primarily from real vanilla, namely, vanilla extract.  At issue are the following labels:

  

These labels claim that both the root beer and cream soda (and their diet versions) are "[m]ade with aged vanilla."  Defendants have since removed that claim.[1]

In their Amended Complaint, plaintiffs alleged that the claim violated two provisions of the New York General Business Law ("GBL").  The first, § 349(a), prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  The second, § 350, bans "false advertising."  Liability under these sections requires "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result."  Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v.

---

[1] As in the motion to dismiss, the parties continue to debate the accuracy of plaintiffs' depictions of the products' labels.  See Sharpe, 481 F. Supp. 3d at 98.  Those disputes need not be resolved at the certification stage, as all agree that the root beer and cream soda bore the "made with aged vanilla" claim.

Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 452 (2012)).  Under this framework, I held that plaintiffs had stated a claim.  See Sharpe, 481 F. Supp. 3d at 101-04.

Plaintiffs have since moved for class certification.  The class would consist of "[a]ll persons who purchased either A&W Root Beer or A&W Cream Soda in New York between February 7, 2016, and March 1, 2021," except "persons who purchased A&W Root Beer or A&W Cream Soda for the purpose of resale."[2]  Defendants maintain that plaintiffs not only fail to carry their burden for class certification but also lack standing to sue in the first place.

## DISCUSSION

### I.    Standing

The key to understanding several of defendants' arguments is knowing that claims under GBL §§ 349 and 350 do not require reliance.  See Koch, 18 N.Y.3d at 941, 944 N.Y.S.2d at 453.  That means liability "does not depend on whether class members relied upon the [mis]representation when they purchased the [product at issue], nor does it depend on whether the product met their personal, subjective expectations."  Kurtz v. Kimberly-Clark Corp., 321 F.R.D. 482, 531 (E.D.N.Y. 2017).  Defendants rightly assume that a reliance requirement would present a substantial barrier to class certification.  See, e.g., McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 222-26 (2d Cir. 2008), abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639 (2008).  They use several poorly disguised vessels to try to smuggle it in.

---

[2] Plaintiffs' motion lists the following class: "All persons who purchased either A&W Root Beer or A&W Cream Soda in New York between February 7, 2016, and March 1, 2021.  The Class excludes the judge or magistrate assigned to this case; [d]efendants; any entity in which [d]efendants have a controlling interest; [d]efendants' officers, directors, legal representatives, successors, and assigns; and persons who purchased A&W Root Beer or A&W Cream Soda for the purpose of resale."

The first is standing.  "[T]he irreducible constitutional minimum of standing" requires (1) an "injury in fact" that is (2) "fairly traceable to the challenged action of the defendant" and (3) "likely" to be "redressed by a favorable decision."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (cleaned up).  "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'"  TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208 (2021) (quoting Lujan, 504 U.S. at 561).  At the class certification stage, the named plaintiffs must "show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  Warth v. Seldin, 422 U.S. 490, 502 (1975).  And here, say defendants, discovery has revealed that plaintiffs fall on the wrong side of that line.

To show that only unidentified class members, and not plaintiffs, have suffered an injury, defendants point to plaintiffs' deposition testimony.  Plaintiff Castoro, for instance, testified that he was a longtime A&W customer.  "[D]id [the "made with aged vanilla" claim] influence me?" he asked.  "No.  I've always been buying this stuff."  Then, he could not even recall when the claim appeared: "I couldn't tell you.  You know – as, as a conscious choice – and so it happened to – happened to notice it once.  Like oh – look at that. . . . I was like – oh, that's good."  "You know," he continued, "I was like – no wonder we like this."  The other plaintiff, Sharpe, offered a similar story.  She bought the root beer because she "wanted that particular soda," not because the "made with aged vanilla" claim induced her purchase.  According to defendants, this testimony shows that the claim did not cause plaintiffs to purchase the products.  Nor did the claim mislead them into believing that the products had any particular quantity of aged vanilla.  If the labels did not mislead plaintiffs, the argument goes, they did not suffer an injury that is fairly traceable to the challenged conduct.

But defendants misapprehend the injury.  True, a plaintiff "comfortably satisfies the injury-in-fact prong" with an allegation that, absent the misrepresentation, the plaintiff "would not have paid the same amount" for the product.  Colpitts v. Blue Diamond Growers, No. 20-cv-2487, 2021 WL 981455, at *5 (S.D.N.Y. March 16, 2021).  But even though this sort of reliance satisfies Article III, it does not follow that Article III requires this sort of reliance.

For instance, "a manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically."  Carriuolo v. Gen. Motors Co., 823 F.3d 977, 987 (11th Cir. 2016).  A manufacturer can do so when a product with the misrepresentation will "attract greater market demand" than a product without the misrepresentation.  Id.  A plaintiff thus suffers an injury when "a company marketed a product as having a 'unique quality' . . . the marketing allowed the company to charge a price premium for the product, and . . . the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality."  Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020).  That injury does not involve reliance, but it still satisfies Article III.  See John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736-38 (2d Cir. 2017); cf. Carriuolo, 823 F.3d at 987 (explaining that this sort of price premium satisfied the injury element of a consumer fraud statute); Duran, 450 F. Supp. 3d at 357 (holding that a plaintiff lacked standing to seek injunctive relief but not questioning the plaintiff's standing to seek damages based on this sort of price premium).  I thus conclude that plaintiffs have standing.[3]

---

[3] As explained below, plaintiffs have offered evidence that they did, in fact, pay a premium for the drinks that claimed to be "made with aged vanilla."  That evidence is enough to establish Article III standing at this stage.

Granted, Article III standing is not the end of the matter.  Courts have distinguished this sort of standing from "statutory standing" and "class standing."  Kacocha v. Nestle Purina Petcare Co., No. 15-cv-5489, 2016 WL 4367991, at *11 (S.D.N.Y. Aug. 12, 2016).  Defendants, however, made no such distinction.  They discussed only "standing," and, in a tell-tale sign that they simply re-labeled a reliance requirement, they cited virtually no cases to support their argument.  They instead cited only the general legal principle that "the named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  McCall v. Chesapeake Energy

## II.     Class Certification

### A.     Legal Framework

Rule 23(a) lists four threshold requirements for class certification.  The action must involve (1) a class "so numerous that joinder of all members is impracticable," (2) "questions of law or fact" that are "common to the class," (3) "claims or defenses of the representative parties" that "are typical of the claims or defenses of the class," and (4) "representative parties" who "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These four elements are known as numerosity, commonality, typicality, and adequacy.  See, e.g., Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011).

If all four are present, the action must also satisfy one of the requirements in Rule 23(b). Relevant here is Rule 23(b)(3).  It requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The party seeking certification "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."  Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).  The requirements are more than "a mere pleading standard."  Wal-Mart, 564 U.S. at 350.  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  Id.  That proof often "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause

---

Corp., 817 F. Supp. 2d 307, 313 (S.D.N.Y. 2011) (quoting another source), aff'd, 509 F. App'x 62 (2d Cir. 2013). Because that quote concerns Article III standing, I understood defendants to challenge only that type of standing, and I address only that issue.

of action." Id. at 351 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)).  The

analysis must be a "rigorous" one, and certification is proper only if the court is satisfied that

Rule 23's requirements are met.  Id. at 350-51 (quoting Falcon, 457 U.S. at 160).

## B.   Numerosity

Rule 23(a)'s first requirement is that the class be "so numerous that joinder of all

members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Although this rule does not impose a

specific threshold, "courts within the Second Circuit generally presume that joinder of all

putative class members is impracticable if the class has more than forty members."  In re

Vitamin C Antitrust Litig., 279 F.R.D. 90, 99 (E.D.N.Y. 2012).  Faced with this presumption,

defendants concede numerosity.

## C.   Commonality

Next, Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ.

P. 23(a)(2).  Commonality "does not mean . . . that [the class members] have all suffered a

violation of the same provision of law"; instead, they must "have suffered the same injury."

Wal-Mart, 564 U.S. at 350 (quoting Falcon, 457 U.S. at 157).  The injury is the same if it

"depend[s] upon a common contention" that "is capable of classwide resolution."  Id.  A

contention is capable of classwide resolution if the "determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  In

short, the common questions must "generate common *answers* apt to drive the resolution of the

litigation."  Id.

Commonality often depends on a plaintiff's theory of liability.  See, e.g., In re Scotts EZ

Seed Litig., 304 F.R.D. 397, 405 (S.D.N.Y. 2015).  Recall that liability under GBL §§ 349 and

350 requires "that a defendant has engaged in (1) consumer-oriented conduct that is

(2) materially misleading and that (3) plaintiff suffered injury as a result."  Orlander, 802 F.3d at

300 (quoting <u>Koch</u>, 18 N.Y.3d at 941, 944 N.Y.S.2d at 452).  The second element – whether a practice is materially misleading – assesses whether the practice "is likely to mislead a reasonable consumer acting reasonably under the circumstances."  <u>de Lacour v. Colgate-Palmolive Co.</u>, No. 16-cv-8364, 2021 WL 1590208, at *10 (S.D.N.Y. Apr. 23, 2021) (quoting another source), <u>appeal docketed</u>, No. 21-1234 (2d Cir. May 7, 2021).  That standard is objective.  <u>Hasemann v. Gerber Prods. Co.</u>, 331 F.R.D. 239, 258 (E.D.N.Y. 2019).  And when an element follows an objective standard, it typically "can be proved through evidence common to the class" and presents "a common question."  <u>Amgen Inc. v. Conn. Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 467 (2013) (cleaned up).

This case is no exception.  For the GBL claims, classwide evidence can determine whether the "made with aged vanilla" claim "was false and, if so, whether it was likely to mislead a reasonable consumer."  <u>de Lacour</u>, 2021 WL 1590208, at *11.  Thus, as in other labeling cases, this case easily satisfies the commonality requirement.  <u>See id.</u> (addressing claims that toothpaste and deodorant were "natural"); <u>In re Kind LLC "Healthy & All Natural" Litig.</u>, 337 F.R.D. 581, 594-95 (S.D.N.Y. 2021) (addressing claims that snacks were "all natural" and "non-GMO"); <u>In re Scotts EZ Seed Litig.</u>, 304 F.R.D. at 405 (addressing claims that grass seed would grow "50% thicker" grass than "ordinary seed").

Defendants nevertheless contend that this case presents no common questions because consumers did not have common "exposure" to the "made with aged vanilla" claim.  That claim appears on the front of the bottles, defendants explain, but the claim "is not visible in most label orientations," since "bottles typically are positioned haphazardly at retail."  Likewise, the claim appears on the side of the 12-pack of cans, but that side does not "fac[e] consumers at retail."  Defendants then point to survey evidence that many consumers did not even notice the claim,

much less understand it.  In short, say defendants, "[t]he vast majority of . . . customers who either weren't exposed to the claim or didn't notice the claim cannot, by definition, have been 'deceived.'"

The argument is another attempt to sneak in reliance.  Where, as here, "the consumer protection statute at issue supplies an objective test," the claims are "ideal for class certification" because liability turns on what a *reasonable* consumer, not a particular consumer, would do. Ackerman v. Coca-Cola Co., No. 09-cv-395, 2013 WL 7044866, at *10 (E.D.N.Y. July 18, 2013) (quoting another source) (collecting cases).  That test does not require an investigation into "individual interaction[s] with the product," and it presents a common question as long as the products "bore the same allegedly misleading claim."  Id. (cleaned up); see also In re Kind LLC "Healthy & All Natural" Litig., 337 F.R.D. at 594-95 (noting that "uniform misrepresentations create no need for a series of mini-trials").

Here, the "made with aged vanilla" claim appears on bottles and cans alike – in the same font, the same format, and roughly the same size.  That is enough for a finding of commonality. See de Lacour, 2021 WL 1590208, at *11 (finding commonality and concluding that all class members were "exposed to the same representation" because "[e]very toothpaste and deodorant product included the 'natural' label"); Hasemann, 331 F.R.D. at 265-67 (finding commonality even though a claim appeared on coupons and containers); Ackerman, 2013 WL 7044866, at *10 (concluding that consumers' varying interactions did not defeat commonality in a case about misleading labels on beverages).

### D.  Typicality

Rule 23(a) next requires plaintiffs to show that their claims or defenses "are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This element "focuses on whether the named plaintiff's interests align with the interests of the rest of the class."  In re Vitamin C

Antitrust Litig., 279 F.R.D. at 105.  Interests align "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  In re Scotts EZ Seed Litig., 304 F.R.D. at 405 (quoting another source).

This case satisfies the typicality requirement because "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented."  Ackerman, 2013 WL 7044866, at *11 (quoting another source).  Each product contained the same "made with aged vanilla" claim, and plaintiffs will use the same evidence and arguments as other class members to show that this claim was materially misleading.

Defendants do not contend otherwise.  They have not argued that plaintiffs or other class members "would be subject to unique defenses which threaten to become the focus of the litigation."  In re Vitamin C Antitrust Litig., 279 F.R.D. at 106.  Instead, defendants reprise the arguments they made for commonality.  Just as those arguments failed there, they fail here.

### E.     Adequacy

Finally, Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement "focuses on the fitness of purported class representatives to competently discharge the responsibility of litigating the case on behalf of absent class members."  In re Vitamin C Antitrust Litig., 279 F.R.D. at 99. The answer depends on two factors: "(1) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class and (2) class counsel must be qualified, experienced, and generally able to conduct the litigation."  In re Kind LLC "Healthy & All Natural" Litig., 337 F.R.D. at 596.  Defendants do not contest the second element, focusing solely on the first.

"[T]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class."  Id. (cleaned up).  Faced with this evidence,

defendants once again rehash their arguments.  They say that plaintiffs are not adequate representatives because they lack standing and have not relied on the "made with aged vanilla" claim.  But plaintiffs do have standing, and reliance is not an element of plaintiffs' claims.  Plus, there is no evidence of "fundamental" conflicts of interest that would render the representation inadequate.  Id. (quoting another source).  I thus conclude that plaintiffs have satisfied the adequacy requirement and, by extension, the four requirements of Rule 23(a).

**F.    Predominance**

Having satisfied Rule 23(a), plaintiffs turn to Rule 23(b)(3).  It has two requirements. The first, predominance, asks whether "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (cleaned up).  If the common questions are "more prevalent or important" than the individual ones, the common questions predominate.  Id. (quoting another source).

"Predominance is a test readily met in certain cases alleging consumer or securities fraud."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).  That holds true for cases under GBL §§ 349 and 350.  See Hasemann, 331 F.R.D. at 274 (collecting cases).  The "materially misleading" element raises common questions, and the centrality of those questions is strong evidence of predominance.  See de Lacour, 2021 WL 1590208, at *11; Hasemann, 331 F.R.D. at 274; In re Scotts EZ Seed Litig., 304 F.R.D. at 409.

Attempting to show otherwise, defendants focus on damages.  First, invoking the Supreme Court's decision in Comcast Corp. v. Behrend, 569 U.S. 27 (2013), defendants argue

that predominance requires a "suitable methodology" for "identifying classwide damages." Defendants then launch an extended, broadside attack on plaintiffs' expert report on damages. Without that report, plaintiffs have no classwide damages model. And without that model, the argument goes, the common questions will never predominate.

Yet, in the middle of this argument, defendants cite binding authority that rejects their entire premise. In Roach v. T.L. Cannon Corp., 778 F.3d 401 (2d Cir. 2015), the Second Circuit expressly held that Comcast does *not* require plaintiffs to "rely upon a classwide damages model to demonstrate predominance." Id. at 407; see also C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1778 (3d ed. 2021) (collecting cases that agree). That means individual questions of damages, standing alone, cannot defeat certification. Roach, 778 F.3d at 402. Instead, "[t]he fact that damages may have to be ascertained on an individual basis" is "simply one factor that we ha[ve] to consider" when assessing predominance. Id. at 405 (cleaned up).

Considering that factor, I conclude that this is not a case, like Comcast, where "individual damage calculations will inevitably overwhelm questions common to the class." 569 U.S. at 34. The reason rests in the difference between the "injury" and the "damages." The "injury" is an element of the claim representing the harm suffered; the "damages" are the remedy providing compensation for that harm. See Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 245-46 (2d Cir. 2020) (discussing this distinction in general); Famular v. Whirlpool Corp., No. 16-cv-944, 2019 WL 1254882, at *6 (S.D.N.Y. March 19, 2019) (applying that distinction in a class action under the GBL), leave to appeal denied, No. 19-838, 2019 WL 4839990 (2d Cir. Aug. 6, 2019).

In Comcast, the plaintiffs brought claims under the Sherman Act, which, like the GBL, requires an injury. See 569 U.S. at 43 (Ginsburg & Breyer, JJ., dissenting) (citing 5 U.S.C. § 15). The plaintiffs offered four theories of injury; the district court accepted only one. Then,

the plaintiffs attempted to offer a classwide model for calculating damages, but that model

calculated damages based on *all four* theories of injury – it did not isolate the damages stemming

from the injury the district court accepted.  "[A] model purporting to serve as evidence of

damages in this class action must measure only those damages attributable to that theory," the

Court held.  Id. at 35 (majority opinion).  "If the model does not even attempt to do that, it cannot

possibly establish that damages are susceptible of measurement across the entire class for

purposes of Rule 23(b)(3)."  Id.

 The problem in Comcast, then, was that the model of *damages* did not connect to the

theory of *injury*.  Here, it does.  Under the GBL, plaintiffs suffer an injury when they pay a

"premium" because of a product's misleading claim.  Hasemann, 331 F.R.D. at 275 (quoting

Ackerman v. Coca-Cola Co., No. 09-cv-0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21,

2010)).  Then, plaintiffs can recover that premium as "actual damages."  See N.Y. Gen. Bus.

Law §§ 349(h), 350-e(3); Kurtz, 321 F.R.D. at 503.  For evidence of that premium, plaintiffs

have retained an expert, Dr. J. Michael Dennis, who will conduct a "choice-based conjoint

analysis."  If that conjoint analysis shows a price premium, it will satisfy the main concern in

Comcast – that "any model supporting a plaintiff's damages case must be consistent with its

liability case."  Carriuolo, 823 F.3d at 988 (quoting Comcast, 569 U.S. at 35); accord Sykes v.

Mel S. Harris & Assocs. LLC, 780 F.3d 70, 88 (2d Cir. 2015) ("All that is required at class

certification is that the plaintiffs must be able to show that their damages stemmed from the

defendant's actions that created the legal liability.").

 The model, if viable, will also provide common proof of the injury.  See Famular, 2019

WL 1254882, at *6 (collecting cases).  "New York law does not require that the injury must be

proven with a specified degree of certitude," Kurtz, 321 F.R.D. at 550, so "[e]ven if each

13

purchaser's exact premium differed by retailer and date of purchase, all proposed class members need not pay an <u>identical</u> premium for common questions to predominate at the certification stage," <u>Famular</u>, 2019 WL 1254882, at *6.  That means *all* elements of liability – the consumer-oriented conduct, the materially misleading statement, and the resulting injury – will depend on classwide proof.  And "when, as here, the central liability question is so clearly common to each class member," any "individualized damages calculations are insufficient to foreclose the possibility of class certification." <u>Carriuolo</u>, 823 F.3d at 988 (upholding class certification in a labeling case under a state consumer fraud statute).

The model will also provide common proof of damages.  If it shows a price premium, that premium will correspond to the actual damages. <u>See</u> <u>Kurtz</u>, 321 F.R.D. at 503.

To make matters worse for defendants, there is a separate reason why damages are susceptible to common proof.  The GBL offers two different options for damages: plaintiffs can recover the price premium as actual damages, but if those damages are less than the available statutory damages, plaintiffs can choose the latter. <u>See</u> N.Y. Gen. Bus. Law §§ 349(h), 350-e(3); <u>Kurtz</u>, 321 F.R.D. at 503.  The statutory damages are $50 under § 349 and $500 under § 350 – well above the price premium, which is a fraction of the price of the root beer and cream soda. <u>See</u> N.Y. Gen. Bus. Law §§ 349(h), 350-e(3).  So most, if not all, class members will choose statutory damages, and statutory damages "can be assessed on the basis of common proof." <u>Sykes</u>, 780 F.3d at 87 (citing N.Y. Gen. Bus. Law § 349); <u>see also</u> <u>Kurtz</u>, 321 F.R.D. at 550.  It follows that individual damages questions, if any, will not predominate.

As a last resort, defendants attack the model itself.  They argue that conjoint analysis is not a proper way to measure a price premium, that Dr. Dennis's particular conjoint analysis is fatally flawed, and that no price premium actually exists.  I will address each argument in turn.

 "Conjoint analysis measures consumer desires by asking survey respondents about their relative preferences for certain combinations of product features." In re Gen. Motors LLC Ignition Switch Litig., 407 F. Supp. 3d 212, 234 (S.D.N.Y. 2019). Here, says Dr. Dennis, the survey will present respondents "with a 'choice exercise' in which they are typically shown a set of 3 or 4 hypothetical products and asked to choose which of the products, if any, they would purchase." Each product has various "attributes" – such as price, brand, size, and packaging claims – and each attribute has various "levels." Dr. Dennis offers an example. If golf balls were the product, one attribute would be performance. Within that "performance" attribute, the "levels" would be "that the ball drives 20 yards farther than the average ball, 15 yards, 10 yards, 5 yards, or 0 yards." The survey would then have respondents choose between three to four golf balls, each with various attributes and levels. By running the responses through a "hierarchical Bayes regression analysis," Dr. Dennis claims, he could isolate the premium attached to a claim that a ball will drive 10 yards farther than the average ball. So too, he says, with the "made with aged vanilla" claim.

Defendants see several flaws. Their main point is that the conjoint analysis measures only consumer demand, not the "supply side of the equation." The argument has some support. Several courts have rejected conjoint analysis where it "measure[d] consumers' private valuations" but not "the *market value* of [the products at issue]." Id. at 236-37 (collecting cases). Other courts "are split as to whether a conjoint analysis on its own can adequately isolate a premium price." In re Kind LLC "Healthy & All Natural" Litig., 337 F.R.D. at 606 (collecting cases).

Crucially, however, these courts expressly distinguished conjoint analysis for "classic allegations of mislabeling." In re Gen. Motors LLC Ignition Switch Litig., 407 F. Supp. 3d at

238 (collecting cases).  In mislabeling cases, these courts explained, conjoint analysis will

"adequately account[] for supply-side factors" – and will provide classwide evidence of a price

premium – if "(1) the prices used in the surveys underlying the analyses reflect[] the actual

market prices that prevailed during the class period; and (2) the quantities used (or assumed) in

the statistical calculations reflect[] the actual quantities of products sold during the class

period."  Id. (cleaned up) (quoting Hadley v. Kellogg Sales Co., 324 F. Supp. 3d 1084, 1105

(N.D. Cal. 2018)); accord McMorrow v. Mondelēz Int'l, Inc., No. 17-cv-2327, 2021 WL

859137, at *4 (S.D. Cal. March 8, 2021); Hasemann, 331 F.R.D. at 276-78.  That framework

makes sense in a mislabeling case.  As one court explained:

> A conjoint survey that asks respondents whether they would rather pay $x$ for a
> product labeled "100% Fruit Juice" or $y$ for a similar product labeled 50% Fruit
> Juice," for example, would account for supply-side factors if both $x$ and $y$ reflect
> the prices for which juice companies actually sell similarly labeled products in the
> marketplace.

In re Gen. Motors LLC Ignition Switch Litig., 407 F. Supp. 3d at 239 (contrasting this analysis

with conjoint analysis in a defect case).

Dr. Dennis's survey purports to do just that.  He claims that the conjoint analysis will

incorporate historical data on the quantity and price of products sold during the class period.  At

the class certification stage, that is enough.  See McMorrow, 2021 WL 859137, at *15;

Hasemann, 331 F.R.D. at 276-78; In re Scotts EZ Seed Litig., 304 F.R.D. at 414; cf. In re Kind

LLC "Healthy & All Natural" Litig., 337 F.R.D. at 605-06 (denying a motion to exclude an

expert's conjoint analysis at the certification stage); Fitzhenry-Russell v. Dr. Pepper Snapple

Grp., Inc., 326 F.R.D. 592, 603-06 (N.D. Cal. 2018) (same).

Next, defendants argue that this particular analysis is missing a step.  Unlike in past

cases, defendants explain, plaintiffs have not retained an economist who could use retail sales

data and the results of Dr. Dennis's conjoint analysis to calculate classwide damages.  See, e.g.,

Fitzhenry-Russell, 326 F.R.D. at 601.  Defendants also insist that their expert's methodology is more reliable.  But "criticisms about a survey's failure to replicate real world conditions – valid as they may be – go to issues of methodology, design, reliability, and critique of conclusions, and therefore go to the weight of the survey."  Hadley, 324 F. Supp. 3d at 1108 (cleaned up) (addressing a conjoint analysis at the certification stage); accord Kurtz, 321 F.R.D. at 551. Those criticisms may be "fodder for cross-examination at trial," but they are "not grounds for exclusion at the class certification stage."  McMorrow, 2021 WL 859137, at *4 (quoting another source) (accepting conjoint analysis at the certification stage despite the defendant's insistence that it made only "a rudimentary consideration of the supply side of the market").

Finally, defendants offer various reasons why there is not, in fact, a price premium.  They stress that they line price their products, which means that "pricing for any given package size is the same for Dr Pepper, 7-Up, Squirt, Sunkist and A&W," regardless of "any particular brand's particular attributes or label claims."  Defendants also note that the "made with aged vanilla" claim did not even work.  Surveys showed that few consumers were "exposed" to the claim, that even fewer noticed the claim, and that fewer still understood that claim.  Defendants thus abandoned the claim, turning their focus to "family nights, ice cream floats, frosty mugs, and A&W's longstanding place in American culture."  In these circumstances, defendants maintain, no price premium could exist.

Although I appreciate why defendants are skeptical of Dr. Dennis's proposed analysis, these arguments are premature at the certification stage.  The predominance inquiry asks whether the common questions predominate, not whether the questions will "be answered, on the merits, in favor of the class."  Amgen, 568 U.S. at 459.  Dr. Dennis's conjoint analysis will generate common answers apt to drive the resolution of the litigation.  In stressing that the answers may

not be in plaintiffs' favor, defendants cite only "a fatal similarity – an alleged failure of proof as

to an element of the plaintiffs' cause of action." Id. at 470 (cleaned up).  But defendants need a

"fatal *dissimilarity* among class members" – something that "would make use of the class-action

device inefficient or unfair." Id. (emphasis added) (quoting another source).  With none,

defendants' focus on the merits simply "put[s] the cart before the horse." Id. at 460.

I thus find that questions of law or fact common to class members predominate over any

questions affecting only individual members.[4]

### G.    Superiority

The second requirement in Rule 23(b)(3), superiority, assesses whether "a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  To

that end, the rule lists four factors:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;

---

[4] Notably, defendants have not challenged the principle, accepted by many district courts, that "[a] plaintiff's expert is not required to *perform* their analysis at the class certification stage." de Lacour, 2021 WL 1590208, at *14 (citing In re Scotts EZ Seed Litig., 304 F.R.D. at 414).  The two Second Circuit decisions in Kurtz v. Kimberly-Clark Corp. call that principle into question, albeit somewhat obliquely.  There, a district court found predominance in a GBL class action where an expert proposed a conjoint analysis and a "hedonic regression analysis."  321 F.R.D. 482, 551 (E.D.N.Y. 2017).  On appeal, the defendant argued that the expert "ha[d] not demonstrated, but ha[d] merely alleged, that he can apply hedonic regression analysis to establish on a classwide basis whether the class members paid a price premium."  768 F. App'x 39, 40 (2d Cir. 2019) (summary order).  The panel seemed to agree. It determined that it could not decide the predominance issue on the record before it, remanded, and noted its "specific concern with the [p]laintiffs' proof that they can establish the injury and causation elements of their claims at trial with common evidence."  Id. at 41.  The district court then conducted "extensive" briefing and evidentiary hearings.  414 F. Supp. 3d 317, 321 (E.D.N.Y. 2019).  The expert did not perform the conjoint analysis; he instead "developed and performed hedonic regression analyses" indicating "that there is a marketwide price premium" for the products at issue.  Id.  Only then, in a subsequent appeal, did the Second Circuit uphold certification of the class. 818 F. App'x 57, 63 (2d Cir. 2020) (summary order).  Because defendants have not raised the issue, I decline to consider whether these summary orders imply that Dr. Dennis must complete the conjoint analysis for plaintiffs to have evidence that common issues predominate.  Cf. Diperna v. Icon Health & Fitness, Inc., 491 F. App'x 904, 906 (10th Cir. 2012) (Gorsuch, J.) ("[I]t is not the job of the court to identify for a litigant controlling circuit precedent and pilot for him a path through its shoals; a litigant's failure to take up that task for itself is enough to end the inquiry.").

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  When "proceeding individually would be prohibitive for class members with small claims," a class action is "frequently superior to individual actions."  Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010).  Accordingly, courts frequently find superiority in class actions under the GBL.  See de Lacour, 2021 WL 1590208, at *15-16; In re Kind LLC "Healthy & All Natural" Litig., 337 F.R.D. at 608-09; Famular, 2019 WL 1254882, at *12; Kurtz, 321 F.R.D. at 552-54; In re Scotts EZ Seed Litig., 304 F.R.D. at 415.

Here, all four factors favor certification, see Famular, 2019 WL 1254882, at *12, and defendants do not contend otherwise.  They instead cite § 901(b) of the New York Civil Practice Law and Rules, which generally provides that "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."  In state court, this section would bar plaintiffs from using a class action to recover statutory damages under the GBL – they would have to choose one or the other.

Not so in federal court.  In Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393, 406, 416 (2010), the Supreme Court held that Rule 23, and not § 901(b), governs class actions in federal court.  The practical effect is that the "federal-court door" is "open to class actions that cannot proceed in state court."  Id. at 415.  Defendants acknowledge as much.  But, they contend, Shady Grove "did not address whether a class action brought under a state law providing for statutory damages, such as GBL § 349, *should* be brought as a class action."  It should not, defendants continue, because "allowing a class to seek statutory damages is antithetical to the limitations New York has placed on GBL §§ 349 and 350."

19

Once again, defendants run headlong into binding authority, and once again, it is the binding authority they themselves cite. The dissent in <u>Shady Grove</u> made the same argument as defendants: it lamented the Court's "read[ing] Rule 23 relentlessly to override New York's restriction on the availability of statutory damages," which transformed a $500 suit into a $5,000,000 one. <u>Shady Grove</u>, U.S. 393, 436-37 (Ginsburg, J., dissenting). Statutory damages "often far exceed a plaintiff's actual damages," the dissent explained. <u>Id.</u> at 444. So, "[w]hen lumped together" in a class action, they "produce overkill," yield "excessively harsh results," and risk "annihilating punishment of the defendant." <u>Id.</u> (quoting legislative sources).

The majority flatly rejected these arguments. <u>See id.</u> at 402-06 (majority opinion). What mattered instead was the text of Rule 23. <u>See id.</u> That text, it's true, addresses whether a class action under state law should be brought as a class action. But Rule 23(b)(3) addresses whether a class action should be brought as a matter of *procedure*, not as a matter of *substantive policy*. Perhaps there are good reasons to think that the dissent was right, that these class actions are "an engine of an industry's unnecessary destruction." <u>Kurtz</u>, 321 F.R.D. at 501 (quoting another source); <u>see also</u> <u>Belfiore v. Procter & Gamble Co.</u>, 311 F.R.D. 29, 73 (E.D.N.Y. 2015). But to sneak the "substantive policy animating § 901(b)" into the superiority analysis would "flout the Supreme Court's <u>Shady Grove</u> decision." <u>Kurtz</u>, 321 F.R.D. at 502 (quoting and reluctantly disagreeing with <u>Belfiore</u>, 311 F.R.D. at 73). Defendants' argument must be rejected.

I thus find that plaintiffs have satisfied the superiority element. Because they have now satisfied both elements of Rule 23(b)(3), along with the four elements of Rule 23(a), plaintiffs have met their burden under Rule 23. <u>See</u> <u>Myers</u>, 624 F.3d at 547.[5]

---

[5] Plaintiffs also have claims for unjust enrichment. Perhaps recognizing that these claims are "unsuited to class certification," <u>Ackerman</u>, 2013 WL 7044866, at *20 n.31, plaintiffs have not moved for certification with respect to these claims.

*   *   *

Although plaintiffs have met the requirements for obtaining class certification, this is not to suggest that they will prevail on the merits of their claims at summary judgment, trial, or post-trial motions if they do prevail at trial.  There are significant hurdles as to the merits that plaintiffs may not be able to overcome.  Perhaps the evidence will show that the "made with aged vanilla" claim was not materially misleading.  Perhaps plaintiffs will lack persuasive evidence that the claim accompanied a price premium.  These are serious questions that either this Court or a jury will have to answer.  But they are not questions for today.  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen, 568 U.S. at 466.  Those prerequisites do not address whether a class action will succeed, but whether a class action is "the method best suited to adjudication of the controversy fairly and efficiently."  Id. at 460 (cleaned up) (discussing Fed. R. Civ. P. 23(b)(3)).  The Order today answers only that question.

## CONCLUSION

Plaintiffs' motion for class certification [75] is granted.  The Court hereby certifies the following class: all persons who purchased either A&W Root Beer or A&W Cream Soda in New York between February 7, 2016, and March 1, 2021, except persons who purchased A&W Root Beer or A&W Cream Soda for the purpose of resale.  Plaintiffs LaShawn Sharpe and Jim

Castoro are appointed as class representatives.  Sheehan & Associates, P.C., and Reese LLP are appointed as class counsel.

**SO ORDERED.**

Digitally signed by Brian
M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
      July 23, 2021