# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LaShawn Sharpe, et al., *individually on behalf of herself and all others similarly situated*, | |
| Plaintiffs, | Case No. 19-cv-00768-BMC |
| – against – | |
| A&W Concentrate Company and Keurig Dr. Pepper Inc., | |
| Defendants. | |

## SETTLEMENT AGREEMENT

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Class Action Settlement Agreement and Release, including the attached Exhibits ("Settlement Agreement"), is entered into between Plaintiffs LaShawn Sharpe ("Sharpe"), Jim Castoro ("Castoro") and Steve Dailey ("Dailey") (collectively, the "Plaintiffs"), on behalf of themselves and on behalf of those similarly situated, (hereinafter the "Settlement Class Members"), and Defendants A&W Concentrate Company and Keurig Dr Pepper Inc. ("Defendants"). Plaintiffs and Defendants are collectively referred to as "the Parties."

# Table of Contents

I.      RECITALS ..................................................................................................... 1

II.     DEFINITIONS................................................................................................ 5

III.    SETTLEMENT BENEFITS AND CLAIMS ADMINISTRATION................................... 13

IV.     NOTICE ........................................................................................................ 21

V.      ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE
        PAYMENT .................................................................................................... 24

VI.     CLASS SETTLEMENT PROCEDURES ............................................................... 27

VII.    RELEASES .................................................................................................... 36

VIII.   ADDITIONAL PROVISIONS .............................................................................. 40

LIST OF EXHIBITS................................................................................................ 47

## I. RECITALS

1.1        WHEREAS, on February 7, 2019, Plaintiff Sharpe filed a putative class action complaint in the United States  District Court for the Eastern District of New York (the "Court"), *Sharpe et al. v. A&W Concentrate Co. et al.*, Case No. 19-cv-00768-BMC, against Defendants on behalf of herself and all others similarly situated. In her Complaint, Plaintiff Sharpe alleged claims for: (1) violations of the New York General Business Law ("GBL") §§ 349 & 350; (2), negligent misrepresentation, (3) breach of express warranty and implied warranty of merchantability, (4) fraud, and (5) unjust enrichment, based on the allegation that the "Made With Aged Vanilla" claim on Defendants' root beer and cream soda beverages ("Products") was misleading to a reasonable consumer because the Products contained ethyl vanillin, which is an artificial vanilla flavoring.

1.2        WHEREAS, on April 10, 2020, Plaintiff Sharpe filed an amended complaint that added Jim Castoro and Christine Cooney as additional plaintiffs, and that alleged claims only for (1) violations of the New York General Business Law ("GBL") §§ 349 & 350, and (2) unjust enrichment; and whereas Christine Cooney was subsequently dismissed as a plaintiff with prejudice on May 7, 2021.

1.3        WHEREAS, on April 10, 2020, Plaintiff Steve Dailey filed a putative class action complaint in the United States  District Court for the Northern District of California, *Dailey v. A&W Concentrate Co. et al.,* Case No. 4:20-cv-02732-JST, against Defendants on behalf of himself and all others similarly situated (the *"Dailey* Action"). In his Complaint, Plaintiff Dailey alleged claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); and the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"), based on the allegation that the "Made With Aged Vanilla" claim on Defendants' Products was misleading to a reasonable consumer because the Products contained ethyl vanillin, which is an artificial vanilla flavoring.

1.4        WHEREAS, on July 27, 2020, Plaintiff Dailey filed an amended class action complaint alleging the same claims as in his original complaint.

1.5     WHEREAS, the Parties have engaged in significant discovery, including, but not limited to, extensive document production; numerous interrogatories; and numerous depositions, including of factual and expert witnesses. Each of the three Plaintiffs was deposed and also provided responses to document requests and interrogatories.

1.6     WHEREAS, the Parties engaged in significant motion practice, including two motions to dismiss; two motions for summary judgment; and, two motions for class certification.

1.7     WHEREAS, the Parties strongly disagree on the merits and viability of the claims at issue here.

1.8     WHEREAS, Defendants deny all of the allegations made by Plaintiffs and all charges of wrongdoing or liability against them, arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, against them by Plaintiffs, either on an individual basis or on behalf of a putative class.

1.9     WHEREAS, Plaintiffs believe all claims are viable and subject to class certification.

1.10    WHEREAS, the Parties have engaged in extensive arm's length, good-faith negotiations in an effort to reach a resolution of the Labeling Claims (as defined below). Such negotiations culminated only after a mediation session with the Honorable John Mott (Ret.) on August 28, 2020 (and several follow-up discussions with Judge Mott) and then two all-day mediation sessions with the Honorable Wayne Andersen (Ret.) of JAMS on November 16, 2022 and January 19, 2023, along with numerous follow-up discussions with Judge Andersen. Ultimately, Judge Andersen made a mediator's proposal that both sides accepted.

1.11    WHEREAS, the Parties, and their respective counsel, taking into account the risks, uncertainties, delay, and expense involved in pursuing the Labeling Claims, as well as other relevant considerations, have concluded that it is in the best interests of Plaintiffs and Defendants to compromise fully and finally settle the Labeling Claims in the manner and upon the terms and conditions set forth in this Agreement.

1.12    WHEREAS, the attorneys representing Plaintiffs (hereinafter referred to as "Class Counsel") are experienced in litigating class action claims like the Labeling Claims asserted by Plaintiffs.

1.13    WHEREAS, Class Counsel has analyzed and evaluated the merits of all Parties' contentions and this settlement as it affects all Parties and the Settlement Class Members (as defined below). Among the risks and uncertainties of the Action are the possibility that Plaintiffs will be unable to prove liability or damages (individually or on a class wide basis) at trial on a class wide or individual basis. Plaintiffs and Class Counsel, after taking into account the foregoing, along with the risks, uncertainties and costs of further prosecution of the Action, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement and the prompt provision of meaningful benefits to the Settlement Class are in the best interests of the Settlement Class Members.

1.14    WHEREAS, Defendants, while continuing to deny all allegations of and disclaiming any liability with respect to any and all Labeling Claims, have concluded that it is in their best interests to resolve the Labeling Claims on the terms stated in this Agreement, in order to avoid further expense, inconvenience, and interference with ongoing business operations, and to dispose of burdensome litigation.

1.15    WHEREAS, the undersigned Parties agree, subject to approval by the Court, that the Labeling Claims asserted by the Settlement Class Members (including Plaintiffs) shall be fully and finally compromised, settled, and released on the terms and conditions set forth in this Agreement. The Parties intend that the Court conditionally certify a class for settlement and that this Agreement will encompass and end all pending, threatened, or possible litigation or claims of the Settlement Class Members (including Plaintiffs) against Defendants that have been asserted or could have been asserted in the Action, including all claims based on, arising out of, or related to the subject matter of the Labeling Claims.

1.16     WHEREAS, for purposes of settlement only, Plaintiffs Sharpe and Castoro will seek leave of Court to amend their Complaint to add Plaintiff Dailey as a class representative, and to assert claims under Texas law on behalf of a nationwide class of consumers, with Plaintiffs as class representatives ("Second Amended Complaint for Settlement").

1.17     WHEREAS, Plaintiffs and Defendants specifically agree that Defendants' execution of this Agreement, and consent to the filing of the Second Amended Complaint for Settlement, is not, and shall not be construed as, an admission by Defendants, or deemed to be evidence: (1) of the validity of any of the claims made by, or of any liability to, the Settlement Class Members (including Plaintiffs) as alleged in the Sharpe Complaint, Dailey Complaint, or the Second Amended Complaint for Settlement; (2) that Defendants violated any state or federal law in any respect; or (3) that class certification of the Labeling Claims is appropriate under Fed. R. Civ. P. 23 or any analogous state law. Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability, by or against any Party hereto, at any stage of any proceeding, and this Agreement shall not be presented to any court for any purpose other than to the Court for the purpose of obtaining approval of this Settlement Agreement.

1.18     WHEREAS, Defendants agree to personal jurisdiction of the Court for purposes of Plaintiff Dailey and the Nationwide Class alleged in the Second Amended Complaint solely for purposes of this settlement.

NOW, THEREFORE, without (a) any admission or concession on the part of Plaintiffs about the likelihood of success at trial, on appeal, or in other motions practice, or (b) any admission or concession of the merit of the Labeling Claims or of liability or wrongdoing or the lack of merit of any defense whatsoever by Defendants, it is hereby stipulated and agreed by the undersigned, on behalf of Plaintiffs, the Settlement Class and Defendants, that this Action and all claims of the Settlement Class be settled, compromised, and finally adjudged, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the terms and conditions set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this Settlement Agreement.

## II.    DEFINITIONS

Capitalized terms in this Agreement shall be defined as follows:

2.1        "Action" means the lawsuit pending in the United States District Court for the Eastern District of New York, captioned *Sharpe et al. v. A&W Concentrate Co. et al.*, Case No. 19-cv-00768-BMC (E.D.N.Y.), and the lawsuit pending in the United States District Court for the Northern District of California, captioned *Dailey v. A&W Concentrate Co. et al.,* Case No. 4:20-cv-02732-JST (N.D. Cal.).

2.2         "Agreement" or "Settlement Agreement" means this Settlement Agreement, including all exhibits hereto.

2.3        "Allegations" means the allegations as asserted in the Second Amended Complaint for Settlement (attached hereto as Exhibit E).

2.4        "Attorneys' Fees and Costs" means  all the past, present and future attorneys' fees, costs (including court costs), expenses, and disbursements incurred by Plaintiffs' Counsel and their experts, staff, consultants, or other individuals retained by, or who assisted Plaintiffs' Counsel, in connection with the Action and settlement, as described more particularly in Section V of this Agreement.

2.5        "Claim" means a claim for Settlement Benefits submitted under Section III of this Agreement.

2.6        "Claim Administrator" means, subject to Court approval, Kroll Settlement Administration.

2.7        "Claimant" or "Claimants" means a consumer who has submitted a Claim Form.

2.8        "Claim Filing Deadline" means the final day in the Claim Period.

2.9        "Claim Form" means a form in substantially the same form as Exhibit B hereto to be used by Class Members to make a Claim under the Settlement.

2.10　　　"Claim Period" means the ninety (90)-day period during which Settlement Class Members may submit Claims. The Claim Period will begin sixty (60) days before the date on which the Final Approval hearing is set forth in the Preliminary Approval order and end thirty (30) days after that same date. For the avoidance of doubt, the claim period will not be extended or otherwise modified in the event the Final Approval hearing is rescheduled or postponed.

2.11　　　"Class Notice" means notice to the Class as designed by the Claim Administrator and to be disseminated by the Claim Administrator as set forth in the Notice Plan described in a declaration to be submitted by the Claim Administrator, which describes the Qualifications and Implementation of the Notice Plan that are being filed simultaneously with the filing of this Settlement Agreement, subject to the Court's Preliminary Approval.

2.12　　　"Class Period" means the period of time from February 7, 2016 through June 2, 2023.

2.13　　　"Class Representatives"; "Plaintiffs"; or "Representative Plaintiffs" means plaintiffs LaShawn Sharpe, Jim Castoro, and Steve Dailey, collectively.

2.14　　　"Court" means the United States District Court, Eastern District of New York.

2.15　　　"Dailey Complaint" means the operative complaint in the matter of *Dailey et al. A&W Concentrate Co. et al.*, Case No. 4:20-cv-02732-JST (N.D. Cal.).

2.16　　　 "Defendants" means A&W Concentrate Company and Keurig Dr Pepper Inc.

2.17　　　"Defendants' Counsel" means Russell H. Falconer of Gibson Dunn & Crutcher LLP

2.18　　　"Deposit Amount" means the sum of $250,000.00, which amount Defendants shall pay or cause to be paid into the Escrow Account within ten (10) business days after the date of Preliminary Approval to pre-pay certain of the Settlement Administration Expenses. Payment of the Deposit Amount shall constitute a credit in like amount against the Settlement Amount. In the event the Claim Administrator requires more than $250,000 to begin performing the tasks set forth in Section III of this Agreement, the Claim Administrator shall submit a notice to Defendants in writing that copies Class Counsel and states the Deposit Amount the Claim Administrator

requires (which in no event shall exceed one-half of the amount provided for Settlement Administration Expenses in section 3.14), and Defendants shall pay or cause to be paid that amount into the Escrow Account within ten (10) business days after the date on which Defendants receive the written request.

2.19        "Effective Date" has the meaning provided in section 6.19 of this Agreement.

2.20        "Escrow Account" means the separate, interest-bearing escrow account to be established by the Claim Administrator at a bank to hold funds received in connection with the administration of this Settlement. Any interest that accrues on funds held in the Escrow Account shall be used to pay Settlement Administration Expenses.

2.21        "Exhibits" mean the exhibits attached to this Settlement Agreement.

2.22        "Fee Award" means the Attorneys' Fees and Costs to be paid by Defendants, separate and apart from the payment of Valid Claims, awarded by the Court to Plaintiffs' Counsel for all the past, present, and future attorneys' fees, costs (including court costs), expenses, and disbursements incurred by them and their experts, staff, consultants, or other individuals retained by, or who assisted Plaintiffs' Counsel, in connection with the Action, as described more particularly in Section V of this Agreement. Any such Fee Award shall be paid exclusively from the Settlement Amount.

2.23        "Final Approval" means the order entered by the Court giving final approval to the terms of this Settlement Agreement as fair, adequate, and reasonable and certifying a class for settlement purposes and as provided in the Final Settlement Order and Judgment.

2.24        "Final Settlement Order and Judgment" means an order and judgment entered by the Court: (a) issuing Final Approval; (b) Providing for the orderly performance and enforcement of the terms and conditions of the Settlement; (c) Dismissing the Action with prejudice; (d) Discharging the Released Parties of and from all further liability for the Released Claims to the Releasing Parties; and (e) Permanently barring and enjoining the Releasing Parties from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them,

or in any other capacity of any kind whatsoever, any action in any state court, any federal court, before any regulatory authority, or in any other court, tribunal, forum, or proceeding of any kind, against the Released Parties that asserts any Released Claims that would be released and discharged upon Final Approval.

2.25    "Household" means any number of natural persons who currently or during the Class Period occupied the same dwelling unit. For purposes of this settlement agreement, a corporation, partnership, company, or other similar business organization and its affiliated entities shall be treated as a single Household.

2.26    "Labeling Claims" means all outstanding and putative claims, asserted in the Second Amended Complaint for Settlement, arising out of, or relating to, the Product Labeling (as defined in Section 2.39) that were, or could have been, asserted by Plaintiffs in the Action.

2.27    "Litigation" means the pleadings, motion practice, discovery, and settlement negotiations in the Action.

2.28    "Long Form Notice" means notice to Settlement Class Members in substantially the same form as Exhibit C.

2.29    "Notice Date" means the day on which the Claim Administrator initiates the Long Form Notice. The Notice Date shall occur on the first day of the Claim Period.

2.30    "Notice Plan" means the Parties and Claim Administrator's plan to provide the Settlement Class with notice of Settlement, as set forth above in Section 2.11.

2.31    *[Intentionally Omitted]*

2.32    "Opt-Out and Objection Deadline" means twenty-one (21) days prior to the initially scheduled hearing date on Final Approval.

2.33    "Parties" means Plaintiffs LaShawn Sharpe, Jim Castoro, and Steve Dailey and Defendants A&W Concentrate Company and Keurig Dr. Pepper Inc., collectively.

2.34    "Party" means any one of Plaintiffs or Defendants.

2.35    "Person(s)" means any natural person.

2.36     "Plaintiffs' Counsel" or "Class Counsel" means Reese LLP and Sheehan & Associates, P.C.

2.37     "Preliminary Approval" means issuance of an order granting preliminary approval to this Agreement as within the range of possible Final Approval; approving Class Notice to the Settlement Class Members as described in Part IV below; and setting a hearing to consider Final Approval of the settlement and any objections thereto.

2.38     "Product" and/or "Products" means any A&W Root Beer or Cream Soda beverages that contained the "Made with Aged Vanilla" statement on their labels and were sold during the Class Period. A complete list of the Products is included in Exhibit A attached hereto.

2.39     "Product Labeling" means the statement "Made With Aged Vanilla" on the Products.

2.40     "Proof of Purchase" means a record of purchase or other objectively verifiable documentation of a transaction that reflects the purchase of one or more Products during the Class Period and establishes the number of Units purchased and that the purchase occurred during the Class Period.

2.41     "Protective Order" means the October 2, 2020 order of the Court (ECF No. 64) that governs the treatment of confidential information produced in discovery.

2.42     "Released Claims" means any and all past, present, or potential claims, demands, rights, suits, liabilities, debts, obligations, damages, and causes of action of every nature and description whatsoever, known or unknown, existing or potential, matured or unmatured, recognized now or hereafter, expected or unexpected, at law or in equity, existing under any body of law, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, local, or foreign law, statute, ordinance, or regulation, and for claims for equitable relief or relief at law, including without limitation damages of any kind, penalties of any kind, interest, attorneys' fees, costs, or disbursements, including, but not limited to, those incurred by Plaintiffs' Counsel or any other counsel representing the named Plaintiffs or any Settlement Class Members, other than those expressly awarded by the Court in

the Fee Award authorized by this Agreement) that have been or could have been asserted in the Action, or that could in the future be asserted in any forum, whether foreign or domestic and whether brought directly or indirectly, against any of the Released Parties by any Settlement Class Member that (i) arise out of, are based on, or relate in any way to any of the claims, allegations, transactions, facts, occurrences, events, behaviors, conduct, practices, and policies, representations, or omissions involved, set forth, alleged in or referred to in the Action or (ii) could have been involved, set forth, pleaded, joined, alleged in, or referred to in the Action. "Released Claims" shall be construed as broadly as possible to effect complete finality over this Litigation. For the avoidance of doubt, "Released Claims" do not include claims to enforce this Settlement Agreement.

2.43     "Released Parties" means (i) Defendants and each and all of their respective present or former parent companies, subsidiaries, affiliates, divisions, joint ventures, and any other related legal entities, whether foreign or domestic; (ii) each and all of the respective present, former, or future shareholders, members, officers, directors, managers, employees, employers, attorneys, accountants, financial advisors, insurers, investment bankers, representatives, general and limited partners and partnerships, independent contractors, consultants, fiduciaries, insurers, predecessors, successors, and assigns of the entities in Part (i) of this paragraph; (iii) any trust of which either A&W Concentrate Company or Keurig Dr. Pepper Inc. is a settlor or trustee, or beneficiaries, heirs, executors, administrators, successors, affiliates, and assigns of each of them; and (iv) Defendants' partner brands, licensors, suppliers, bottlers, co-manufacturers, distributors, wholesalers, and retailers, and each of their parents, affiliated and subsidiary companies and all of their agents, employees, partners, predecessors, successors, assigns, insurers, attorneys, officers, directors, managers, members, shareholders, and insurers. For the avoidance of doubt, Released Parties shall include all Persons in the stream of commerce for the labeling, marketing, sale, and/or distribution of the Products.

2.44     "Releasing Parties" means Plaintiffs LaShawn Sharpe, Jim Castoro, and Steve Dailey, and all Settlement Class Members who have not validly and timely opted out of the

Settlement Class, and all their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, successors, bankruptcy estates, bankruptcy trustees, predecessors, agents, and assigns, and all those who claim through them or who assert or could assert claims on their behalf.

2.45 "Second Amended Complaint for Settlement" means the proposed second amended complaint attached hereto as Exhibit E.

2.46 "Service Award" or "Service Awards" mean any award sought by application to and approval by the Court that is payable to the Class Representatives to compensate them for their efforts in bringing this Action and achieving the benefits of this settlement on behalf of the Settlement Class.

2.47 "Settlement" means the settlement embodied in this Agreement.

2.48 "Settlement Administration Expenses" means the costs incurred by the Claim Administrator in connection with administering this settlement, including without limitation the costs of providing Class Notice, processing Claims, paying Valid Claims, and escrow fees (if any).

2.49 "Settlement Amount" means the sum of fifteen million U.S. dollars ($15,000,000.00), which represents the total amount available to pay Valid Claims, Settlement Administration Expenses (including the Deposit Amount), the Fee Award, and Service Awards. The Settlement Amount represents the maximum possible payment by Defendants under this Settlement from which payments will be made for (a) approved Valid Claims to Class Members; (b) Settlement Administration Expenses; (c) the Fee Award; and (d) Service Awards; in no event shall Defendants' liability to fund those payments exceed the Settlement Amount. Defendants' actual payment obligation under this Agreement is limited to payment of (i) approved Valid Claims to Class Members, (ii) Settlement Administration Expenses, (iii) any Fee Award, and (iv) Service Awards. In the event the cumulative cost of Valid Claims, Settlement Administration Expenses, the Fee Award, and Service Awards exceeds the Settlement Amount, then the amount payable for each Valid Claim shall be reduced, pro rata, so as not to exceed the Settlement Amount.

2.50 "Settlement Benefit(s)" means the benefits provided to Settlement Class Members as set forth in Sections 3.4 through 3.7 of this Agreement.

2.51    "Settlement Class," "Settlement Class Members," "Class" or "Class Members" means all consumers in the United States who purchased the Products during the Class Period, except for the purposes of resale. Excluded from this definition are the Released Parties; any government entities; persons who made such purchase for the purpose of resale; persons who made a valid, timely request for exclusion; the Hon. Brian M. Cogan, the Hon. Jon S. Tigar, the Hon. John Mott (Ret.), the Hon. Wayne Andersen (Ret.), and any members of their immediate families; and all distributors, wholesalers, retailers or other persons who purchased the product for the purpose of selling it to someone else.

2.52    "Settlement Website" means an internet website created and maintained by the Claim Administrator, the URL of which shall be specified in the Notice Plan.

2.53    "Sharpe Complaint" means the operative complaint in the matter of *Sharpe et al. A&W Concentrate Co. et al.*, Case No. 19-cv-00768-BMC (E.D.N.Y.).

2.54    "Termination Date" means the date, if any, that this Agreement is terminated as set forth in Section 6.20.

2.55    "Unit" means a single quantity of the Product (e.g., one 12-pack, one 24-pack, one 2-liter bottle, one 20-ounce bottle, etc.).

2.56    "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the directions accompanying the Claim Form and the provisions of the Settlement; (b) on the initial submission, accurately, fully and truthfully completed and executed, with all of the information requested in the Claim Form, by a Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned either electronically or via mail and postmarked by the Claim Filing Deadline or, if submitted online, is received by the Claim Filing Deadline; and (e) determined to be valid by the Claim Administrator. For the avoidance of doubt, each Settlement Class Member (or, for Settlement Class Members who reside in the same Household, each Household) may file a single Claim only.

## III. SETTLEMENT BENEFITS AND CLAIMS ADMINISTRATION

3.1     Subject to the rights and limitations set forth in this Agreement, every Settlement Class Member shall have the right to submit a Claim for Settlement Benefits. A Claim shall be a Valid Claim only if conforms to the criteria set forth in Sections 2.56 and 3.2 and is submitted on the Claim Form in compliance with the procedures set forth in this Section III. Submission of a Claim, regardless of whether it is determined to be a Valid Claim, shall confer no rights or obligations on any Party, any Settlement Class Member, or any other Person, except as expressly provided herein.

3.2     The Claim Administrator shall have the right to undertake, and shall undertake in its discretion, each of the following in connection with its processing of Claims and administration of the Settlement:

(a)     The Claim Administrator may request additional information to validate suspicious or potentially fraudulent Claim Forms if and as the Claim Administrator determines necessary.

(b)     The Claim Administrator will enforce the requirement that Claim Forms that are mailed must be postmarked by the Claim Filing Deadline and that Claim Forms that are submitted online must be submitted no later than the Claim Filing Deadline.  Claim Forms received via mail or submitted online after that date will not be Valid Claims.  For Claim Forms that are submitted online, the Settlement Class Member shall have the opportunity to upload a Proof of Purchase.

(c)     On the Claim Form, the Claim Administrator shall validate that the Settlement Class Member has completed all sections of the Claim Form completely and certified the truth and accuracy of the following information under the penalty of perjury, including by signing the Claim Form physically or by e-signature, or the Claim will not be considered a Valid Claim by the Claim Administrator:

(d)     For Claims submitted without Proof of Purchase, the Claim Administrator will require the following information:

(i)     The Settlement Class Member's name and mailing address within the United States;

(ii)    The Settlement Class Member's email address (unless the Settlement Class Member requests a Claim Form by mail, in which case an email address is optional);

(iii)   The number of Units purchased during the Class Period; and

(iv)   That the claimed purchases were not made for purposes of resale.

(e)    For Claims submitted with Proof of Purchase, the Claim Administrator will require the following information:

(i)     The Settlement Class Member's name and mailing address within the United States;

(ii)    The Settlement Class Member's email address (unless the Settlement Class Member requests a Claim Form by mail, in which case an email address is optional);

(iii)   Valid Proof of Purchase; and

(iv)   That the claimed purchases were not made for purposes of resale.

The Claim Administrator will track Claim Forms by assigning a security code, control number, or unique identifier to each Claim Form. The Claim Administrator will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only Valid Claims. The Claim Administrator shall not approve duplicate or multiple claims for the same purchase but shall deem valid only one claimant for each purchase. The Claim Administrator and Parties shall have the right to audit claims, and the Claim Administrator may request additional information from Claimants in a form to be determined by the Claim Administrator. The Claim Administrator will approve Valid Claims and issue payment based upon the terms and conditions of this Agreement or may reject Claims that are not Valid Claims or evidence waste, fraud, or abuse. The Claim Administrator shall approve or deny all Claims, and its decision shall be final, binding, and non-appealable by any Party, any Settlement Class Member, Class Counsel, or Defendants' Counsel, while remaining subject to review by the Court.

3.3     Claim Form. To make a Claim under the terms of this Agreement, Settlement Class Members must submit, during the Claim Period and before the Claim Filing Deadline, a

Claim Form substantially similar to the Claim Form attached hereto as Exhibit A. The Parties shall work with the Claim Administrator to ensure that the Claim Form is easy to understand and complete, that the Claim Form is offered in multiple languages consistent with guidance from the *Federal Judicial Center's Managing Class Action Litigation: A Pocket Guide for Judges*, and that the Claim Form is adapted to online use. The Claim Form will include a drop-down menu that allows claimants to make claims, subject to the amount limits described below. The drop-down menu will include information regarding the Products. Claimants shall use the drop-down menu to identify the types and number of Products they purchased during the Class Period.

3.4     Subject to the total dollar value cap in Settlement Benefits as provided immediately below, each Settlement Class Member who submits one (1) Valid Claim per Household, as determined by the Claim Administrator, shall receive a Settlement Benefit as follows:

> A Settlement Class Member who submits a Valid Claim shall receive a minimum cash payment of $5.50 up to a maximum of $25.00. A Settlement Class Member who submits a Valid Claim without a Proof of Purchase shall receive a cash payment of $5.50. To receive any amount over $5.50, the Settlement Class Member must submit a Proof of Purchase and shall receive compensation of $0.50 a Unit for which Proof of Purchase is submitted, up to a maximum of 39 Units and $25.00.

The total cash payment due to the Settlement Class Member shall be provided in a single check or electronic payment payable to the Settlement Class Member, as elected by the Settlement Class Member.

3.5     Each Household is limited to and may only submit a single Claim Form. If a single Household submits more than one Claim Form, the Claim Administrator will consider the Claim Form that would result in the highest Settlement Benefit and shall disregard all other filed Claim Forms. For the avoidance of doubt, no Household shall receive any payment under this Settlement Agreement of more than $25.00.

3.6      The Claim Administrator shall receive and process requests from individuals seeking entry into the Settlement Class and promptly provide Plaintiffs' Counsel and Defendants' Counsel copies thereof.

3.7      Payment of Claims.  Each Valid Claim will be paid *up to* the stated benefit **per Household** (i.e., a minimum of $5.50 for each Claimant up to $25 with Proof of Purchase for any Valid Claim over $5.50 as detailed above in section 3.4).  Settlement Administration Expenses, Service Awards, and Attorneys' Fees and Costs will be paid first.  In the event that the cumulative cost of Valid Claims, Settlement Administration Expenses, Attorneys' Fees and Costs, and Service Awards exceeds the Settlement Amount of fifteen million ($15,000,000), then the amount payable for each Valid Claim shall be reduced, pro rata, so as not to exceed the Settlement Amount.

3.8      The Claim Administrator shall be solely responsible for, among other things, providing Class Notice as set forth in the Notice Plan, processing Claim Forms, administering the Settlement Website, administering the exclusion process, administering the Settlement Benefit claims process described herein (including receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the Settlement Class), and such other duties as may be reasonably necessary to administer the terms of this Agreement.

3.9      No Person shall have any claim against Plaintiffs, Defendants, Plaintiffs' Counsel, Defendants' Counsel, or the Claim Administrator based on any determination of a Valid Claim, or distributions or awards made in accordance with this Agreement and the Exhibits hereto. Neither Plaintiffs nor Defendants, nor their respective counsel, shall have any liability concerning the appointment of the Claim Administrator or for any act or omission whatsoever of the Claim Administrator.

3.10     Within thirty (30) days after the Claim Filing Deadline, the Claim Administrator shall notify by email (or U.S. mail if no email address is provided) all Settlement Class Members whose claims are denied of the reason(s) for the denial, using the email address or physical address (if any) provided by the Settlement Class Member on the Claim Form. If no email

address or physical address is provided by the Settlement Class Member on the Claim Form, the Administrator shall not have an obligation to provide the Settlement Class Member any notification of the denial of the claim or the reasons for denial.

3.11 Valid Claims shall be paid either electronically or via check to the Settlement Class Member that will be mailed to the address provided on the Claim Form. The Claim Administrator shall be responsible for the payment of Valid Claims. Within sixty (60) days after the Effective Date, Defendants shall pay or cause to be paid into the Escrow Account the amount of Settlement Benefit payments due for Valid Claims, as determined by the Claim Administrator. The Claim Administrator shall pay all valid claims within one hundred and fifty (150) days after the Effective Date, unless otherwise ordered by the Court.

3.12 All Settlement Benefit payments for Valid Claims shall be subject to a one hundred and twenty (120) days void period, after which the payments shall no longer be negotiable. If payment is made via check (instead of electronically) and the check is returned as undeliverable, the Claim Administrator shall send an email to the claimant, if an e-mail address was provided with the Claim, to attempt to obtain a better address, and if obtained, shall mail the check to the new address. If the Claim Administrator is not able to obtain a better address via email, the Claim Administrator shall make, in its discretion, a reasonable attempt to obtain an updated address. If the check is not cashed within 120 days, or is otherwise not payable, the Settlement Class Member shall not be entitled to any further payment under this Settlement. The return or failure to cash checks shall have no effect on a Class Member's release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

3.13 Authorized claimants shall be solely and exclusively responsible for remitting to state and/or federal taxing authorities any applicable taxes due and shall hold Released Parties, Defendants' Counsel, Plaintiffs' Counsel, and the Claim Administrator harmless for any taxes, penalties, interest, costs and expenses caused by any such taxing authority relating in any way to the tax treatment of payments to the authorized claimants pursuant to this Settlement Agreement or failure to timely or properly pay any taxes owed in connection with Settlement Benefit

payments. No deductions for taxes will be taken from any Settlement Benefit at the time of distribution. All Settlement Benefit payments shall be deemed to be paid solely in the year in which such payments are actually issued. The Parties' Counsel and the Parties do not purport to provide legal advice on tax matters to each other or Settlement Class Members. To the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. federal or any state tax issue, such advice is not intended or written to be used, and cannot be used, by any Person for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

3.14 Defendants shall be responsible for paying all Settlement Administration Expenses incurred by the Claim Administrator in administering claims and performing the other tasks set forth in this Section III. Settlement Administration Expenses shall not exceed $750,000, and Defendants shall have the right to withhold payment for any fees of the Claim Administrator that exceed this amount, without violating this Agreement. If the Claim Administrator requires additional funds over and above the Deposit Amount to pay Settlement Administration Expenses, the Claim Administrator shall submit a request to Defendants in writing that copies Class Counsel for such additional funds, and Defendants shall pay or cause to be paid the requested funds into the Escrow Account within ten (10) business days of receiving the written request, provided that in no event Defendants shall have any obligation to pay any amount for Settlement Administration Expenses that exceeds $750,000.

3.15 Other than the obligation of Defendants described in section 2.18 to pay or cause to be paid the Deposit Amount into the Escrow Account; the Settlement Benefit payments as set forth in Section 3.11; actual reasonable Settlement Administration Expenses which exceed the Deposit Amount, as such expenses are periodically invoiced by the Claim Administrator subject to Section 3.14; the Fee Award as set forth below in Section 5.1; and the Service Award as set forth below in Section 5.2, Defendants shall have no obligation to make any other payment pursuant to this Settlement Agreement. For the avoidance of doubt, the maximum total monetary component of the Settlement from Defendants is the Settlement Amount of Fifteen Million dollars

($15,000,000). The Settlement Amount is an "all in" number that includes, without limitation, all monetary benefits and payments to the Settlement Class, Service Awards, the Fee Award, Settlement Administration Expenses, and any other costs and expenses relating to the Settlement, without limitation. In no event shall Defendants be liable for making any payments under this Settlement, or for providing any relief to Settlement Class Members, before the deadlines set forth in this Agreement. All liabilities, payments or withholdings for which Defendants are or will be responsible, including but not limited to Settlement Amount taxes, and Settlement Amount tax expenses, shall be satisfied from the Settlement Amount only.

3.16     The Settlement Amount will remain in Defendants' possession except to the extent that, and until such times as, portions of the Settlement Amount are required to be paid under sections 2.18, 3.11, 3.14, and 5.7 of this Agreement, and Defendants will retain any interest that accrues on the Settlement Amount while the Settlement Amount is in Defendants' possession. The Settlement Amount shall remain subject to the jurisdiction of the Court until such time as either (A) payment has been made of (i) approved Valid Claims to Class Members, (ii) Settlement Administration Expenses, (iii) the Fee Award, and (iv) any Service Awards or (B) this Settlement Agreement is voided, terminated or cancelled.

3.17     Subject to the terms and conditions of this Settlement Agreement, the Settlement Amount shall be used for: (i) Settlement Benefit payments; (ii) Settlement Administration Expenses; (iii) the Fee Award approved by the Court; and (iv) any Service Awards approved by the Court.

3.18     No amounts from the Settlement Amount may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court. Defendants' Counsel may authorize the periodic payment of actual reasonable Settlement Administration Expenses from the Settlement Amount as such expenses are invoiced by the Claim Administrator without further order of the Court. The Claim Administrator shall provide Defendants' Counsel and Plaintiffs' Counsel with notice of any withdrawal or other payment the Claim Administrator

proposes to make from the Settlement Amount before the Effective Date at least three (3) business days prior to making such withdrawal or payment.

3.19     The Claim Administrator shall provide an accounting of any and all funds in the Settlement Amount, including any interest accrued thereon and payments made pursuant to this Settlement Agreement, upon request by any of the Parties. The Claim Administrator will also provide the Parties on a weekly basis the amount of Claims made during the Claim Period.

3.20     All (i) Taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Deposit Amount, including any taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Deposit Amount for any period during which the Deposit Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) any expenses and costs incurred in connection with the operation and implementation of this Settlement Agreement (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Settlement Agreement ("Tax Expenses")), shall be paid out of the Settlement Amount; in all events the Released Parties and their counsel shall have no liability or responsibility for the taxes or the Tax Expenses. The Escrow Agent shall indemnify and hold each of the Released Parties and their counsel harmless for taxes and Tax Expenses (including, without limitation, taxes payable by reason of any such indemnification). Further, taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement, shall constitute a Settlement Administration Expense, and shall be timely paid by the Claim Administrator, as instructed by Defendants' Counsel, out of the funds available to pay Settlement Administration Expenses without prior order from the Court and the Claim Administrator shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)).

3.21 Unless otherwise ordered by the Court, in the event the Settlement Agreement is terminated for any reason, then within fourteen (14) days after the Parties have provided the Court with notice that they are invoking this Section 3.21, the Claim Administrator shall return the Deposit Amount (including accrued interest) and any other funds Defendants have paid to the Claim Administrator or deposited or caused to be deposited in the Escrow Account, less Settlement Administration Expenses, and Tax Expenses, to Defendants pursuant to written instructions from Defendants' Counsel.

3.22 The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Settlement Amount; the determination, administration, or calculation of Settlement Benefits payments; the payment or withholding of taxes or Tax Expenses; any losses incurred in connection therewith; or any other action or omission of the Claim Administrator. No person shall have any claim of any kind against the Defendants, the Released Parties or Defendants' Counsel with respect to the matters set forth in sections 3.2 to 3.13 and 3.15 to 3.20 hereof; and Settlement Class Members, Plaintiffs, and Plaintiffs' Counsel release the Released Parties from any and all liability and claims arising from or with respect to the Claim Administrator's administration or distribution of the Settlement Amount. Nothing in this section 3.22 relieves any of the Released Parties from their obligation to comply with the terms of this Settlement Agreement.

## IV. NOTICE

4.1 The Claim Administrator will facilitate the notice process by assisting the Parties, including by providing notice of this settlement to the appropriate federal and state officials in the United States, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice"). The Claim Administrator shall serve notice of the Agreement that meets the requirements of 28 U.S.C. § 1715. The Claim Administrator will file a certification with the Court stating the date or dates on which the CAFA Notice was sent. Defendants will provide Class Counsel with copies of any substantive responses received in response to any CAFA Notice.

4.2    Prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in a downloadable PDF format; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel and Defendants' Counsel; the Agreement; the signed order of Preliminary Approval; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the motion for Final Approval and Plaintiffs' application(s) for Attorneys' Fees, Costs and Service Awards, and any Order on Final Approval.

4.3    The Claim Administrator will terminate the Settlement Website one hundred and twenty (120) days after either (1) the Effective Date, or (2) the date on which the settlement is terminated or otherwise not approved by the Court.

4.4    Notice to the Class shall be provided on websites and/or social media platforms chosen by the Claim Administrator and accessible to desktop and mobile users, so that overall notice of the Settlement is reasonably calculated to apprise the Settlement Class Members of the Settlement. Such notice shall begin no later than the Notice Date.  No later than thirty (30) days prior to the hearing on Final Approval, the Claim Administrator shall submit a declaration to the Court under penalty of perjury explaining how the media were chosen and attesting to the number of impressions delivered.

4.5    The Claim Administrator shall establish and maintain a toll-free telephone helpline, available 24 hours per day, where callers may obtain information about the Settlement and Action.

4.6    Defendants and Class Counsel shall supervise the Claim Administrator in the performance of the Notice functions set forth in this Section IV. However, Settlement Class Members shall have no recourse as to the Released Parties with respect to any claims they may have that arise from any failure of the Notice process provided that the Released Parties comply with any obligations they have under this Section IV of this Settlement Agreement.

4.7	At least seven (7) days prior to the Final Approval hearing referenced in Section VI of this Agreement, Defendants, Class Counsel, and the Claim Administrator shall certify to the Court that the Claim Administrator has complied with the notice requirements set forth herein.

4.8	Defendants shall be responsible for paying all costs of Notice as set forth in this Section IV and all costs of the Claim Administrator in processing objections and exclusion requests as set forth in Sections 6.6 through 6.13, subject to the limitation set forth in Section 3.14 permitting Defendants to withhold payment for Claim Administrator fees that exceed $750,000.

4.9	Communications with Class Members:  All formal communications to Class Members regarding the Notice of the Settlement or otherwise shall be made by the Claim Administrator, including any third parties the Claim Administrator may retain. Plaintiffs' Counsel and Defendants' Counsel may respond to objectors and Plaintiffs' Counsel may respond to direct inquiries from Class Members and shall forward nonprivileged communications from objectors to the Claim Administrator, copying Defendants' Counsel.

4.10	Public Statements.  Other than publication of the Class Notice, none of the Parties, Class Counsel, or Defense Counsel will make or cause to be made any public statement (including without limitation any press release, statement to the media, or statement to a third-party claims promotion site) regarding the existence of this Settlement Agreement or its terms, unless required by the Notice Plan or ordered by the Court.  This does not prohibit disclosures about this Settlement to individual accounting, tax, or other professionals as may be necessary, or as otherwise appropriate for compliance with federal and state laws, including federal securities laws.  Plaintiffs' Counsel, Class Representatives, Defendants, and Defendants' Counsel agree not to make any statement or otherwise take any action to disparage any Party's reputation in connection with this Settlement.

## V.     ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE PAYMENT

5.1     <u>Attorneys' Fees, Costs, and Expenses</u>.  No later than thirty (30) days prior to the initially scheduled hearing on Final Approval, Plaintiffs' Counsel will apply to the Court for a Fee Award.  The total amount awarded by the Court for the Fee Award shall cover all Attorneys' Fees and Costs incurred by Plaintiffs' Counsel in the Action without limitation, including, but not limited to any court orders to pay sanctions to Plaintiffs' Counsel. Plaintiffs' Counsel submits to the jurisdiction of this Court for the enforcement of this provision of the Agreement and for enforcement of all other provisions of this Agreement.  Any such Fee Award shall be paid exclusively from the Settlement Amount.  In no event shall Defendants have any other obligation to pay any amount of Attorneys' Fees and Costs other than the Fee Award awarded by the Court. The disposition of Plaintiffs' Counsel's application for a Fee Award is within the sound discretion of the Court and is not a material term of this Settlement Agreement.  It is not a condition of this Settlement Agreement that such application be granted.  Any disapproval or modification of such application by the Court shall not affect the enforceability of the Settlement Agreement or provide any of the Parties with the right to terminate the Settlement Agreement.  In no event shall any action by the Court impose any obligation on the Defendants to increase the consideration paid in connection with the Settlement.

5.2     <u>Service Awards</u>.  No later than thirty (30) days prior to the initially scheduled hearing on Final Approval, Plaintiffs will apply to the Court for a Service Award in an amount not to exceed $5,000 each (for a total of $15,000), subject to approval by the Court, as compensation for the work they performed to represent the class (including, but not limited to, providing discovery in response to document requests and interrogatories and sitting for their depositions).

5.3     <u>Defendants' Rights to Oppose</u>.  Defendants reserve all rights to oppose any application by Plaintiffs' Counsel for Attorneys' Fees and Costs.

5.4     <u>Plaintiffs' Lack of Right to Terminate</u>.  In the event the Court approves the Settlement Agreement but declines to award Attorneys' Fees and Costs in the amount requested by Plaintiffs' Counsel, the Settlement will nevertheless be binding on the Parties.  Plaintiffs'

Counsel and Plaintiffs agree that the denial, downward modification, failure to grant the request for Attorneys' Fees and Costs or a Service Award, or the reversal or downward modification on appeal of any such awards, shall not constitute grounds for modification or termination of the Settlement.

5.5     The Parties agree that, over and above the Court-approved Fee Award, each of the Parties, including all Settlement Class Members, shall bear their own fees and costs, including, but not limited to, those relative to the investigation, filing, prosecution or settlement of the Action; the negotiation, execution, or implementation of this Settlement Agreement; and/or the process of obtaining, administering or challenging a certification order and/or Final Approval.  If Plaintiffs' Counsel appeals the Court's ruling on their application for a Fee Award, the ruling of the appellate court (regardless of its substance) shall not constitute a material alteration of a term of this Settlement Agreement.  All claims for Attorneys' Fees and Costs that Plaintiffs' Counsel, Named Plaintiffs, and the Settlement Class Members may possess against Defendants or the Released Parties have been compromised and resolved in this Settlement Agreement and shall not be affected by any appeal that Plaintiffs' Counsel may file.

5.6     Any Service Awards awarded under Section 5.2 shall be paid exclusively out of the Settlement Amount.  Defendants shall have no obligation to contribute any funds toward payment of Service Awards beyond the funds contributed to the Settlement Amount. In the event the Court awards Service Award amounts in excess of the amount specified in Section 5.2, Defendants shall have the option, in their sole and complete discretion, to terminate this Settlement Agreement, in which case the terms and provisions of this Settlement Agreement will have no further force and effect with respect to the Parties, and the Parties will be restored to their respective places in the Action as of the Court's March 2, 2023 order staying the case deadlines.

Defendants shall be responsible for paying their own attorneys' fees and expenses.

5.7     Any Fee Award and any Service Award(s) shall be paid to Plaintiffs' Counsel within sixty (60) days after the Effective Date.

5.11 The terms of this Agreement relating to the Fee Award were not negotiated by the Parties before full agreement was reached as to all other material terms of the proposed Settlement, including, but not limited to, any terms relating to the relief to the Settlement Class. The agreement of the Plaintiffs to the Settlement is not conditioned on the amount of Service Awards the Court approves.

5.12 In the event the Judgment entered pursuant to this settlement does not become final or is ultimately overturned on appeal, Plaintiffs' Counsel shall immediately return in full the amount of any Fee Award and Service Award(s) previously paid to them.

5.13 The procedure for and the allowance or disallowance by the Court of any applications for a Fee Award and Service Awards to be paid out of the Settlement Amount, are not conditions of this Settlement Agreement, and any order or proceeding relating to the Fee Award or Service Awards, or any appeal from any order relating thereto or reversal or downward modification thereof, shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Final Approval Order and Judgment approving this Settlement Agreement and the Settlement set forth therein.

5.14 Plaintiffs' Counsel shall provide Defendants with all necessary accounting and tax information, including W-9 forms, with reasonable advance notice to allow Defendants to make any Fee Award and Service Award payment(s) as set forth above. Once Defendants make any Fee Award and Service Award payment(s) as directed in writing by Plaintiffs' Counsel, Defendants shall have no further obligation to pay any additional sums to Plaintiffs' Counsel under this Agreement and shall be held harmless and indemnified by Plaintiffs' Counsel for the division and disbursements of the Fee Award amongst and between Plaintiffs' Counsel, and for the division and disbursements of the Service Awards amongst and between Plaintiffs.

5.15 In the event that any Class Members object to any aspect of this Settlement, Defendants shall under no circumstances be obligated or required to pay attorneys' fees or costs claimed by or associated with such objectors (if any).

## VI.    CLASS SETTLEMENT PROCEDURES

6.1        Class Certification.  The Parties agree that, for settlement purposes only, this Action shall be certified as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) with Representative Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel.

6.2        In the event the Settlement Agreement is terminated for any reason, the certification of the Settlement Class shall be vacated, and the Action shall proceed as if the Settlement Class had not been certified, and the parties will be restored to their respective places in the Action as of the Court's March 2, 2023 order staying the case deadlines. Defendants' conditional consent herein to certification of the Class shall not be used against Defendants by any Party or non-party for any purpose in this Action or any other litigation, lawsuit, or proceeding of any kind whatsoever.

6.3        Settlement Approval.  On or before June 2, 2023, Plaintiffs shall (i) move the Court for an order granting Preliminary Approval to this Agreement as within the range of possible Final Approval; approving Class Notice to the Settlement Class Members as described in Part IV above; setting a hearing to consider Final Approval of the Settlement and any objections thereto; and continuing the stay of all proceedings in the Action other than those necessary to obtain approval of the settlement; and (ii) move the United States  District Court for the Northern District of California for a stay of all proceedings in the *Dailey* Action pending Final Approval of the Settlement. Defendants shall have no obligation to make separate filings in support of the motion but may do so at their election after the motion has been filed. If the Court holds a Preliminary Approval hearing, Defendants shall appear at the hearing to confirm their agreement with the terms of the Settlement as provided herein. The Parties agree to the form and substance of the Proposed Order of Preliminary Approval, attached hereto as Exhibit D.

6.4        Second Amended Complaint for Settlement. Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that:

27

(a)      Plaintiffs shall seek leave of Court to file the Second Amended Complaint for Settlement, without material changes to the version attached hereto as Exhibit E, and Defendants shall consent to such amendment pursuant to Fed. R. Civ. P. 15(a)(2). The motion for leave to file the Second Amended Complaint for Settlement shall be filed concurrently with the motion for preliminary approval of the Settlement so that the Second Amended Complaint for Settlement may become operative upon the Court's preliminary approval of the Settlement. Obtaining the Court's approval to file the Second Amended Complaint for Settlement, and the filing of the Second Amended Complaint for Settlement, are material conditions of this Agreement.

(b)      The Parties agree and stipulate that Defendants may seek an order from the Court that the Allegations are deemed controverted by the answer previously filed by Defendants in response to the currently operative complaint in the Action, such that no further responsive pleading from Defendants is required.

(c)      If for any reason Final Approval of the Settlement does not occur, the Second Amended Complaint for Settlement shall be stricken from the record and the operative complaint in the Action shall be the complaint in effect as of March 2, 2023.

6.5      <u>Final Approval Order and Judgment</u>.  No later than thirty (30) days prior to the hearing on Final Approval, or otherwise in accordance with the Court's schedule for the Final Approval Hearing, Plaintiffs shall move for entry of an order of Final Approval, granting Final Approval of this Settlement and holding this Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not excluded themselves as provided below, and ordering that the settlement relief be provided as set forth in this Agreement, ordering the releases as set forth in Part VII, below, and entering judgment in this case. Defendants shall have no obligation to make separate filings in support of the motion. If the Court holds a Final Approval hearing, Defendants shall appear at the hearing to confirm their agreement with the terms of the Settlement as provided herein.

6.6     Exclusions and Objections.   The Class Notice shall advise prospective Settlement Class Members of their rights to forgo the benefits of this Settlement and pursue an individual claim; to object to this Settlement individually or through counsel; and, if they object, to appear at the Final Approval hearing.

6.7     If any Settlement Class Member wishes to object to the settlement, the Settlement Class Member must submit a written objection to the Claim Administrator. The written objection may be submitted by mail or personal delivery.  To be timely, it must be postmarked (in the case of a mail submission) or actually delivered to the Claim Administrator (in the case of personal delivery) no later than the Opt-Out and Objection Deadline.  Any Class Member filing an objection must be willing to demonstrate their standing (i.e., membership in the Class) in order for their objection to be valid. Each objection must include:  (i) the case name and number: *Sharpe et al. v. A&W Concentrate Co. et al.*, Case No. 19-cv-00768-BMC; (ii) the name, address, and telephone number of the objector; (iii) the name, address, and telephone number of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful, and legal and factual support for the right to such compensation; (iv) documents or testimony sufficient to establish membership in the Settlement Class; (v) a detailed statement of any objection asserted, including the grounds therefor; (vi) whether the objector is, and any reasons for, requesting the opportunity to appear and be heard at the Final Approval hearing; (vii) the identity of all counsel (if any) representing the objector who will appear at the Final Approval hearing and, if applicable, a list of all persons who will be called to testify in support of the objection; (viii) copies of any papers, briefs, or other documents upon which the objection is based; (ix) a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class litigations submitted in any state or federal court in the United States in the previous five (5) years (or affirmatively stating that no such prior objection has been made); and (x) the objector's signature, in addition to the signature of the objector's attorney (if any). Any Class Member who fails to submit a written objection by the Opt-Out and Objection Deadline containing all of the information listed herein shall not be

permitted to object to the Settlement and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by any means, including but not limited to an appeal. The failure of the Class Member to comply with the filing requirements above shall be grounds for striking and/or overruling the Objection, even if the Objection is submitted to the Claim Administrator. The Parties may respond to any objection to the Settlement with appropriate arguments and evidence. Any Party may seek Court approval, prior to the Final Approval hearing, to take a deposition of any Class Member who submits a timely written Objection.

6.8    Immediately upon receipt of any objection, the Claim Administrator shall forward the objection and all supporting documentation to counsel for the Parties. At least seven (7) days prior to the hearing on Final Approval, Plaintiffs' Counsel shall file all such objections and supporting documentation with the Court along with any response to the objection made by the Parties.

6.9    The right to object to the proposed Settlement must be exercised individually by a Settlement Class Member or their attorney, and not as a member of a group, class, or subclass.

6.10    Settlement Class Members who object to the proposed Settlement shall remain Settlement Class Members, and shall be deemed to have voluntarily waived their right to pursue an independent remedy against Defendants and the Released Parties. To the extent any Settlement Class Member objects to the proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Settlement Order and Judgment.

6.11    Exclusions: A Settlement Class Member may request to be excluded from the Settlement Class by downloading an exclusion from the Settlement Website and submitting to the Claim Administrator a completed exclusion form; or submitting a valid request to exclude themselves, as described in the Notice, to the Claim Administrator, and pursuant to the additional procedures:

(a)    Each request for exclusion must be in writing and signed with the requestor's signature.

(b)     A request for exclusion may be delivered to the Claim Administrator by mail or personal delivery.  To be timely, it must be postmarked (in the case of a mail submission) or received by the Claim Administrator (in the case of personal delivery) no later than the Opt-Out and Objection Deadline.

(c)     Requests for exclusion must include (i) the requestor's name, address and email address; (ii) the requestor's signature; (iii) the name and number of this Action; and (iv) a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement. Each request for exclusion can only request exclusion for that one Person.

(d)     A request for exclusion that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not emailed or postmarked within the time specified, shall be invalid, and the Person serving such a request shall remain a member of the Settlement Class and shall be bound as a Settlement Class Member by this Settlement Agreement, if approved. Any member of the Settlement Class who timely and validly elects to be excluded from this Settlement Agreement shall not: (i) be bound by any orders including the Final Settlement Order and Judgment; (ii) submit a Claim, receive a Settlement Benefit payment, or be entitled to any relief under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to object to any aspect of this Settlement Agreement.

6.12     The Claim Administrator shall receive and process requests for exclusion from the Settlement Class and promptly provide Plaintiffs' Counsel and Defendants' Counsel copies thereof. If the Claim Administrator receives any requests for exclusion after the deadline for the submission of such forms, the Claim Administrator shall promptly provide copies thereof to Plaintiffs' Counsel and Defendants' Counsel. The Claim Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and all such requests for exclusion to the Plaintiffs' Counsel and Defendants' Counsel, as requested.  No later than five (5) business days after the Opt-Out and Objection  Deadline, the Claim Administrator shall provide to

Plaintiffs' Counsel and Defendants' Counsel a complete opt-out list together with copies of the opt-out requests.

6.13    The proposed Preliminary Approval order and Long Form Notice will provide that any Settlement Class Member wishing to object or exclude themselves who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

6.14    No later than seven (7) days after the Opt-Out and Objection Deadline, the Claim Administrator shall prepare a list of the names of the Persons who, pursuant to the Long Form Notice, have excluded themselves from the Settlement Class in a valid and timely manner, and Plaintiffs' Counsel shall file that list with the Court.

6.15    If a Settlement Class Member submits both a Claim Form and an exclusion request, the Claim Form shall take precedence and be considered valid and binding, and the exclusion request shall be deemed to have been sent by mistake and rejected. Class Members who file a request for exclusion from this Settlement shall not be permitted to file an objection to this Settlement or to intervene. Copies of all requests for exclusion received by the Claim Administrator by the Opt-Out and Objection Deadline together with copies of any written revocations of requests for exclusion received by the Opt-Out and Objection Deadline, shall be delivered to the Parties' counsel no later than 5 (five) days after the Opt-Out and Objection Deadline, or at such other time as the Parties may mutually agree in writing. The Claim Administrator shall also prepare a list of the names of the persons who have filed a valid and timely request for exclusion, and Plaintiffs' Counsel shall file that list with the Court.

6.16    If a Settlement Class Member submits both an objection and an exclusion request, the exclusion shall take precedence and be considered valid and binding, and the objection shall be deemed to have been sent by mistake and rejected. Settlement Class Members may object to or opt out of the Settlement, but may not do both.

6.17    The Claim Administrator shall provide weekly reports and a final report to Plaintiffs' Counsel and Defendants' Counsel that summarize the Notice Plan, the number of

objections and requests for exclusion, the number of Claims made (both on a weekly basis and total amount) categorized by claims made without proof of purchase and claims made with proof of purchase and the total dollar value of the claims made, and other pertinent information as requested by Plaintiffs' Counsel and Defendants' Counsel.

6.18    Defendants may terminate this Settlement Agreement if 500 or more individuals have submitted valid and timely requests to exclude themselves from the Settlement. If Defendants elect to terminate the Settlement pursuant to this provision of the Settlement Agreement, they shall provide written notice no later than ten (10) business days after the Opt-Out and Objection Deadline. If Defendants terminate the Settlement under this section of the Agreement, they shall have no further obligations to pay the Settlement Amount and shall be responsible only for the fees and expenses actually incurred by the Claim Administrator, for which the Settlement Class representatives and Plaintiffs' Counsel are not liable.

6.19    This Settlement shall become final on the first date after which all of the following events and conditions have been met or have occurred (the "Effective Date"):

(a)    The Court has preliminarily approved this Settlement Agreement (including all attachments), the Settlement set forth herein, and the method for providing Class Notice;

(b)    The Court has entered a Final Settlement Order and Judgment in the Action; and

(c)    The last of the following with respect to the Final Settlement Order and Judgment approving this Settlement Agreement shall occur:

     (i)      the expiration of the time to file a motion to alter or amend the Final Settlement Order and Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed;

     (ii)     the time in which to appeal the Final Settlement Order and Judgment has passed without any appeal having been taken; and

     (iii)    if a motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement, substantially in accordance with the terms and conditions of this Settlement Agreement.

For purposes of this Settlement Agreement, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed by any Person who is not a Party to this Settlement Agreement in connection with approval or disapproval of this Settlement. Each Party to this Settlement Agreement agrees to not file any motion to alter or amend the Final Settlement Order and Judgment, or any appeal in connection with approval or disapproval of this Settlement other than an appeal or proceeding seeking subsequent judicial review pertaining solely to any Fee Award sought under Section 5.1 or Service Award(s) sought under Section 5.2. Any appeal or proceeding seeking subsequent judicial review pertaining solely to any Fee Award or Service Award(s) shall not in any way delay or affect the time set forth above for the Final Settlement Order and Judgment to become final, or otherwise preclude the Final Settlement Order and Judgment from becoming final.

     Court approval of any Fee Award sought by Plaintiffs' Counsel and/or the Service Awards sought for Plaintiffs, or any denial, decrease or modification thereof by the Court or on appeal, shall not prevent this Settlement from becoming final and effective if all other aspects of the final judgment have been approved, and the remainder of the terms of this Settlement shall remain in effect.

     If the Settlement is not made final, this entire Settlement Agreement shall become null and void, except that the Parties shall have the option to agree in writing to waive the event or condition

and proceed with this Settlement, in which event the Settlement Agreement shall be deemed to have become final on the date of such written agreement.

6.20 Termination of Agreement: The Parties shall each have the right to terminate this Settlement (but neither Party shall be obligated to do so), except as otherwise set forth in this Agreement, by providing written notice of their election to do so to the other Party within thirty (30) days of:

(a) the Court's declining to enter the Preliminary Approval order in substantially the form attached hereto or failing to maintain Preliminary Approval of the Agreement in a form materially similar to the one set forth in the Agreement;

(b) the Court refusing to approve this Agreement or any material part of it;

(c) any court requiring any material change or addition to the notice program described in the Notice Plan;

(d) any court materially modifying the Agreement in any manner, including, without limitation, any modification that (i) increases the financial costs to Defendants to greater than the Settlement Amount of $15,000,000, to be determined in Defendants' sole discretion; (ii) extends the Claim Filing Deadline; and/or (iii) changes the definition or scope of the Settlement Class;

(e) any court declining to enter the Preliminary Approval order or Final Settlement Order and Judgment;

(f) the date upon which the Final Settlement Order and Judgment is modified or reversed in any material respect by any court;

(g) in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and neither of the parties hereto elect to terminate this Agreement, the date that such Alternative Judgment is modified or reversed in any material respect by any court; or

(h) this Agreement not being upheld on appeal in any material respect.

6.21    <u>Effect if Settlement Not Approved or Agreement is Terminated</u>.    This Agreement was entered into only for purposes of settlement. In the event that Preliminary or Final Approval of this settlement and this Agreement (other than a downward modification of the Fee Award Plaintiffs' Counsel will seek under Section 5.1 or the Service Awards Plaintiffs will seek under Section 5.2) does not occur for any reason, or if Final Approval is reversed on appeal (other than a reduction of any Fee Award awarded to Plaintiffs' Counsel or a reduction of any Service Award awarded to Plaintiffs), then no term or condition of this Agreement, or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Action, or in any other proceeding, the Second Amended Complaint for Settlement shall be deemed automatically withdrawn, and the parties will be restored to their respective places in the Action as of the Court's March 2, 2023 order staying the case deadlines. The Parties agree that all drafts, discussions, negotiations, documentation, or other information prepared in relation to this Agreement, and the Parties' settlement discussions, shall be treated as strictly confidential and may not, absent a court order, be disclosed to any Person other than the Parties' counsel, and only for purposes of the Action. In addition, any objections or interventions may not be used as evidence in the Action or any other proceeding for any purpose whatsoever.

## VII.    RELEASES

7.1    Upon the Effective Date and by operation of the judgment, the Releasing Parties shall have fully, finally, and forever released, relinquished, and discharged against the Released Parties all Released Claims (including, without limitation, any unknown claims), as well as any claims arising out of, relating to, or in connection with the defense, settlement, or resolution of this Action or the Released Claims.

7.2    Plaintiffs expressly acknowledge that they are familiar with principles of law such as Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE**

**RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

With respect to the Settlement Class Members' Released Claims, each Settlement Class Member shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had under Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein. In connection with the release, the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein. Nevertheless, the Settlement Class Members acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Settlement Class Members in agreeing to this release to fully, finally, and forever settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action) constituting Settlement Class Members' Released Claims.

       7.3    <u>No Admission of Liability</u>. This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party. Each of the Parties understands and agrees that they have entered into this Settlement Agreement solely to eliminate the burden and expense of protracted litigation. The Parties have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Defendants have denied, and continue

to deny, that they have committed any act or omission giving rise to any liability or violation of law. Specifically, Defendants expressly have denied, and continue to deny, each and all of the claims alleged by Plaintiffs in the Action, along with all the charges of wrongdoing or liability against them arising out of any of the conduct, labels, statements, acts, or omissions alleged, or that could have been alleged, in the Action, and deny that consumers suffered any harm or injury. Defendants have asserted, and continue to assert, that their conduct was at all times proper and in compliance with all applicable provisions of law, and believe that the evidence developed to date supports their position that they acted properly at all times and that the Action is without merit. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action, and that class treatment of the claims is not appropriate. Plaintiffs and Plaintiffs' Counsel, on the other hand, continue to believe the claims have merit, that class certification is appropriate, and that they would prevail at trial.

       7.4       Under no circumstances may this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, proceedings, or statements made in connection with this Settlement, be used as an admission or as evidence of any fault or omission by the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the Released Parties, or for any other purpose, including without limitation, concerning the appropriateness of class certification, in these or any other actions against Defendant or any other Released Party. The Released Parties may file the Agreement and/or the Final Approval order in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

       For the avoidance of doubt, neither the Settlement, this Settlement Agreement (whether or not consummated), including any attachments or Exhibits hereto, the negotiations leading to the execution of this Settlement Agreement and the Settlement, nor any proceedings, communications, drafts, documents or agreements taken pursuant to or in connection with this Settlement

Agreement, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered or received against or to the prejudice of any Defendant as evidence of or be construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant of the truth of any allegations by Plaintiffs or any Settlement Class Members or the validity of any claim that has been or could have been asserted in the Action, or the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation, including, but not limited to, litigation of the Released Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Defendants or in any way referred to for any other reason as against any of the Defendants, in any civil, criminal, or administrative action or other proceeding;

(b) shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the Parties, in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Settlement Agreement is approved by the Court, the Released Parties may refer to it to effectuate the release granted them hereunder;

(c) shall be offered or received against or to the prejudice of any Plaintiff as evidence of or be construed as or deemed to be evidence of any presumption, concession, or admission by any Plaintiff of the merit or validity of any defense by Defendants; or

(d) shall be construed against Defendants, Plaintiffs, or the Settlement Class as evidence of a presumption, concession or admission that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial or in any proceeding other than this Settlement.

7.5     This Agreement and all negotiations, correspondence and communications leading up to its execution will be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles.

## VIII.  ADDITIONAL PROVISIONS

8.1     <u>Best Efforts</u>.  Subject to the limitations expressed herein, the Parties' counsel shall use their best efforts to: cause the Court to give Preliminary Approval to this Agreement and Settlement as promptly as practicable; take all steps contemplated by this Agreement to effectuate the Settlement on the stated terms and conditions; cooperate in addressing any objection; and obtain Final Approval of this Agreement. The Parties and their Counsel shall not encourage anyone directly or indirectly to opt out or object. If the Court requires changes to the Agreement as a prerequisite to Preliminary Approval or Final Approval, the Parties shall negotiate in good faith regarding such changes.

8.2     <u>Changes of Time Periods</u>.  The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Plaintiffs' Counsel and Defendants' Counsel, without notice to Settlement Class Members except that the Claim Administrator shall ensure that such dates are posted on the Settlement Website.

8.3     <u>Time for Compliance</u>.  All time periods set forth herein shall be computed in calendar days unless otherwise specified. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

8.4     <u>Governing Law</u>.  This Agreement is intended to and shall be governed by the laws of the State of Texas, without regard to conflicts of law principles that would require the application of the laws of another jurisdiction.

8.5     <u>Entire Agreement</u>.  The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement or representation. The Parties further intend that this Agreement constitutes the

complete and exclusive statement of its terms as between the Parties hereto, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this Agreement. Any amendment or modification of the Agreement must be in writing signed by each of the Parties and their counsel.

8.6     <u>Waiver of Reliance</u>.  Each Party expressly warrants and represents that they have had the opportunity to consult with an attorney and have carefully read and understand the scope and effect of the provisions of this Agreement.   Neither Party has relied upon any representations or statements made by the other Party hereto that are not specifically set forth in this Agreement.

8.7     <u>Fair Settlement</u>. Plaintiffs and Plaintiffs' Counsel, based on their own independent investigations and evaluations, have examined the benefits to be obtained under the terms of this Settlement Agreement and have considered the claims of Plaintiffs, the claims of the average Settlement Class Member, the risks associated with the continued prosecution of the Actions, and the likelihood of success on the merits of the Actions.  Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the significant expense, length, difficulty, and uncertainty of continued proceedings necessary to prosecute the Actions against Defendants through trial and appeals.  Plaintiffs and Plaintiffs' Counsel have also considered the uncertain outcome and the risk of continued litigation, especially in complex litigation such as the Action, as well as the difficulties and delays inherent in any such litigation.  Plaintiffs and Plaintiffs' Counsel believe that, after considering all the circumstances, the proposed Settlement set forth in this Agreement is a just, fair, reasonable, and favorable recovery in the best interests of the Settlement Class and confers substantial benefits upon the Settlement Class.

8.8     <u>Advice of Counsel</u>.    Plaintiffs warrant and represent that they are effecting this Settlement and executing this Agreement after having received full legal advice as to their respective rights and have been represented by Plaintiffs' Counsel in connection with entering into this Agreement. Plaintiffs further represent and warrant that they are entering into the Settlement on behalf of themselves individually and as representatives of the Class Members, of their own

free will and without the receipt of any consideration other than what is provided in the Settlement or disclosed to, and authorized by, the Court. Plaintiffs represent and warrant that they have reviewed the terms of the Settlement in consultation with Plaintiffs' Counsel and believe them to be fair and reasonable.

8.9     <u>Class Representatives Not Paid to Litigate</u>. Class Representatives represent and warrant that they are entering into the Agreement on behalf of themselves individually and as proposed representatives of the Class Members, of their own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court.

8.10    <u>Binding Agreement</u>.  This Agreement shall be binding upon and inure to the benefit of the respective heirs, successors, and assigns of the Parties hereto.

8.11    <u>No Waiver</u>.  The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

8.12    <u>No Assignment</u>.  Plaintiffs and Plaintiffs' Counsel represent and warrant that none of Plaintiffs' Claims referred to in this Litigation or this Settlement Agreement have been assigned, encumbered, or in any manner transferred in whole or in part.

8.13    <u>Execution in Counterparts</u>.  This Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Agreement in counterparts and/or by email, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

8.14    <u>Captions</u>.  Captions and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this Agreement.

8.15    <u>Extensions of Time</u>.  The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

8.16     Enforcement of this Agreement.  The Court shall retain jurisdiction to enforce, interpret, and implement this Agreement. All Parties hereto submit to the jurisdiction of the Court for these purposes.

8.17     Severability.  In the event that any provision hereof (other than sections 2.49, 3.15, 5.3, 5.12, 6.18, or 6.20) becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Settlement Agreement shall continue in full force and effect without said provision.

8.18     No Primary Drafter of Settlement Agreement.  The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual understanding after negotiation, with consideration by and participation of, the Parties hereto and their counsel.

8.19     Variance in Terms.  In the event of any variance between the terms of this Settlement Agreement and any of the Exhibits hereto, the terms of this Settlement Agreement shall control and supersede the Exhibit(s).

8.20     Authorization to Enter Settlement Agreement.  The individual signing this Settlement Agreement on behalf of Defendants represents that he/she is fully authorized by Defendants to enter into, and to execute, this Settlement Agreement on behalf of Defendants. Plaintiffs' Counsel represent that they are fully authorized to conduct settlement negotiations with Defendants' counsel on behalf of Plaintiffs, and to enter into, and to execute, this Settlement Agreement on behalf of the Settlement Class, subject to Court approval pursuant to Federal Rule of Civil Procedure 23(e).  Plaintiffs enter into and execute this Settlement Agreement on behalf of themselves, and as representatives of and on behalf of the Settlement Class, subject to Court approval pursuant to Federal Rule of Civil Procedure 23(e).

8.21     Plaintiffs to be Included in Settlement Class.  Plaintiffs hereby agree not to request to exclude themselves from the Settlement Class, and any such request shall be of no force or effect.

8.22     Notices.  All notices to the Parties or counsel required by this Agreement, shall be made in writing and communicated by mail or email to the following addresses:

If to Plaintiffs or Plaintiffs' Counsel:

> Michael R. Reese, Esq.
> REESE LLP
> 100 West 93rd Street, 16th Floor
> New York, New York 10025
> Telephone: (212) 643-0500
>
> Email: mreese@reesellp.com

If to Defendants or Defendants' Counsel:

> Russell H. Falconer, Esq.
> GIBSON, DUNN & CRUTCHER LLP
> 2001 Ross Avenue, Suite 2100
> Dallas, Texas 75201
> Telephone: (214) 698-3170
>
> Email: RFalconer@gibsondunn.com
>
> *With a copy to*
>
> Stephen Cole, Esq.
> Keurig Dr Pepper, Inc.
> 6425 Hall of Fame Lane
> Frisco, Texas 75034
> Telephone: (469) 404-8943
> E-mail: Stephen.Cole@kdrp.com

8.23    Protective Order.  All orders and designations regarding the confidentiality of documents and information remain in effect, and all Parties and counsel remain bound to comply with the Protective Order.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

DATED: May 30 2023


52E241EC515647F...

LaShawn Sharpe
*Plaintiff and Class Representative*

DATED: May 31, 2023


FXA598B1FEEC481...

Jim Castoro
*Plaintiff and Class Representative*

DATED: May 30 2023

Steve Dailey
_____

Steve Dailey
*Plaintiff and Class Representative*

DATED: May 30, 2023          **REESE LLP**



Michael R. Reese
*Co-Lead Class Counsel and Plaintiffs' Counsel*

**SHEEHAN & ASSOCIATES, P.C.**


F5B5F3CD9AE04B9...

Spencer Sheehan
*Co-Lead Class Counsel and Plaintiffs' Counsel*

45

**APPROVED AND AGREED (CONTINUED):**

DATED: 6-1-23

**DEFENDANT A&W CONCENTRATE COMPANY**

By: _____

Name: Anthony Shoemaker

Its: Chief Legal Officer

DATED: 6-1-23

**DEFENDANT KEURIG DR PEPPER INC.**

By: _____

Name: Anthony Shoemaker

Its: Chief Legal Officer

DATED: 6-2-23

**GIBSON DUNN & CRUTCHER LLP**

_____

Russell H. Falconer
*Defendants' Counsel*

46

# LIST OF EXHIBITS

Exhibit A:     Product List

Exhibit B:     Claim Form

Exhibit C:     Long Form Notice

Exhibit D:     Proposed Order of Preliminary Approval

Exhibit E:     Second Amended Complaint