**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
*spencer@spencersheehan.com*
60 Cutter Mill Road, Suite 409
Great Neck, New York 11021
Telephone: (516) 303-0552


**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Class*

United States District Court
Eastern District of New York

| | |
|---|---|
| Lashawn Sharpe, Jim Castoro and Steve Dailey, individually and on behalf of all others similarly situated<br><br>        Plaintiffs<br><br>    - against -<br><br>A & W Concentrate Company and Keurig Dr Pepper Inc.<br><br>        Defendants | Case No. 1:19-cv-00768-BMC<br><br>Second Amended Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiffs Lashawn Sharpe, Jim Castoro and Steve Dailey (collectively "Plaintiffs"), by their undersigned attorneys alleges upon information and belief, except for allegations pertaining to Plaintiffs, which are based on personal knowledge:

**INTRODUCTION**

1. A & W Concentrate Company and Keurig Dr Pepper Inc. ("Defendants") manufacture, market, distribute, bottle and sell "root beer" and "cream soda" carbonated soft drinks under the A & W brand ("Products"). Defendants prominently state "Made With Aged Vanilla" on their Products' labels.

2. The Products are sold in different size plastic and glass bottles and aluminum cans, in sizes such as 12 oz, 20 oz and 2 liters (67.6 oz). The Products are sold to consumers in individual bottles or cans or in cases from brick-and-mortar stores and online by third-parties. All Products, regardless of size or distribution channel, bear the common, uniform representation "Made with Aged Vanilla."

3. Consumers interpret the "Made with Aged Vanilla" representation to mean that vanilla is a characterizing flavor of the Products. Indeed, in a survey of four hundred and eleven (411) consumers conducted in March of 2020, no less than **89%** of the consumers stated that the "Made With Aged Vanilla" meant that the product was vanilla flavored.

4. Consumers also interpret the "Made with Aged Vanilla" representation to mean that the vanilla flavor comes exclusively (if not predominantly) from the vanilla plant. Indeed, in the March 2020 survey of four hundred and eleven (411) consumers, no less than **68%** of those consumers believed that the "Made With Aged Vanilla" representation meant the vanilla flavor "comes from a vanilla plant, such as vanilla extract, which is made from vanilla beans from the vanilla plant."

1

5. Unfortunately for consumers, the "Made With Aged Vanilla" representation is false and misleading. Specifically, scientific testing by Alliance Technologies in August of 2019 of the Products has revealed that the vanilla flavoring of the Products does not come exclusively or predominantly from the vanilla plant. Rather, the opposite is true as the testing has revealed that the predominant, if not exclusive, source of the vanilla flavor is from ethyl vanillin.

6. Ethyl vanillin **does not** come from the vanilla plant at all. Instead, it is an artificial, synthetic ingredient that is used as a cheap, inferior substitute for vanilla. *See* 21 C.F.R. § 182.60 (listing ethyl vanillin as a one of several "[s]ynthetic flavoring substances and adjuvants").

7. Plaintiffs now bring this action to stop Defendants' misrepresentation and recover the monies they paid for the Products as a result of the misrepresentation, as well as statutory damages and the other relief detailed below.

**HISTORIC BACKGROUND OF ROOT BEER AND CREAM SODA**

8. Root beer and cream soda are inextricably linked through their association with the coffee shops of their era – the luncheonette – and their principal flavoring component – vanilla.

9. Until the bottling industry matured to enable mass production, sodas were commonly handmade and dispensed at the soda fountain, a staple of every lunch counter, whether in a pharmacy, five-and-dime store or department store.

10. Though it is unknown who pioneered the idea of adding ice cream to carbonated water the "original" ice cream soda relied on the most popular flavor of ice cream – vanilla – as the "cream" in the "cream soda" name. Thus, the "cream" flavor provided by cream soda was derived from vanilla.

11. These delicacies were served up by the baristas of their day – "soda jerks" – who

took pride in their craft which was documented in detail.[1]

## **BACKGROUND ON THE VANILLA PLANT AND VANILLA FLAVORING**

12. Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated. The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for true vanilla flavorings.

13. The vanilla bean is not consumed by itself. It is necessary to scrape the seed from the pod, infuse it, or extract it. Vanilla extracts are considered the product type most equivalent to vanilla and are defined by regulations as solution in aqueous ethyl alcohol of the sapid and odorous principles extractible from vanilla beans. 21 C.F.R. § 169.175 ("Vanilla extract.")

14. Various commercial products are derived from the vanilla plant including extracts.

15. Ethyl alcohol content of such an extract is not less than 35% by volume, and the extractible matter of one or more units of vanilla constituent.

16. A unit of vanilla constituent is 13.35 ounces of beans containing not more than 25% moisture per gallon of finished extract, resulting in extractible matter of not less than 10.0125 ounces of beans on the moisture-free basis.

17. Vanilla flavoring is similar to vanilla extract but contains less than 35% ethyl alcohol by volume.

---

[1] *Standard Manual of Soda and Other Beverages*, 1897.

**DEFENDANTS' MISLEADING "MADE WITH AGED VANILLA" PRODUCTS**

18. Defendants prominently makes the claim "MADE FROM AGED VANILLA" on the front label panel of its Products, thereby cultivating a wholesome and natural image in an effort to promote the sale of its soft drink.







19. Consumers interpret the "Made with Aged Vanilla" representation to mean that vanilla is a characterizing flavor of the Products. Indeed, in a survey of four hundred and eleven (411) consumers conducted in March of 2020, no less than **89%** of the consumers stated that the "Made With Aged Vanilla" meant that the Product were vanilla flavored.

20. Consumers also interpret the "Made with Aged Vanilla" representation to mean that the vanilla flavor comes exclusively (if not predominantly) from the vanilla plant. Indeed, in the March 2020 survey of four hundred and eleven (411) consumers, no less than **68%** of those consumers believed that the "Made With Aged Vanilla" representation on Defendants' Products meant the vanilla flavor in the Products "comes from a vanilla plant, such as vanilla extract, which is made from vanilla beans from the vanilla plant."

21. Unfortunately for consumers, the "Made With Aged Vanilla" representation is false and misleading. Specifically, scientific testing of the products in August of 2019 by Alliance Technologies revealed that the vanilla flavoring of the Products does not come exclusively from the vanilla plant. Rather, the opposite is true as the testing has revealed that the main, if not exclusive, source of the characterizing vanilla flavor is from ethyl vanillin. Ethyl vanillin **does not** come from the vanilla plant at all, but rather is an artificial, synthetic ingredient that is used as a cheap, inferior substitute for vanilla. The result is a labeling scheme that is designed to mislead consumers, and which does so in violation of the consumer protection laws at issue here.

22. Furthermore, because vanillin, the main flavor compound in vanilla, has the same chemical profile whether obtained from vanilla beans or produced synthetically, the detection of the four marker compounds is used for authenticating real vanilla.

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehyde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

23. Notably, the scientific testing by Alliance Technologies does not indicate the presence of p-hydroxybenzaldehyde, p-hydroxybenzoic acid and vanillic acid. This evidences that if Defendants are using vanillin, it is not real vanilla from the vanilla plant.

24. Given the total absence of the non-vanillin marker compounds and the high level of ethyl vanillin, *if* any real vanilla is used, it is in trace or *de minimis* amounts not detectable by advanced scientific means. This is deceptive, as reasonable consumers interpret the "Made With Aged Vanilla" on Defendants' Products to mean that the vanilla flavoring in the Products comes exclusively from the vanilla plant.

## **DEFENDANTS' LABELING OF THE PRODUCTS ALSO VIOLATES FOOD AND DRUG ADMINISTRATION REGULATIONS**

25. Section 401 of the Federal Food, Drug and Cosmetic Act ("FFDCA") directs the Food and Drug Administration ("FDA") to establish standards and rules for food labeling where necessary to promote honesty and fair dealing in the interest of consumers. The authority granted by Congress to the FDA enables the agency to combat an economic problem: the marketing of foods from which traditional constituents were removed or in which new or different (often cheaper and artificial) ingredients were substituted. As such, the federal food standards are not safety standards, but rather, as the FDA explains, intended to "protect consumers from contaminated products and economic fraud" and have served as "a trusted barrier against substandard and fraudulently packaged food since their enactment in the 1938 FFDCA."

26. Consumers want the vanilla in vanilla flavored products to come from a real source, *i.e.,* from vanilla beans from the vanilla plant. Unfortunately, as in this case, companies adulterate their purported vanilla flavored products with cheap synthetics and substitutes such as ethyl vanillin – a substance manufactured in factories from synthetics and not from vanilla beans – in order to reap even larger corporate profits from consumers. As a result, vanilla fraud is rampant.

27. In order to combat this vanilla fraud, the FDA has strict rules regarding use of the term "vanilla" on the labels of food products. Specifically, only vanilla flavor derived from the vanilla bean is allowed to labelled "Vanilla" without any qualifiers. If the vanilla flavor comes in any part from non-vanilla bean sources, the FDA mandates that the label must so inform consumers. Sources of vanilla flavor, which are not from the vanilla bean but still considered "natural," are allowed to be called "Vanilla Flavored" or "Natural Vanilla Flavor." *See* 21 U.S.C. 101.22 (h)(7)(i)(1)(i)-(iii). This include non-vanilla bean "natural sources" of vanilla such as the anal gland of beavers (referred to as castoreum) or wood pulp (referred to as lignin).

7

28. If the vanilla flavoring comes from any synthetic source, such as ethyl vanillin (as it does with the Products here), the label must state either "Artificial Vanilla" or "Artificially Flavored Vanilla," or "Vanilla Artificially Flavored." *See* 21 C.F.R.101.22(h)(7)(i)(2) ("the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored,' in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., 'artificial vanilla,' 'artificially flavored strawberry,' or 'grape artificially flavored').

29. The labeling of Defendants' Products violates this regulation because it states "Made With Aged Vanilla." In order to comply with FDA regulations, Defendants should state either "Made With Artificial Aged Vanilla" or "Made With Artificially Aged Vanilla" or not make the representation at all. This violation of the FDA's regulations provides a separate and independent reason why Defendants have violated the consumer protection laws at issue here as detailed below.

30. The FDA regulations regarding vanilla flavoring effectively establish custom and practice in the industry so that consumers' experience with that custom and practice primes them to infer from the Products' labeling that the Products gets its vanilla flavor from the vanilla plant.

31. To the extent the Products disclose the presence of natural and artificial flavors, this <u>is in</u> addition to the claims that the Products are "Made with Aged Vanilla." Thus, the "Naturally and Artificially Flavored" statement suggests to consumers that it pertains to flavors in the Products other than vanilla. Consumers reasonably believe that the "Made with Aged Vanilla" means that, at least with respect to the vanilla flavor, the flavor is a natural flavor that comes from the vanilla plant.

32. The FDA also has a general prohibition on misleading labeling. *See* 21 U.S.C. § 343(a). Defendants also violate that here.

33. Defendants also violate numerous other sections of the FFDCA, including, but not limited to 21 U.S.C. §§ 343(c) and (f).

## CONSUMERS HAVE BEEN INJURED

34. Excluding tax, the Products cost no less than $1.99 per 12 oz, a premium price compared to other similar products.

## JURISDICTION ANDVENUE

35. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

36. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

37. This court has personal jurisdiction over Defendants because they conduct and transact business within New York and contract to supply and supplies goods within New York.

38. Venue is proper because Plaintiffs and many class members reside in this District and Defendants do business in this District and in New York.

39. A substantial part of events and omissions giving rise to the claims occurred in this District.

## PARTIES

40. Plaintiff LaShawn Sharpe is a resident of Brooklyn, New York. Plaintiff purchased Defendants' Root Beer and Cream Soda Products at a retail store in Brooklyn during the Class Period because he saw the Product labeling that stated "Made With Aged Vanilla." Plaintiff relied on Defendants' false, misleading, and deceptive "Made With Aged Vanilla" representation about the Product to believe that a characterizing flavor of the Product was vanilla and that the vanilla flavor came from the vanilla plant. Had Plaintiff known the truth – that the "Made With Aged Vanilla" representation relied upon in making the purchase was false, misleading, and deceptive – Plaintiff would not have purchased the Product at a premium price. If the Products were

9

reformulated such that the vanilla flavor came exclusively from the vanilla plant, or the Products were not deceptively labeled, Plaintiff would purchase the Product again in the future. Plaintiff brings the claims below seeking damages.

41. Plaintiff Jim Castoro is a resident of Bayside, New York. Plaintiff purchased Defendants' Root Beer and Cream Soda Products during the Class Period from retail stores in Bayside and College Point, New York because he saw the Product labeling that stated "Made With Aged Vanilla." Plaintiff relied on Defendants' false, misleading, and deceptive "Made With Aged Vanilla" representation about the Product to believe that a characterizing flavor of the Product was vanilla, and that the vanilla flavor came from the vanilla plant. Had Plaintiff known the truth – that the "Made With Aged Vanilla" representation relied upon in making the purchase was false, misleading, and deceptive – Plaintiff would not have purchased the Product at a premium price. If the Product were reformulated such that the vanilla flavor came exclusively from the vanilla plant, or the Products were not deceptively labeled, Plaintiff would purchase the Product again in the future. Plaintiff brings the claims below seeking damages.

42. Plaintiff Steve Dailey is a resident of Clearlake, California. Plaintiff purchased Defendants' Products from retail in California during the Class Period because he saw the Products' labeling that stated "Made With Aged Vanilla." Plaintiff relied on Defendants' false, misleading, and deceptive "Made With Aged Vanilla" representation about the Products to believe that a characterizing flavor of the Products was vanilla and that the vanilla flavor came from the vanilla plant. Had Plaintiff known the truth - that the "Made With Aged Vanilla" representation relied upon in making the purchase was false, misleading, and deceptive - Plaintiff would not have purchased the Products at a premium price. If the Products were reformulated such that the vanilla flavor came exclusively from the vanilla plant, or the Products were not deceptively labeled,

10

Plaintiff would purchase the Products again in the future. Plaintiff brings the claims seeking damages.

43. Defendant A & W Concentrate Company is a Delaware corporation with a principal place of business in Plano, Texas.

44. Defendant Keurig Dr Pepper Inc. is a Delaware corporation with a principal place of business in Burlington, Massachusetts.

45. Plaintiffs would purchase the Products again if there were assurances that the Products' representations were no longer misleading.

## **CLASS ALLEGATIONS**

46. The class is defined as of all consumers who purchased any Products in the United States at any time during the period February 7, 2016 to through June 2, 2023.

47. A class action is superior to other methods for fair and efficient adjudication.

48. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

49. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

50. Plaintiffs' claims and the basis for relief are typical to other members because all were subjected to the same representations.

51. Plaintiffs are adequate representatives because their interests do not conflict with other members.

52. No individual inquiry is necessary because the focus is only on Defendants' practices and the class is definable and ascertainable.

53. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

54. Plaintiffs' counsel are competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

55. Plaintiffs seek class-wide injunctive relief because Defendants' deceptive practices continue.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

### (On Behalf of Plaintiffs and Other Class Members)

56. Plaintiffs and the other Class members incorporate all prior allegations of this Complaint as if set forth fully herein.

57. The Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA") prohibits the use of any "[f]alse, misleading, or deceptive acts or practices," or any "unconscionable actions" in connection with "the conduct of any trade or commerce," including representations that goods have "characteristics, ingredients, uses, benefits, or qualities that they do not have," representations that goods "are of a particular standard, quality, or grade, . . . [when] they are of another"; advertising goods "with intent not to sell them as advertised." See Tex. Bus. & Com. Code §§ 17.46(5), (7), and (9).

58. Plaintiffs and the other members of the Class are "consumers" within the meaning of Tex. Bus. & Com. Code § 17.45(d).

59. Plaintiffs and the other Class members acquired the Products by purchase, primarily for personal or household use.

60. As detailed herein, Defendants employed false, misleading, and/or deceptive acts or practices in connection with their marketing, advertising, labeling, and/or selling of the Products.

61. Plaintiffs and the other Class members relied upon Defendants' false, misleading, and/or deceptive acts or practices, as described herein, in opting to purchase the Products.

62. Defendants' employment of false, misleading, and/or deceptive acts or practices, as described herein, was a producing cause of economic damages to Plaintiffs and the other Class members, and, as a result, are entitled to damages.

## SECOND CAUSE OF ACTION
## EQUITABLE RESTITUTION

### (On Behalf of Plaintiffs and Other Class Members)

63. Plaintiffs and the other Class members incorporate all prior allegations of this Complaint as if set forth fully herein.

64. Defendants obtained money and/or other benefits from Plaintiffs and the other Class members when Plaintiffs and the other Class members purchased the Products.

65. Defendants obtained those benefits wrongfully, inequitably, and/or by taking undue advantage of Plaintiffs and the other Class members because the Products were not as represented or expected. Under the circumstances, it would be inequitable, unconscionable, and unjust for Defendants to retain those benefits.

66. Defendants should be required to make restitution of those wrongfully obtained benefits by disgorging the amounts by which they were unjustly enriched as a result of their inequitable conduct.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying Plaintiffs as representatives and the undersigned as counsel for the Class;
2. Awarding monetary damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and experts; and
4. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues.

Dated: June 6, 2023

Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272


**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
*spencer@spencersheehan.com*
60 Cutter Mill Road, Suite 409
Great Neck, New York 11021
Telephone: (516) 303-0552

*Counsel for Plaintiffs
and the Class*