**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LASHAWN SHARPE, JIM CASTORO and STEVE DAILEY, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>                -against-<br><br>A & W CONCENTRATE COMPANY and KEURIG DR PEPPER,<br><br>                   Defendants. | Case No.: 1:19-cv-00768-BMC |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION AND PROCEDURAL BACKGROUND ........................................................ 1

BACKGROUND ............................................................................................................... 3

   I.    History of the Litigation and Settlement Negotiations ....................................... 3

   II.   The Terms of the Proposed Settlement ............................................................ 5

      A.   Certification of the Settlement Class.......................................................... 5

      B.   Relief for the Members of the Settlement Class .......................................... 5

      C.   Service Awards and Attorneys' Fees and Expenses ....................................... 5

      D.   Settlement Notice .................................................................................... 6

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT ................................................................................................................... 9

   I.    The Court Should Grant Final Approval of the Settlement Agreement. ............... 9

      A.   The Settlement Is Procedurally Fair............................................................ 10

         1.    The Class Representatives and Class Counsel Have
             Adequately Represented the Class............................................... 10

         2.    The Settlement Was Negotiated at Arm's Length. .................................. 10

      B.   The Settlement Is Substantively Fair. ......................................................... 11

         1.    All of the *Grinnell* Factors Weigh in Favor of the Settlement ................ 12

            a.   The complexity, expense, and likely duration of litigation ..................... 12

            b.   The reaction of the class to the settlement ........................................... 13

            c.   The stage of the proceedings and the amount of discovery completed ................... 13

            d.   The risks of establishing liability and damages ...................................... 14

            e.   The risk of maintaining class action status through trial ......................... 14

            f.   The ability of Defendants to withstand a greater judgment...................... 15

            g.   The range of reasonableness of the settlement in light of the best possible
              recovery and in light of all the attendant risks of litigation ..................... 15

    2.    The Remaining Rule 23(e)(2)(C) & (D) Factors Weigh
in Favor of Approval of the Settlement. .................................................. 17

II.    The Court Should Certify the Settlement Class. ............................................... 18

    A.    The Settlement Class Meets All Prerequisites of Rule 23(a). ....................... 18

        1.    Numerosity ....................................................................................... 19

        2.    Commonality ..................................................................................... 19

        3.    Typicality ........................................................................................ 20

        4.    Adequacy of representation .................................................................. 20

        5.    Ascertainability ................................................................................. 21

    B.    The Settlement Class Meets All Requirements of Rule 23(b)(3). .............................. 22

        1.    Common legal and factual questions predominate in this action. ........................... 22

        2.    A class action is the superior means to adjudicate Plaintiffs' claims. ..................... 23

CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 18, 22

*Banyai v. Mazur*, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) .................................................. 14

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78 (1st Cir. 2015) ............................................................ 15

*Bodon v. Domino's Pizza, LLC*, 2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ........................... 15

*Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179 (S.D.N.Y. 2012) ....................... 15, 20

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ...................................................... passim

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................................. 15

*In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .................. 14

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
   241 F.R.D. 185 (S.D.N.Y. 2007) ............................................................................................ 21

*In re Nassau Cty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .................................... 22, 23

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207
   (E.D.N.Y. 2013) ....................................................................................................................... 13

*In re Petrobras Sec. Litig.*, 862 F.3d 250 (2d Cir. 2017) ............................................................ 21

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*,
   2022 WL 3043103 (E.D.N.Y. Aug. 2, 2022) .................................................................. 8, 10, 11

*In re Sinus Buster Products Consumer Litig.*, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .... 15

*Manley v. Midan Rest. Inc.*, 2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) .......................... 12, 13

*Mantikas v. Kellogg Co.*, 910 F.3d 633 (2nd Cir. 2018) .............................................................. 19

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................................ 19, 20

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) .................................................. 7

*Mendez v. MCSS Rest. Corp.*, 2022 WL 3704591 (E.D.N.Y. Aug. 26, 2022) ............................ 17

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................. 12, 23

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................................................ 17

*Moses v. The New York Times Co.,* --- F.4th ---,
2023 WL 5281138 (2d Cir. Aug. 17, 2023) ................................................... passim

*Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2018 WL 3869896 (S.D.N.Y. Aug. 15,
2018) ......................................................................................................................... 21

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................ 20

*Rodriguez v. It's Just Lunch International*, 2020 WL 1030983 (S.D.N.Y. March 2, 2020) ........ 13

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) ............................................ 19

*Tart v. Lions Gate Entm't Corp.*, 2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015) ................... 22, 23

*Tiro v. Pub. House Investments, LLC*, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ................ 11

*Torres v. Gristede's Operating Corp.,* 519 F. App'x 1 (2d Cir. 2013) ........................................ 17

*Viafara v. MCIZ Corp.*, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ........................................ 15

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). ............................................. 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................. 7, 15

*Willix v. Healthfirst, Inc.*, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................... 14

*Zeltser v. Merrill Lynch & Co.*, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................... 13, 23

## **Rules**

Fed. R. Civ. P. 23 ............................................................................................... passim

On June 5, 2023, this Court granted the motion of Plaintiffs[1] for preliminary approval of the Settlement Agreement and certification of the Settlement Class. *See* ECF No. 121 ("Preliminary Approval Order"). Plaintiffs now move this Court for final approval of the Settlement and certification of the Settlement Class.

## INTRODUCTION AND PROCEDURAL BACKGROUND

The Settlement is an excellent result for the Settlement Class and should now receive final approval so that members of the Settlement Class can recover from the Settlement Amount of fifteen million dollars ($15,000,000). The Settlement would finally resolve the hotly contested claims of consumers who purchased A&W root beer or cream soda Products labeled as "Made With Aged Vanilla" between February 7, 2016, to June 2, 2023.[2]

Plaintiffs asserted that Defendants deceptively and misleadingly marketed their Products by labelling them as being "Made With Aged Vanilla." Plaintiffs alleged that this representation was misleading given that the source of vanilla flavor in the Products came from ethyl vanillin, which is not from the vanilla plant but rather an artificial flavor. The Settlement Agreement gives members of the Settlement Class close to a full refund of the premium price that they paid for the Products. It provides a minimum refund of $5.50 to Claimants regardless of whether or not they have Proof of Purchase, up to a maximum of $25.00, depending on the amount of Proof of Purchase they provide. In total, Defendants have committed to pay up to fifteen million dollars ($15,000,000) to pay for all valid Claims submitted by Claimants; costs of Notice and Claims Administration; payment of Class Counsel's attorney fees and expenses; and payment of service awards to each of the Class Representatives (all of whom spent considerable time on this matter,

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning that the Settlement Agreement ascribes to them. *See* ECF No. 119 ("Settlement" or "Settlement Agreement").

[2] A list of the Products at issue is set forth in Exhibit A to the Settlement. ECF No. 119-1.

including, but not limited to, responding to extensive discovery requests and sitting for their depositions).

As described in the Declaration of Jeanne C. Finnegan, APR of Kroll Notice Media Solutions, previously filed with the Court on June 2, 2023 (ECF No. 120-5) ("Finnegan Notice Decl."), Kroll as the Settlement Administrator is implementing a wide-ranging notice program. *See* Finnegan Notice Decl. at ¶¶ 1-6, 14-28. The media Notice Program is designed to reach 76% of the potential Settlement Class with an average frequency of 4 times each and an estimated 22,800,000 impressions. Finnegan Notice Decl. at ¶¶ 4, 20, 27. This notice program exceeds the recommendation of the Federal Judicial Center that a publication notice plan reach over 70% of targeted class members. *Id.* at ¶ 5.

Importantly, the response from the Settlement Class has been overwhelmingly positive. To date, no class member has objected, and only one person has opted out of the settlement class. *See* Declaration of Michael R. Reese in Support of Final Approval ("Reese Final Approval Decl."), filed simultaneously with this memorandum, at ¶ 22. In stark contrast, more than two hundred thousand (200,000) claims have been filed to date, with several months of the claims period still remaining for claimants to file claims. Reese Final Approval Decl. at ¶ 22.

The Settlement easily meets the factors enumerated by Federal Rule of Civil Procedure 23(e)(2), as amended in 2018, as well as the standards set forth by the Second Circuit in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*") for the procedural and substantive fairness of the Settlement. Accordingly, the Settlement should be finally approved.

Lastly, this class action settlement readily satisfies the requirements of Federal Rule of Civil Procedure 23, supporting certification of the Settlement Class.

## I. History of the Litigation and Settlement Negotiations

This litigation has been pending for over four years and has been hard-fought during its entire pendency. *See* Reese Final Approval Decl. at ¶¶ 7-15.

On February 7, 2019, Plaintiff LaShawn Sharpe filed a putative class action complaint in the United States District Court for the Eastern District of New York captioned *Sharpe et al. v. A&W Concentrate Co. et al.*, Case No. 19-cv-00768-BMC ("*Sharpe* Action"), against Defendants on behalf of herself and all others similarly situated. Reese Final Approval Decl. at ¶ 6. This complaint was later amended on April 10, 2020 to add Jim Castoro and Christine Cooney[3] as additional plaintiffs. *Id.* On April 10, 2020, Plaintiff Steve Dailey filed a putative class action complaint in the United States District Court for the Northern District of California, *Dailey v. A&W Concentrate Co. et al.,* Case No. 4:20-cv-02732-JST ("*Dailey* Action"). Reese Final Approval Decl. at ¶ 6. Both the *Sharpe* Action and the *Dailey* Action are based on the allegation that the "Made With Aged Vanilla" claim on Defendants' Products was misleading to a reasonable consumer because the Products contained ethyl vanillin, which is an artificial vanilla flavoring. *Id.*

Defendants aggressively fought this litigation. Reese Final Approval Decl. at ¶¶ 7-15. Indeed, this litigation has included two motions to dismiss; two motions for summary judgment; two contested motions for class certification; a motion to decertify; and motion practice to compel discovery. *Id.* at ¶¶ 7-9. The Parties have engaged in significant discovery, including, but not limited to, extensive document production; numerous interrogatories; and nineteen (19) depositions, including that of factual and expert witnesses. Each of the three Plaintiffs were

---

[3] Christine Cooney was subsequently dismissed as a plaintiff on May 7, 2021.

deposed, and each provided responses to document requests and interrogatories. *Id.* at ¶ 10.

The Parties also conducted several mediation sessions, first with the Honorable John Mott (Ret.), then with the Honorable Wayne Andersen (Ret.). On January 19, 2023, the Parties conducted the last of three serious and informed arms-length negotiations via mediation with the Hon. Wayne Andersen (Ret.). Soon after the conclusion of the mediation, Judge Andersen made a mediator's proposal, which the Parties accepted on February 1, 2023. Only after agreement as to material terms of Settlement, did the Parties discuss attorney fees and costs. The Parties only reached agreement on the payment of Class Counsel's fees and costs on August 17, 2023. Reese Final Approval Decl. at ¶¶ 11-15.

Plaintiffs' objective in filing the Actions was to compensate Settlement Class Members damaged by the alleged misrepresentations. Through this litigation and the Settlement Agreement, Plaintiffs achieved substantial relief for the Settlement Class. Defendants have committed to paying up to $15,000,000 to pay for claims; class notice and claims administration; payment of Class Counsel's fees and expenses; and payment of service awards to the three Class Representatives. Each Settlement Class Member who makes a claim will receive a minimum of $5.50, even if they do not have proof of purchase, and up to $25 with proof of purchase.

Thus, the Settlement is an outstanding result for Plaintiffs and the members of the Settlement Class.

The Parties only reached the Settlement after conducting substantial motion practice and discovery and engaging in extensive arm's-length, good-faith negotiations, including several mediation sessions.While providing significant benefits for the Settlement Class Members, the Settlement also takes into account the substantial risks the Parties would face if the Actions progressed to trial. Reese Final Approval Decl. at ¶¶ 7-15, 17-21.

## II.   The Terms of the Proposed Settlement

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed-upon Settlement relief, and proposes a plan for disseminating notice to the Settlement Class Members.

### A.   Certification of the Settlement Class

Under the Settlement Agreement, the Parties agree to seek certification of a nationwide Settlement Class defined as follows:

> All consumers in the United States who purchased the Products during the period of February 7, 2016, to June 2, 2023.

> Excluded from this definition are the Released Parties, any government entities, persons who made such purchase for the purpose of resale, persons who made a valid, timely request for exclusion, and the Hon. Brian M. Cogan, the Hon. John Mott (Ret.) and the Hon. Wayne Andersen (Ret.), and any members of their immediate family.

### B.   Relief for the Members of the Settlement Class

The Settlement Agreement provides for substantial monetary relief. Defendants will pay up to fifteen million dollars ($15,000,000) to pay claims to members of the Settlement Class; the cost of notice and claims administration; Class Counsel's fees and expenses; and service awards to each of the three Class Representatives. *See* Settlement Agreement at § 2.49.

### C.   Service Awards and Attorneys' Fees and Expenses

Class Counsel is seeking payment of Service Awards of $5,000 to each of the three Class Representatives (for a total of $15,000) to compensate them for time and effort they took in their capacities as class representatives, including, but not limited to, responding to discovery requests and sitting for their depositions. Settlement Agreement at § 5.2. With respect to Class Counsel's fees and expenses, Class Counsel are seeking $3,225,000, which Defendants have agreed not to oppose. *See* ECF No. 123 (Notice of Federal Civil Procedure Rule 23(e)(3) Statement and Agreement Between the Parties Regarding Payment of Class Counsel's Fees and Expenses).

**D. Settlement Notice**

The Court appointed Kroll Settlement Administration ("Kroll") to administer the notice process. Preliminary Approval Order, ECF No. 121, at 5. In terms of the methods of notice, the Parties developed a robust notice program with the assistance of Kroll that included: (1)-comprehensive digital media based notice; (2) a dedicated Settlement Website through which Settlement Class members can obtain more detailed information about the Settlement and access case documents; and (3) a toll-free telephone helpline through which Settlement Class members can obtain additional information about the Settlement and request the class notice and/or a Claim Form. *See* Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC previously filed with the Court on June 2, 2023, ECF No. 120-6, ("Fenwick Decl.") at ¶¶ 3-6. Pursuant to the notice plan, 22,800,000 million digital impressions are being disseminated. Finnegan Notice Decl. at ¶ 20. The media portions of the Notice Program are delivering an approximate 76% reach with an average frequency of 4 times each. Finnegan Notice Decl. at ¶ 4.

Under the Settlement Agreement, the Settlement Website posted Settlement-related and case-related documents such as the Long Form Notice in downloadable PDF format; answers to frequently asked questions; a Contact Information page that includes the address, telephone, and email for the Claim Administrator; the Settlement Agreement; the signed order of Preliminary Approval; the Second Amended Class Action Complaint; the Approved Product List; a downloadable and online version of the Claim Form; and the motion for final approval and the motion for Payment of Attorneys' Fees, Costs and Service Awards. The Settlement Website also includes procedural information regarding the status of the Court approval process, such as announcements of the Final Approval Hearing date (which has been updated to reflect the new date of October 19, 2023). Fenwick Decl. at ¶ 4. To allow for the maximum convenience of the Settlement Class Members, claims may be submitted online. *Id.*

As part of the Settlement, Defendants agreed to pay for the substantial cost of notice and claims administration. The Notice Program, discussed above and in detail in the Finnegan Notice Declaration and Fenwick Declaration, is the best notice that is practicable under the circumstances and fully comports with due process and Federal Rule of Civil Procedure 23. The Notice Program includes a robust media campaign consisting of state-of-the-art internet advertising, a comprehensive social media campaign, and a paid search campaign. The Notice Program also provides for the implementation of a dedicated settlement website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

## LEGAL STANDARD

The Second Circuit has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Visa*, 396 F.3d at 117 (citation omitted). Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." *Moses v. The New York Times Co.,* – F.4th –, 2023 WL 5281138, at *4 (2d Cir. Aug. 17, 2023) (citing Fed. R. Civ. P. 23(e)(2)).

The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Moses*, 2023 WL 5281138, at *4-7. "To evaluate the fairness, reasonableness, and adequacy of a class settlement, [the Second Circuit has] historically applied the nine factors set out in *Grinnell Corp.*, 495 F.2d at 463." *Id.* at *4.

"In 2018, Rule 23 was amended to list specific factors relating to the court's approval of the class settlement." *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 2022 WL 3043103, at *4 (E.D.N.Y. Aug. 2, 2022). "The revision was not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance, including whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account:

    **(i)**    the costs, risks, and delay of trial and appeal;
    **(ii)**    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    **(iii)**    the terms of any proposed award of attorney's fees, including timing of payment; and
    **(iv)**    any agreement required to be identified under Rule 23(e)(3);

(D) The proposal treats Class Members equitably relative to each other.

*Moses*, 2023 WL 5281138, at *4 (quoting Fed. R. Civ. P. 23(e)) (internal quotation on citation omitted). "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Id*. As the Second Circuit recently explained, "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement. But the rule now mandates courts to evaluate factors that may not have been highlighted in our prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements."

Here, under the standard set by the Second Circuit and the Federal Civil Procedure Rule 23(e), as amended in 2018, the Settlement Agreement is both procedurally and substantively fair and is appropriate for approval.

## ARGUMENT

**I.     The Court Should Grant Final Approval of the Settlement Agreement.**

Class Counsel have worked steadfastly to reach a fair, reasonable, and adequate Settlement. *See generally* Reese Final Approval Decl. The Class Representatives and Class Counsel believe the claims the Settlement resolves are strong and have merit. Reese Final Approval Decl. at ¶ 18. They recognize, however, that significant expense and risk are associated with continuing to prosecute the claims through trial and any appeals. *Id.* at ¶¶ 19, 21. In negotiating and evaluating the Settlement, the Class Representatives and Class Counsel have taken these costs and uncertainties into account, as well as the delays inherent in complex class action litigation. *Id.* Additionally, in the process of investigating and litigating the Actions, Class Counsel conducted significant research on the consumer protection statutes at issue, as well as the overall legal landscape, to determine the likelihood of success and reasonable parameters under which courts have approved settlements in comparable cases. Class Counsel also engaged in significant contested motion practice, including opposing motions to dismiss; summary judgment practice; contested motions for class certification; and motion practice regarding discovery. Class Counsel also engaged in extensive discovery, including extensive document production, interrogatories, and requests for admissions. Class Counsel also deposed both factual and expert witnesses of the Defendants, as well as defending their own expert witnesses in depositions and those of the three Class Representatives. For the foregoing reasons, Class Counsel believe this Settlement provides significant relief to the Settlement Class Members and is fair, reasonable, adequate, and in the best interests of the Settlement Class. *Id.* at ¶¶ 18, 19, 21.

**A. The Settlement Is Procedurally Fair.**

The first two factors under Rule 23(e)(2) concern the procedural fairness of the settlement, that is "the conduct of the litigation and of the negotiations leading up to the proposed settlement[.]"*In re Restasis*, 2022 WL 3043103, at *5.

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class.

The Class Representatives and Class Counsel have more than adequately represented the interest of the Settlement Class in this case. The Class Representatives were involved significantly in litigating these Actions, including by reviewing the complaints and other case documents, communicating with Class Counsel regarding the status of the cases and participating in the multiple days of mediation of the Actions; responding to discovery requests from Defendants; and sitting for their depositions. The Class Representatives fulfilled their responsibility of advancing and protecting the interests of the Settlement Class and evaluating the proposed Settlement to determine that it is in the best interests of the Settlement Class.

Class Counsel also more than adequately represented the Settlement Class. As detailed above, Class Counsel performed an extensive investigation into the claims at issue; engaged in significant motion practice on behalf of the Class; engaged in extensive discovery, including, but not limited to, numerous depositions of fact witnesses and expert witnesses; and participated in several full day mediation sessions. Class Counsel have relied on their significant experience in litigating and resolving class actions in order to reach a Settlement that Class Counsel believe is an excellent result for the Settlement Class. *See generally* Reese Final Approval Decl.

### 2. The Settlement Was Negotiated at Arm's Length.

Although there is no presumption of fairness simply because a settlement agreement resulted from arm's length negotiations, *Moses,* 2023 WL 5281138 at *4, participation of a highly

qualified mediator in settlement negotiations supports this core factor of Rule 23(e). which

supports a finding that a settlement should be approved. *Tiro v. Pub. House Investments, LLC*,

2013 WL 2254551, at *2 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS

employment mediator . . . reinforces that the Settlement Agreement is non-collusive.").

Here, the Parties participated in informed arm's length negotiations before two highly

qualified mediators, first the Honorable John Mott (Ret.) and then the Honorable Wayne Andersen

(Ret.). The multiple mediation sessions led to an agreement in principle to settle the case and,

ultimately, the finalized Settlement Agreement. Reese Final Approval Decl. at ¶¶ 11-13.

The Settlement Agreement is procedurally fair.

**B. The Settlement Is Substantively Fair.**

Factors (C)-(D) of Rule 23(e)(2) "are 'substantive,' addressing 'the terms of the proposed

settlement." *In re Restasis*, 2022 WL 3043103, at *5. In this Circuit, to demonstrate the substantive

fairness of a settlement agreement, a party must show that the factors the Second Circuit set forth

in *Grinnell* weigh in favor of approving the agreement. *Moses,* 2023 WL 5281138, at *4. The

*Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; (9) the
> range of reasonableness of the settlement fund to a possible recovery in light of all
> the attendant risks of litigation.

*Id.*, at 4, n. 3.

"Although the factors outlined in *Grinnell* and the revised Rule 23(e)(2) largely overlap,

the rule now requires courts to expressly consider two core factors when reviewing the substantive

fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of

class members." *Moses,* 2023 WL 5281138, at *5.

Here, both the Rule 23(e)(2)(C) and (D) factors and *Grinnell* factors overwhelmingly favor final approval of the Settlement Agreement.

### 1. All of the *Grinnell* Factors Weigh in Favor of the Settlement

#### a. *The complexity, expense, and likely duration of litigation*

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015). Consumer class action lawsuits, like these Actions, are complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley v. Midan Rest. Inc.*, 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016)("Most class actions are inherently complex[.]"). Should the Court decline to approve the Settlement Agreement, further litigation would resume. Such litigation could include contested class certification (and possibly decertification) proceedings and appeals, including competing expert testimony and contested *Daubert* motions and trial. Reese Final Approval Decl. at ¶¶ 19, 21. Each step towards trial has been, and would continue to be, subject to Defendants' vigorous opposition and appeal. *Id.* Indeed, at the time of settlement, Defendants filed a motion for summary judgment pending, which, if successful, would have resulted in no class members receiving any benefit. Even if the case were to proceed to trial, any final judgment would likely be appealed, which would take significant time and resources. (*Id.*) These litigation efforts would be costly to all Parties and would require significant judicial oversight. (*Id.*)

In short, "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 WL 1274577 at *9 (S.D.N.Y. Mar. 30, 2016) (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.*

For all of these reasons, this factor weighs strongly in favor of final approval.

**b.** ***The reaction of the class to the settlement***

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Rodriguez v. It's Just Lunch International*, 2020 WL 1030983, *4 (S.D.N.Y. March 2, 2020) (citing *Grinnell*). Here, the Settlement Class Members have until August 28, 2023 to object to or opt-out of the Settlement. As of August 18, 2023, no class member has objected and only one person has opted out. *See* Reese Final Approval Decl. at ¶ 22. At the same time, and in stark contrast, more than two hundred (200,000) claims have been submitted as of August 18, 2023, with several months remaining for class members to submit claims. *Id.* This suggests nearly universal support for the Settlement and constitutes strong circumstantial evidence supporting its fairness.

**c.** ***The stage of the proceedings and the amount of discovery completed.***

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

Here, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly." *Manley*, 2016 WL 1274577, at *9. Class Counsel have conducted extensive discovery related to claims, including interrogatories; requests for admission; review of voluminous document production; and, numerous depositions, both of factual and expert witnesses. Reese Final Approval Decl. at ¶ 10; *see also Zeltser v. Merrill Lynch & Co.*, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014) ("Here, through both formal discovery and an informal exchange of information prior to mediation, Plaintiffs obtained sufficient discovery to weigh the

strengths and weaknesses of their claims and to accurately estimate the damages at issue."). Consequently, Plaintiffs had sufficient information to evaluate the terms of the proposed Settlement.

### d. *The risks of establishing liability and damages*

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011)."[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007).

Plaintiffs recognize that, as with any litigation, the Actions involve uncertainties as to their outcome. Reese Final Approval Decl. at ¶ 21. Defendants continue to deny all of Plaintiffs' allegations, and should this matter proceed, Defendants will vigorously defend themselves on the merits. *Id.* at ¶ 19. Defendants would likely appeal, if possible, decisions in Plaintiffs' favor. *Id.* Absent this Settlement, Defendants would continue to challenge Plaintiffs at every litigation step, presenting significant risks of ending the litigation while increasing costs to Plaintiffs and the Settlement Class Members. *Id.* Further litigation presents no guarantee for recovery, let alone a recovery greater than the recovery for which the Settlement provides. *Id.*

For these reasons, the risks of establishing liability and damages strongly support final approval under both *Grinnell* and Rule 23(e)(2)(C)(i)

### e. *The risk of maintaining class action status through trial*

Defendants have stated that but for the Settlement, they would continue to vigorously oppose class certification, and had a motion to decertify pending at the time of settlement. Reese Final Approval Decl. at ¶ 19. *See In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998) (possibility that defendant would challenge maintenance of class in absence of settlement was risk to class and potential recovery). Indeed, even with a certified class,

the certification is not set in stone. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Given the risks, this factor weighs in favor of final approval, under both *Grinnell* and Rule 23(e)(2)(C)(i).

### f. *The ability of Defendants to withstand a greater judgment.*

It is more important that the Settlement Class receive some relief than possibly "yet more" relief. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012); *see also Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 83 (1st Cir. 2015) ("The fact that a better deal for Class Members is imaginable does not mean that such a deal would have been attainable in these negotiations, or that the deal that was actually obtained is not within the range of reasonable outcomes."). Further, "[c]ourts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Products Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (citations omitted). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014). For these reasons, this factor is neutral.

### g. *The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation*

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]"*Visa*, 396 F.3d at 119. "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and in light of all the attendant risks of litigation. *See* Reese Final Approval Decl. at ¶ 21. The gravamen of the Actions is that Defendants allegedly were deceiving consumers by misrepresenting the source of their Products' vanilla flavor. The cash compensation, to which eligible Settlement Class Members will be entitled, goes a significant way toward compensating Settlement Class Members for the damages they incurred on account of Defendants' alleged deceptive representations about the Products. Defendants charged a premium over its competitors of up to 28% per product, which equates to up to a $2.10 price premium. *See* Declaration and Expert Report of J. Michael Dennis, Ph.D., dated October 13, 2021, ECF No. 98-3, at 343-546. The Settlement Agreement provides that Settlement Class Members shall receive a minimum cash payment of $5.50, and then $0.50 for each product thereafter for which proof of purchase has been provided, up to $25.00. Reese Final Approval Decl. at ¶ 20. Thus, Settlement Class Members will receive near full compensation for their injuries. *Id.*

As discussed above, although Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Reese Final Approval Decl. at ¶ 21. While continuation of the litigation might not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure by both Parties. *Id.* Considering the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness." Class Counsel have achieved the best possible recovery considering the merits of the Settlement, weighed against the cost and risks of further litigation. *Id.*

Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement Agreement is fair, adequate, and reasonable. As such, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

### 2. The Remaining Rule 23(e)(2)(C) & (D) Factors Weigh in Favor of Approval of the Settlement.

As discussed in detail in the Finnegan Notice Declaration, the notice plan is designed to provide a 76% reach with 4 times frequency, which meets the standards set by the Federal Judicial Center. *See* Finnegan Notice Declaration at ¶ 4. Class Members can submit claims via the settlement website or request a claim form via the website or toll-free hotline. Fenwick Notice Declaration at ¶ 4. As such, Rule 23(e)(2)(C)(ii) factor weighs in favor of the settlement.

The total value of the settlement represents $15,000,000 for the benefit to Class Members. The present request for payment of fees and reimbursement of expenses is $3,225,000, which Defendants have agreed not to oppose. Of this amount, $306,766.[50] are for expenses. Reese Final Approval Decl. at ¶ 24. Accordingly, the request for payment of fees to Class Counsel is for $2,918,233.[50], which represents 19.5 % of the Settlement Amount. That amount is well within the range awarded in this Circuit. *See. e.g., Mendez v. MCSS Rest. Corp.*, 2022 WL 3704591, at *9 (E.D.N.Y. Aug. 26, 2022) ("Class Counsel's fee request of one-third (33.33%) of the Settlement Fund is 'reasonable and consistent with the norms of class litigation in this circuit…and should be awarded on the basis of the total funds made available.'") (collecting cases); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Torres v. Gristede's Operating Corp.,* 519 F. App'x 1, 3 (2d Cir. 2013) ("Calculated on the basis of the total funds made available —i.e., as if it were a common settlement fund—the $3.86 million total award of costs and fees here represents 52.2% of the entire $7.39

million recovered by plaintiffs… Such an award does not constitute an abuse of discretion simply because it deviates materially from the percentage usually awarded in similar cases."). The Rule 23(e)(2)(C)(iii) factor weighs in favor of the Settlement.

Other than the Settlement Agreement and the agreement on payment of Class Counsel's fees and expenses (which was not reached until August 17, 2023)(*See* ECF No. 123), there are no other agreements amongst the parties. The Rule 23(e)(2)(C)(iv) factor weighs in favor of the Settlement.

Finally, all Class Members are eligible to receive the same relief, namely, a minimum of $5.50 and up to $25.00 (depending on the amount of proof of purchased provided by the claimant). All Class Members are treated equally. Thus, the Rule 23(e)(2)(D) factor weighs in favor of settlement. Moreover, the Second Circuit recently held that service awards such as that requested here "treat differently situated class representatives equitably relative to the class members who simply sit back until they are alerted to a settlement." *Moses,* 2023 WL 5281138, at *13 ("We decline to depart from Rule 23's mandate, which permits fair and appropriate incentive awards.").

## II. The Court Should Certify the Settlement Class.

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 619–22 (1997). As Plaintiffs set forth below, the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3). Consequently, Plaintiffs respectfully ask the Court to certify the Settlement Class for settlement purposes.

### A. The Settlement Class Meets All Prerequisites of Rule 23(a).

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. Fed. R. Civ. P. 23(a). The Settlement Class meets each prerequisite and, as a result, satisfies Rule 23(a).

### 1. Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that thousands of people nationwide purchased the Products during the Class Period. Indeed, to date more than 200,000 claims have been submitted. Reese Final Approval Decl. at ¶ 22. Numerosity is easily satisfied.

### 2. Commonality

Under Rule 23(a)(2), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). Commonality requires that the proposed Class Members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]"*Id.* (citation, quotation marks, and internal edits omitted). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only show that their injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation, including but not limited to whether Defendants deceived consumers about the source of the vanilla flavor in the Products because the vanilla flavor came from an artificial source—ethyl vanillin—and not aged vanilla. Resolution of this common question requires evaluation of the merits under an objective standard, *i.e.*, the "reasonable consumer" test. *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) ("To state a claim for false

advertising or deceptive practices under New York or California law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances"). Thus, commonality is satisfied.

### 3. Typicality

Under Rule 23(a)(3), plaintiffs must show that the proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3). Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (citations omitted).

Here, typicality is met because the same alleged unlawful conduct by Defendants, *i.e.*, their allegedly misleading "Made With Aged Vanilla" claim, was directed at, or affected, both Plaintiffs and the members of the Settlement Class. *Robidoux*, 987 F.2d at 936–37.

### 4. Adequacy of representation

Under Rule 23(a)(4), plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other Class Members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class' representative(s) and its members. *Charron*, 731 F.3d at 249. Here, Plaintiffs possess the same interests as the proposed Settlement Class Members because Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on their purchase of the Products.

With respect to the second requirement, Class Counsel are qualified, experienced, and able to conduct the litigation. Class Counsel are not representing clients with interests at odds with the

interests of the Settlement Class Members and are not acting as class representatives. Reese Final Approval Decl. at ¶¶ 3, 26. Further, they have invested considerable time and resources into the prosecution of the Actions. *Id*. at ¶¶ 6-13. Class Counsel have qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class actions. Reese Final Approval Decl. at ¶ 3, Ex. 1 (Reese LLP firm resume); Declaration of Spencer Sheehan in Support of Final Approval ("Sheehan Decl.), Ex. 1 (Sheehan & Associates, P.C. firm resume). "In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 241 F.R.D. 185, 199 n. 99 (S.D.N.Y. 2007).

For the foregoing reasons, Plaintiffs have satisfied the adequacy prerequisite.

### 5. Ascertainability

The Second Circuit has recognized an implied requirement of ascertainability in Rule 23. "'[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries.'" *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2018 WL 3869896, *4 (S.D.N.Y. Aug. 15, 2018) (quoting *In re Petrobras Sec. Litig.*, 862 F.3d 250, 257 (2d Cir. 2017)). Satisfying the ascertainability requirement "does not 'require a showing of administrative feasibility at the class certification stage.'" *Id.* As in *Price*, here the Settlement Class is ascertainable because it "can be determined with reference to one objective criterion with definite boundaries: whether an individual purchased a Product during the class period." *Id.* Ascertainability in this case is met by the class definition.

**B. The Settlement Class Meets All Requirements of Rule 23(b)(3).**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc.*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3). Under that rule, the court must find that "questions of law or fact common to Class Members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Common legal and factual questions predominate in this action.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Id.* at 620. As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart v. Lions Gate Entm't Corp.*, 2015 WL 5945846, at *4 (S.D.N.Y. Oct. 13, 2015) (citation omitted). Furthermore, consumer protection cases readily satisfy the predominance inquiry. *Amchem Prods., Inc.*, 521 U.S. at 625.

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendants' "Made With Aged Vanilla" representation on the Products was misleading and likely to deceive reasonable consumers regarding the source of vanilla flavor of

the Products. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). The Settlement Class meets the predominance requirement for settlement purposes.

**2. A class action is the superior means to adjudicate Plaintiffs' claims.**

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for numerous reasons. First, "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661. Additionally, a class action is superior here because "it will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser*, 2014 WL 4816134, at *3. As a result of the allegedly false and misleading labeling, the Products were sold at a premium price. The cost to purchase any of the Products is less than $20. Thus, the potential recovery for any individual Settlement Class Member is relatively small. As a result, the expense and burden of litigation made it virtually impossible for Settlement Class Members to seek redress on an individual basis. By contrast, in a class action, the cost of litigation is spread across the entire class, thereby making litigation viable. *See, e.g.*, *Tart*, 2015 WL 5945846, at *5. "Employing the class device here will not only achieve economies of scale for Class Members but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser*, 2014 WL 4816134, at *3. For all the foregoing reasons, a class action is superior to individual suits.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court should finally certify the Settlement Class.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a Final Approval Order certifying the proposed Settlement Class and granting final approval of the Settlement.

Date:  August 18, 2023

Respectfully submitted,

By: */s/ Michael R. Reese*

**REESE LLP**
Michael R. Reese
Sue J. Nam
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
*mreese@reesellp.com*
*snam@reesellp.com*

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
60 Cuttermill Rd, Ste 409
Great Neck, New York 11021
Telephone: (516) 303-0552
*spencer@spencersheehan.com*

*Court-Appointed Co-Lead Class Counsel*