**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LASHAWN SHARPE, JIM CASTORO, and
STEVE DAILEY, individually and on behalf
of all others similarly situated,

       Plaintiffs,

       v.

A & W CONCENTRATE COMPANY and
KEURIG DR PEPPER,

       Defendant.

Case No. 1:19-cv-00768-BMC

THEODORE H. FRANK,

       Objector.

# AMENDED OBJECTION OF THEODORE H. FRANK
## TO PROPOSED CLASS ACTION SETTLEMENT
## AND TO ATTORNEYS' FEE REQUEST

Anna St. John
HAMILTON LINCOLN LAW INSTITUTE
 CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (917) 327-2392
Email:  anna.stjohn@hlli.org

*Attorney for Objector Theodore H. Frank*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ................................................................................................................1

ARGUMENT .........................................................................................................................2

I.  Objector Frank is a member of the Settlement Class. ................................................2

II.  A court owes a fiduciary duty to unnamed class members. .......................................3

III.  The proposed settlement violates Rule 23(e) by disproportionately benefitting class counsel
vis-à-vis the class's actual recovery. ...........................................................................4

    A.  Under Rule 23(e)(2)(C) courts look to the ratio of fees to actual class recovery to
determine settlement fairness. ...........................................................................5

    B.  Class counsel negotiated a disproportionate share of the settlement for themselves.10

    C.  Class counsel has negotiated the red-carpet treatment of a clear-sailing clause. .........13

    D.  Class counsel negotiated a segregated fund that insulates their fee from scrutiny and
unfairly prevents the class from recovering any reduction. ............................................14

IV.  Even if the Court grants settlement approval, it should decline to grant the $3.2m attorneys'
award requested. ..........................................................................................................17

    A. The fee motion is procedurally defective. ...........................................................17

    B.  The fee request is substantively excessive. ..........................................................19

CONCLUSION ....................................................................................................................20

# TABLE OF AUTHORITIES

Cases

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 216 (2d Cir. 1987)................................................................... 4, 18

*Alaska Electrical Pension Fund v. Bank of Am. Corp.*,
   2018 WL 6250657, 2018 U.S. Dist. LEXIS 202526 (S.D.N.Y. Nov. 29, 2018)...................... 13

*Allen v. Similasan*,
   318 F.R.D. 423, 428 (S.D. Cal. 2016) ................................................... 4

*In re Apple Inc. Device Performance Litig.*,
   No. 18-MD-2827 (N.D. Cal. Dec. 11, 2020) ........................................... 7

*Ark. Fed. Credit Union v. Hudson's Bay Co.*,
   2021 U.S. Dist. LEXIS 136943 (S.D.N.Y. Jul. 22, 2021) ........................... 2

*Arkin v. Pressman, Inc.*,
   38 F.4th 1001 (11th Cir. 2022) .......................................................... 10

*In re Baby Prods. Litig.*,
   708 F.3d 163 (3d Cir. 2013)................................................. 1, 5, 6, 8, 12, 20

*Bell v. Consumer Cellular, Inc.*,
   2016 U.S. Dist. LEXIS 71416 (D. Or. May 31, 2016) ........................... 18

*Berni v. Barilla S.P.A.*,
   964 F.3d 141 (2d Cir. 2020)............................................................... 2

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935, 947 (9th Cir. 2011) ............................................. 10, 16. 17

*Bodon v. Domino's Pizza, LLC*,
   No. 09-CV-2941, 2015 WL 3889577 (E.D.N.Y. 2015) ........................... 10

*Boeing v. Van Gemert*,
   444 U.S. 472 (1980).......................................................................... 9

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ................................................. 2, 5, 7, 10, 15

*Brown v. Rita's Water Ice Franchise Co. LLC*,
   2017 U.S. Dist. LEXIS 149602 (E.D. Pa. Sept. 14, 2017) ...................... 8

*Brown v. Sega Amusements, U.S.A., Inc.*,
2015 WL 1062409, 2015 U.S. Dist. LEXIS 28442 (S.D.N.Y. Mar. 9, 2015) ........................ 12

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
2016 WL 4474366, 2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug., 25, 2016) .................... 8

*Cassese v. Williams*,
503 Fed. App'x 55 (2012) ................................................................................................. 18

*Claridge v. North American Power & Gas, LLC*,
2017 WL 3638455, 2017 U.S. Dist. LEXIS 135215 (S.D.N.Y. Aug. 23, 2017) ..................... 4

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*,
418 F.3d 277 (3d Cir. 2005) .............................................................................................. 16

*Cowen v. Lenny & Larry's Inc.*,
No. 17-CV-1530 (N.D. Ill. Apr. 2, 2019) ............................................................................. 7

*Cunningham v. Suds Pizza, Inc.*,
290 F. Supp. 3d. 214 (W.D.N.Y. 2017) ........................................................................... 9, 12

*Dennis v. Kellogg*,
697 F.3d 858 (9th Cir. 2012) ............................................................................................. 11

*In re Dry Max Pampers Litig.*,
724 F.3d 713 (6th Cir. 2013) ............................................................... 3, 6, 10, 14, 16, 19

*Espinal v. Victor's Café 2nd St., Inc.*,
No. 16-CV-8057, 2019 WL 5425475 (S.D.N.Y. Oct. 23, 2019) ........................................ 12

*In re Excess Value Ins. Coverage Litig.*,
598 F. Supp. 2d 380 (S.D.N.Y. 2005) ............................................................................... 12

*Fresno County Emples. Ret. Ass'n v. Isaacson*,
925 F.3d 63 (2d Cir. 2019) ............................................................................................... 19

*Gallego v. Northland Grp.*,
814 F.3d 123 (2d Cir. 2016) ....................................................................................... 5, 7, 16

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ....................................................................................... 11, 14, 15

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ....................................................................................... 3, 11, 17

*Graff v. United Collection Bureau, Inc.*,
   132 F. Supp. 3d 470 (E.D.N.Y. Jan. 6, 2023) ........................................................... 4

*Grant v. Bethlehem Steel Corp.*,
   823 F.2d 20 (2d Cir. 1987) ..................................................................................... 3

*Graves v. United Indus. Corp.*,
   2020 WL 953210, 2020 U.S. Dist. LEXIS 33781 (C.D. Cal., Feb. 24, 2020) ........... 8

*Hale v. Manna Pro Prods., LLC*,
   2021 WL 4993036, 2021 U.S. Dist. LEXIS 207828 (E.D. Cal., Oct. 26, 2021) ....... 8

*Hart v. BHH*,
   No. 15-cv-4804, 2020 WL 5645984 (S.D.N.Y. Sep. 22, 2020) ................................ 9

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................. 15

*Hesse v. Godiva Chocolatier*,
   No. 19-cv-972, 2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ................. 9

*Holt v. Foodstate, Inc.*,
   No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) ................ 11

*In re Home Depot Inc., Customer Data Sec. Breach Litig.*,
   931 F.3d 1065 (11th Cir. 2019) ............................................................................ 14

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   2022 U.S. Dist. LEXIS 102805, 2022 WL 2063864 (S.D.N.Y. Jun. 8, 2022) .......... 9

*Int'l Precious Metals Corp. v. Waters*,
   530 U.S. 1223 (2000) ........................................................................................... 13

*Jones v. Monsanto Co.*,
   No. 19-CV-0102 (W.D. Mo., Feb. 25, 2021) ........................................................... 7

*Kaplan v. Rand*,
   192 F.3d 60 (2d Cir. 1999) ..................................................................................... 6

*Karvaly v. eBay Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ............................................................................. 12

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ................................................................................ 17

*Kukorinis v. Walmart,*
  No. 19-cv-20592 (S.D. Fla. Sept. 20, 2021) ........................................................... 11

*Kumar v. Salov N. Am. Corp.,*
  No. 14-CV-2411 (N.D. Cal., May 26, 2017) ...................................................... 8, 11

*Lackawanna v. Tivity Health Support,*
  2019 WL 7195309, 2019 U.S. Dist. LEXIS 148756 (W.D.N.Y. Aug. 29, 2019) ...................... 3

*In re Libor-Based Financial Instruments Antitrust Litig.,*
  2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ....................................................... 12

*In re LifeTime Fitness, Inc TCPA Litig.,*
  847 F.3d 619 (8th Cir. 2017) ...................................................................... 13

*Lightfoot v. District of Columbia,*
  355 F. Supp. 2d 414 (D.D.C. 2005) ................................................................ 18

*Lowery v. Rhapsody Int'l, Inc.,*
  69 F.4th 994 (9th Cir. 2023) ....................................................................... 9

*Malchman v. Davis,*
  761 F.2d 893 (2d Cir. 1985) ................................................................... 11, 14

*Marek v. Molson,*
  No. 21-cv-07174 (N.D. Cal. Jun. 28, 2023) ......................................................... 8

*In re Martin,*
  67 A.3d 1032 (D.C. 2013) .......................................................................... 12

*Masters v. Wilhelmina Model Agency, Inc.,*
  473 F.3d 423 (2d Cir. 2007) ........................................................................ 9

*Ma v. Harmless Harvest, Inc.,*
  2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018) ........................................................... 4

*McCrary v. Elations Co.,*
  2016 WL 777865, 2016 U.S. Dist. LEXIS 24050 (C.D. Cal. Feb. 25, 2016) .......................... 11

*McDaniel v. County of Schenectady,*
  595 F.3d 411 (2d Cir. 2010) ....................................................................... 17

*McKinney-Drobnis v. Oreshack,*
  16 F.4th 594 (9th Cir. 2021) ...................................................................... 13

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ..................................................................... 17, 18

*Moses v. N.Y. Times*,
    __ F.4th __, 2023 WL 5281138, 2023 U.S. App. LEXIS 21530 (2d Cir. 2023) ....... 4, 5, 10, 16

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ............................................................................. 17

*Nguyen v. New Link Genetics Corp.*,
    2021 U.S. Dist. LEXIS 37023, 2021 WL 732254 (S.D.N.Y. Feb. 25, 2021) ............................ 6

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................................. 13

*In re Optical Disk Drive Prod., Antitrust Litig.*,
    No. 10-MD-2143 (N.D. Cal. Oct. 27, 2009) ............................................................. 8

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ..................... 5, 7, 9, 10, 12, 13, 15, 16, 17, 19

*Pettit v. Proctor & Gamble Co.*,
    No. 15-CV-2150 (N.D. Cal., Jul. 17, 2019) ............................................................. 8

*Plummer v. Chem. Bank.*,
    668 F.2d 654, 659 n.4 (2d Cir. 1982) ................................................................ 3, 10

*Rawa v. Monsanto Co.*,
    No. 17-CV-1252 (E.D. Mo., Mar. 3, 2018) ............................................................. 8

*Redman v. RadioShack*,
    768 F.3d 622, 630 (7th Cir. 2014) ..................................... 12, 13, 14, 16, 17, 19

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ............................................................................. 11

*In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.*,
    997 F.3d 1077 (10th Cir. 2021) ................................................................... 10, 13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................................. 16

*Strong v. Bellsouth Tel. Inc.*,
    137 F.3d 844 (5th Cir. 1998) ........................................................................... 9, 17

*Vought v. Bank of Am.*,
    901 F. Supp. 2d 1071 (C.D. Ill. 2012) ................................. 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)). ..................................... 19

*Weinberger v. Great Northern Nekoosa Corp.*,
    925 F.2d 518 (1st Cir. 1991) ................................. 13, 14

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ...................................... 3

*In re Wells Fargo Sec. Litig*,
    157 F.R.D. 467 (N.D. Cal. 1994) ............................... 12

*In re World Trade Ctr. Disaster Site Litig.*,
    754 F.3d 114, 127 n.9 (2d Cir. 2014) ............................ 5


Rules and Statutes

Fed R. Civ. P. 23(e) ................................. 1, 4, 5, 6, 15

Fed R. Civ. P. 23(e)(2) ................................. 16

Fed R. Civ. P. 23(e)(2)(C). ................................. 4, 5

Fed R. Civ. P. 23(e)(2)(C)(ii) ................................. 5, 6, 9

Fed R. Civ. P. 23(e)(2)(C)(iii) ................................. 5, 9

Fed R. Civ. P. 23(h) ................................. 1, 2, 15, 17, 18, 20

L. Civ. R. 6.1(b) ................................. 18

Local Civ. 23-1 ................................. 1


Other Authorities

Advisory Committee Notes on 2018 Amendments to Rule 23(e) ................................. 6

Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ................................. 20

American Law Institute, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.05 (2010) ... 10

Brickman, Lester
   LAWYER BARONS (2011).................................................................................. 16

Burch, Elizabeth Chamblee
   *Publicly Funded Objectors,*
   19 THEORETICAL INQUIRIES IN LAW 47 (2018) ....................................... 2

Erichson, Howard
   *Aggregation as Disempowerment,*
   92 NOTRE DAME L. REV. 859 (2016) ................................................. 4, 5

Estes, Andrea,
   *Critics hit law firms' bills after class-action lawsuits,*
   BOSTON GLOBE (Dec. 17, 2017) ........................................................ 3

Eisenberg, Theodore & Miller, Geoffrey P.
   *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008,*
   7 J. OF EMPIRICAL LEGAL STUD. 248 (2010) ....................................... 20

Fitzpatrick, Brian T.
   *An Empirical Study of Class Action Settlements and their Fee Awards,*
   7 J. OF EMPIRICAL LEGAL STUD. 811 (2010) ....................................... 20

Greene, Jenna
   *Why Edelson made a (catchy) video about class-action claims rates,*
   Reuters (Apr. 7, 2022) ........................................................................ 5

Henderson, William D.
   *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements,*
   77 TUL. L. REV. 813 (2003) ............................................................. 14

Manual for Complex Litigation (Fourth) § 21.7 (2004) ........................... 15

Rubenstein, William B.
   3 NEWBERG ON CLASS ACTIONS § 8:24 (5th ed. 2014)........................ 18

Silver, Charles,
   *Due Process and the Lodestar Method: You Can't Get There From Here,*
   74 TUL. L. REV. 1809, 1839 (2000) ............................................ 16, 19

# INTRODUCTION

This Court now confronts a classic question of fiction versus reality. The settling parties would have this Court reflexively adopt the notion that this settlement provides a $15 million benefit to class members. Objector Theodore H. Frank instead asks this Court to the take the realistic approach required by Fed. R. Civ. P. 23(e) and Second Circuit case law, and to recognize what the class will actually receive from this settlement—perhaps $2 million, and that much only if most of the claims submitted are ultimately validated. Using a claims-made process, the settlement creates the illusion of class relief. Calling the class relief $15 million, in reality, the class will recover about $2 million, while class attorneys claim over 50% of the actual settlement benefit—$3.2 million, thus making themselves the "foremost beneficiaries" of the settlement. *In re Baby Products Antitrust Litigation.*, 708 F.3d 163, 179 (3d Cir. 2013) ("*Baby Prods.*"). Rule 23(e) forbids this.

It would therefore be error to approve the settlement. A settlement can be large or small, and the settling parties could certainly reach an arm's-length agreement that A&W's total settlement liability will only be about $5 million. But they are not entitled under the law to allocate recovery so that class counsel collects the majority of those proceeds.

In the alternative, the requested fee is both procedurally and substantively defective. Procedurally, plaintiffs violated Fed. R. Civ. P. 23(h) by submitting their fee motion less than two weeks prior to the objection deadline, without information required by Local Civ. R. 23-1 or even summary information about counsel's proffered lodestar. This lack of notice denies class members their due process to consider the requested fee award with complete information sufficiently in advance of the deadlines to object or exclude themselves from the settlement. Substantively, the award is excessive in relation to the benefit to class members.

**ARGUMENT**

**I.      Objector Frank is a member of the Settlement Class.**

Objector Theodore H. Frank is a member of the class because, during the class period (February 7, 2016 through June 2023) he bought several of the A&W class products in this suit labeled as "Made With Aged Vanilla" in the United States for personal consumption and not for resale. *See* Declaration of Theodore H. Frank ¶ 6. Frank is not within any of the classes of persons excluded from the settlement. *Id.* He is therefore a member of the class with standing to object to the settlement. Fed. R. Civ. P. 23(e)(5). Frank is the Director of Litigation at the Hamilton Lincoln Law Institute. His business address is Hamilton Lincoln Law Institute, 1629 K St. NW, Suite 300, Washington, DC 20006; his telephone number is (703) 203-3848; his email address is ted.frank@hlli.org. *Id.* at ¶ 2.

Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF") represents class members *pro bono* in class actions when class counsel employ unfair class action procedures to benefit themselves at the expense of the class. *See, e.g.*, *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) (sustaining CCAF's objection to improper class settlement approval); *Berni v. Barilla S.P.A.*, 964 F.3d 141 (2d Cir. 2020) (same; class certification); *Ma v. Harmless Harvest, Inc.*, 2018 WL 1702740, at *4 (E.D.N.Y. Mar. 31, 2018) (same); *see generally* Frank Decl. ¶¶ 13-20. CCAF has "develop[ed] the expertise to spot problematic settlement provisions and attorneys' fees." Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 55-57 & n.37 (2018).

The settlement agreement demands, among other things, that objectors list all cases in which they or their attorney have filed an objection to any proposed class action settlement within the last five years. Settlement, DE 119, ¶ 6.7. Frank objects to this requirement as irrelevant to the matter at hand, and constituting an unreasonable burden on the Rule 23(e) right of objection. *See Ark. Fed. Credit Union v. Hudson's Bay Co.,* 2021 U.S. Dist. LEXIS 136943, at *8 (S.D.N.Y. Jul. 22, 2021) (expunging these requirements as "needlessly frustrat[ing] and discourag[ing] objections to the settlement, with no countervailing benefits to the Court or the class."). It is "designed to

2

discourage objections." *Lackawanna v. Tivity Health Support*, 2019 WL 7195309, 2019 U.S. Dist. LEXIS 148756, at *14 (W.D.N.Y. Aug. 29, 2019). Nonetheless, under the improper threat of striking the objection, *see Weinberger v. Kendrick*, 698 F.2d 61, 69 n.10 (2d Cir. 1982), Frank has compiled the requested list. *See* Frank Decl. ¶ 21.

CCAF has recouped more than $200 million for class members by driving settling parties to reach an improved bargain or by reducing outsized fee awards. See Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*, Boston Globe (Dec. 17, 2017) (more than $100 million at time). CCAF has never withdrawn an objection in exchange for payment and is funded entirely through charitable donations and court-awarded attorneys' fees. Frank Decl. ¶ 19. Frank brings this objection through CCAF in good faith to protect the interests of the class. Frank Decl. ¶ 8. HLLI attorney Anna St. John, will appear on Frank's behalf at the Fairness Hearing, scheduled for October 19, 2023. Frank reserves the right to make use of all documents entered on to the docket. His objection applies to the entire class; he adopts any objections not inconsistent with this one.

## II. A court owes a fiduciary duty to unnamed class members.

"Class action settlements are different." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike in bilateral settlements, in class actions "there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.* Therefore, the district court assumes a "fiduciary responsibility to the silent class members," *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987), acting with "a jealous regard" for the rights and interests of such absentees. *Goldberger v. Integrated Res.*, 209 F.3d 43, 53 (2d Cir. 2000). The representatives assume a direct fiduciary obligation to the class, and the Court, through its oversight responsibility, assumes a derivative fiduciary obligation to the class. *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982).

"The concern is not necessarily in isolating instances of major abuse, but rather is for those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by

the attorney's interests." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987) (internal quotation omitted). The Court's oversight role thus does not end at making sure that the parties engaged in arms'-length settlement negotiations. At the settlement stage of a class action, "the adversarial process—or…'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717. That a mediator helped to ensure collusion-free negotiations thus is insufficient to ensure settlement fairness. The proponents bear the burden to demonstrate the settlement is fair, reasonable, and adequate under Rule 23; there is no "presumption of fairness" for arms'-length agreements. *Moses v. N.Y. Times*, __ F.4th __, 2023 WL 5281138, 2023 U.S. App. LEXIS 21530, at *11-12 (2d Cir. 2023); *Ma*, 2018 WL 1702740, at *4. And because the settlement was reached before certification of the putative nationwide class, a heightened standard of scrutiny applies. *E.g., Payment Card*, 827 F.3d at 235-36.

The settling parties may argue that no heightened scrutiny is warranted because this Court previously certified a New York-only class. DE 82. Any such argument is backwards; the expansion of the class at the time of settlement, done for the purpose of providing global peace to the defendant at no cost to class counsel, is itself a red flag that demands *additional* scrutiny. *Claridge v. North American Power & Gas, LLC*, 2017 WL 3638455, 2017 U.S. Dist. LEXIS 135215 (S.D.N.Y. Aug. 23, 2017) (rejecting attempt to expand from NY state class to nationwide settlement class); *Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 482-83 (E.D.N.Y. Jan. 6, 2023) (same); *Allen v. Similasan*, 318 F.R.D. 423, 428 (S.D. Cal. 2016) (same, CA law); *see generally* Howard Erichson, *Aggregation as Disempowerment*, 92 NOTRE DAME L. REV. 859, 895-97 (2016) (describing expansions of the class at settlement as problematic).

## III.    The proposed settlement violates Rule 23(e) by disproportionately benefitting class counsel vis-à-vis the class's actual recovery.

Courts may approve a proposed settlement only after finding that it is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2). As part of this analysis, the Court must consider "the

effectiveness of any proposed method of distributing relief to the class" and assure itself that the class's recovery is commensurate with "the terms of any proposed award of attorney's fees." Fed R. Civ. P. 23(e)(2)(C)(ii)-(iii); *accord Briseño*, 998 F.3d at 1023-27. "The symbiotic review of proposed relief and attorneys' fees aligns with the [Second Circuit's] express goal of…prevent[ing] unwarranted windfalls for attorneys." *Moses*, 2023 U.S. App. LEXIS 21530, at *15 (simplified).

Courts thus have a duty to avoid the overcompensation of attorneys in relation to the under-compensation of class members. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 n.9 (2d Cir. 2014). "Claims-made" settlements such as this one—where class members must submit a claims form to obtain compensation—are notorious for lopsided results. Courts and legal scholars alike have criticized the abuse of claims-made settlements to inflate attorneys' fees and simultaneously deflate defendants' obligations to class members. *E.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (reversing approval of an attorney-centric "selfish" claims made settlement); *Briseño*, 998 F.3d 1014 (same); Erichson, *supra*, 92 Notre Dame L. Rev. at 892-83 (citing, *inter alia*, *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ("*Baby Prods.*")). A prominent class action firm even produced a music video about the notorious phenomenon last year. *See* Jenna Greene, *Why Edelson made a (catchy) music video about class-action claims rates*, Reuters (Apr. 7, 2022), https://www.reuters.com/legal/litigation/why-edelson-made-catchy-music-video-about-class-action-claims-rates-2022-04-07/.

A claims-made process is not *per se* unreasonable; however, it raises a red flag calling for scrutiny of a potential misallocation of settlement funds. Class members are simply not "best served" by low-value claims made settlements, characterized by "mass indifference," that provide defendants a blanket release of all class members' claims whether or not they submit a claim. *Gallego v. Northland Grp., Inc.*, 814 F.3d 123, 129-30 (2d Cir. 2016).

### A. Under Rule 23(e)(2)(C) courts look to the ratio of fees to actual class recovery to determine settlement fairness.

Rule 23(e) explicitly requires evaluation of a claims-made settlement by the objective

standard of the "effectiveness" of the distribution—what the class actually gets. Fed. R. Civ. P. 23(e)(2)(C)(ii). Settling parties attempting to maximize attorneys' fees while minimizing a defendant's expense favor claims-made arrangements that provide the illusion—without the reality—of value. Here we see such a "claims-made" setup: plaintiffs depict a $15 million settlement "value" based on A&W's maximum hypothetical payment under the settlement. *See, e.g.,* DE 124-1 at 22; DE 125-1 at 11. While class counsel's $3.22 million negotiated attorney request amounts to 21% of the $15 million that A&W "made available" for settlement, the $15 million figure is a mirage. The expected payout to the class will likely be closer to $2.2 million after the claims are totaled and validated. *See* Section III.B below. The $3.22 million fee and expense request thus will almost certainly result in more than 50% of the settlement payment going to the lawyers rather than the class. The "made available" approach exalts fiction over reality, even though cases—especially class action cases that determine the rights of millions of consumers— "are better decided on reality than on fiction." *Pampers*, 724 F.3d at 721 (internal quotation omitted). This approach neglects actual distribution to the class in favor of the attorneys' self-interest in exaggerating recovery in order to rationalize their fee request. But class counsel ought not earn fees from generating "illusory" benefits or "superficial accomplishments." *Kaplan v. Rand*, 192 F.3d 60, 71-72 (2d Cir. 1999). It cannot stand under Rule 23(e). *See* 2018 Advisory Committee Notes on Rule 23(e).

To review the effectiveness of the claims process and fairness of the proposed attorneys' fee allocation, the Court must "affirmatively seek out" an accounting of the claims process if the parties have not supplied it. *Baby Prods.*, 708 F.3d at 174; *see also Nguyen v. New Link Genetics Corp.,* 2021 U.S. Dist. LEXIS 37023, *4, 2021 WL 732254 (S.D.N.Y. Feb. 25, 2021) (ordering claims administrator to provide claims report prior to final approval hearing). Unfortunately, the settlement's claims schedule precludes the necessary review. It sets the claims deadline thirty days *after* the initially-scheduled date of the fairness hearing. Settlement ¶ 2.10. Though the Court's one month continuance of the fairness hearing date now means that the claims deadline will precede the fairness hearing by one day, that does not resolve the issue. Even if the plaintiffs submit

the claims data on the record the morning of the hearing, those numbers would have little value without the administrator conducting any review for fraudulent, duplicative, or otherwise invalid claims. *See also* Settlement (DE 119) ¶ 3.2 (discussing the audit rights of the parties and claims administrator). The *effectiveness* of the claims process—the extent to which it achieves that result—cannot be judged when the court lacks basic but significant information, such as how many class members have filed valid claims.

Valid claims data is indispensable in claims-made settlements, such as this one, because class members are required to take an affirmative act, such as filing a claim or providing proof of purchase, in order to obtain relief. And the claims rates in low-value consumer class settlements with a claims-made structure are "notoriously low." *Briseño*, 998 F.3d at 1020 (claims rate of "barely more than one-half of one percent"); *Pearson*, 772 F.3d at 782 (claims rate of one-quarter of one percent); *cf. Gallego*, 814 F.3d at 129 ("[A]n expected low participation rate is hardly a selling point for a proposed classwide settlement.").

Raw submission data is not enough. A list of typical claims-made cases illustrates that a significant percentage of the submitted claims will ultimately be invalid.

| Case | Submitted Claims | Invalid Claims | Invalid Claims % |
|---|---|---|---|
| *Apple Device*[1] | 3,149,072 | 890,374 | 28.2% |
| *Lenny & Larry's Inc.*[2] | 90,677 | 24,030 | 26.5% |
| *Jones v. Monsanto*[3] | 285,399 | 43,087 | 15.1% |

---

[1] Joint Status Report ISO Final Settlement Approval, *In re Apple Inc. Device Performance Litig.*, No. 18-MD-2827, Dkt. 592 (N.D. Cal. Dec. 11, 2020). The number of claims validated was prior to deduplication, so the total number of disallowed claims was greater than 890,374. CCAF represented an objector in this case.

[2] Decl. of Cameron R. Azari, *Cowen v. Lenny & Larry's Inc.*, No. 17-CV-1530, Dkt. 110-3 (N.D. Ill. Apr. 2, 2019). CCAF represented an objector in this case.

[3] Decl. of Brandon Schwartz, *Jones v. Monsanto Co.*, No. 19-CV-0102, Dkt. 65-2 (W.D. Mo., Feb. 25, 2021). CCAF represented an objector in this case.

| | | | |
|---|---|---|---|
| *Salov N. Am. Corp.*[4] | 65,048 | 12,018 | 18.5% |
| *Proctor & Gamble*[5] | 187,860 | 50,792 | 27.0% |
| *United Indus. Corp.*[6] | 84,572 | 16,605 | 19.6% |
| *Manna Pro Prods.*[7] | 3,891 | 3,420 | 87.9% |
| *Rawa v. Monsanto Co.*[8] | 93,702 | 16,382 | 17.4% |
| *Optical Disk Drive*[9] | 561,254 | 99,408 | 17.7% |
| *Carrier IQ*[10] | 57,266 | 17,808 | 31.1% |
| *Marek v. Molson*[11] | 2,511,705 | 1,924,176 | 76.6% |
| *Rita's Water Ice*[12] | 28,523 | 18,359 | 64.4% |

Absent valid claims information, this Court could unwittingly approve a settlement releasing the defendant from class members' damages claims with 99% of class members receiving nothing in exchange. "Making these findings may also require a court to withhold final approval of a settlement until the actual distribution of funds can be estimated with reasonable accuracy." *Baby Prods.*, 708 F.3d at 174. Therefore, because the Court cannot evaluate the effectiveness of

---

[4] Supp. Decl. of Jeanne C. Finegan, *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411, Dkt. 164 (N.D. Cal., May 26, 2017). CCAF represented an objector in this case.

[5] Declaration of Jonathon Shaffer, *Pettit v. Proctor & Gamble Co.*, No. 15-CV-2150, Dkt. 139 (N.D. Cal., Jul. 17, 2019).

[6] *Graves v. United Indus. Corp.*, 2020 WL 953210, 2020 U.S. Dist. LEXIS 33781 at *11 (C.D. Cal., Feb. 24, 2020).

[7] *Hale v. Manna Pro Prods., LLC*, 2021 WL 4993036, 2021 U.S. Dist. LEXIS 207828 at *7-8 (E.D. Cal., Oct. 26, 2021). The number of claims submitted was 3,891, but only 471 eventually were validated.

[8] Mem. ISO Pls.' Mot. for Final Approval, *Rawa v. Monsanto Co.*, No. 17-CV-1252, Dkt. 42-1 (E.D. Mo., Mar. 3, 2018).

[9] Status Update Regarding Claims Distribution, *In re Optical Disk Drive Prod., Antitrust Litig.*, No. 10-MD-2143, Dkt. 3072 (N.D. Cal. Oct. 27, 2009).

[10] *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, 2016 U.S. Dist. LEXIS 114235 at *27-28 (N.D. Cal. Aug., 25, 2016).

[11] Declaration of Steven Weisbrot, *Marek v. Molson*, No. 21-cv-07174, DE 70-1 at 5 (N.D. Cal. Jun. 28, 2023).

[12] *Brown v. Rita's Water Ice Franchise Co. LLC*, 2017 U.S. Dist. LEXIS 149602 at *8 (E.D. Pa. Sept. 14, 2017).

the settlement—the degree to which it succeeds at actually distributing relief to class members—when the claims data is unknown at the fairness hearing, the settlement cannot be approved as fair.

Relying on *Boeing v. Van Gemert*, 444 U.S. 472 (1980), and district court authority, plaintiffs ask this court to use the full $15 million "made available" as the yardstick to assess settlement and fee fairness. DE 124-1 at 22; DE 125-1 at 10. Frank acknowledges that some district courts have erroneously counted unclaimed amounts as settlement value. But these cases rely on reasoning from *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007), that (1) predates the 2018 Amendments adding Rule 23(e)(2)(C)(ii)-(iii), (2) arises in a different context (involving *cy pres* rather than a reversion to defendant), and (3) simply does not follow from *Boeing*. *Boeing* has no application to a claims-made settlement with "no fund," "no litigated judgment" and "no reasonable expectation . . . that more members of the class would submit claims than did." *Pearson*, 772 F.3d at 782. If *Boeing* applies to settlements at all, it only applies to a traditional common fund where a defendant is liable for a "sum certain," not a claims-made settlement where the parties establish no fund, only an hypothetical cap. *Lowery v. Rhapsody Int'l, Inc.*, 69 F.4th 994, 1001 (9th Cir. 2023); *accord Strong v. Bellsouth Tel. Inc.*, 137 F.3d 844, 852 (5th Cir. 1998). *Boeing* itself recognizes this distinction. *Boeing*, 444 U.S. 472, 479 n.5 (1980) (reserving decision on whether its common-fund analysis applies to claims-made scenarios).

*Masters* is "premised on the existence of a common fund that included unclaimed portions to be distributed through the application of the *cy pres* doctrine." *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, 2022 U.S. Dist. LEXIS 102805, 2022 WL 2063864, at *14 (S.D.N.Y. Jun. 8, 2022). "*Masters* stands for the proposition that the denominator [for a percentage of recovery calculation] should be the benefit inured to the class. Funds reverted to the defendant provide no benefit to the class." *Hart v. BHH*, 2020 U.S. Dist. LEXIS 173634, 2020 WL 5645984, at *8 (S.D.N.Y. Sep. 22, 2020). Thus, even without the 2018 amendments, if a settlement contemplates only a cap, and never establishes a fund that leaves the pocket of the defendant, attorneys' fees should be based only on the amount actually paid to the class. *Id.*; *Hudson's Bay*, 2022 WL 2063864, at *14; *Hesse v. Godiva Chocolatier*, No. 19-cv-972, 2022 U.S. Dist. LEXIS

72641, *34 (S.D.N.Y. Apr. 20, 2022); *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d. 214, 224 (W.D.N.Y. 2017); *Bodon v. Domino's Pizza, LLC*, 2015 U.S. Dist. LEXIS 82039, 2015 WL 3889577, at *5 (E.D.N.Y. Jun. 4, 2015). Because the settlement here establishes no fund, to the extent that *Masters* survives the 2018 amendments, it does not support the "made available" approach here. Under Rule 23, courts must look to what the class actually receives. *See, e.g.*, *Briseño*, 998 F.3d at 1026; *Moses*, 2023 U.S. App. LEXIS 21530; *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1094 (10th Cir. 2021); *Pearson*, 772 F.3d at 781-82.

That the settling parties have chosen to propose their settlement in this Court, rather than in *Dailey*, raises the specter of forum shopping to avoid *Briseño*'s clear rule of decision that Rule 23(e) requires courts to examine the amount the class actually receives in comparison to the amount the attorneys receive. *See Arkin v. Pressman, Inc.*, 38 F.4th 1001, 1011-12 (11th Cir. 2022) (criticizing counsel for "subordinating interests of the class" through forum shopping action to avoid scrutiny of settlement fairness and fee reasonableness). As it turns out, the standards for assessing the proposed settlement remain the same in this Circuit as in the Ninth: it is the real recovery that matters, not the fictional.

**B. Class counsel negotiated a disproportionate share of the settlement for themselves.**

The most common settlement defect is one of allocation. Because of defendants' indifference to how the total amount that they pay is allocated among class payment, attorneys' fees, and costs, adversarial negotiation does not ensure that class relief is appropriately "commensurate with [the] fee award." *Pampers*, 724 F.3d at 720. Thus, the first sign of preferential treatment is "when counsel receive a disproportionate distribution of the settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *accord* American Law Institute, Principles of the Law of Aggregate Litigation § 3.05, cmt. b at 208 (2010); *cf. also Plummer*, 668 F.2d at 660 (affirming rejection of settlement due to "preferential treatment" afforded the named plaintiffs).

Compared to the real benefits to class members, the $3.22 million negotiated attorney award is disproportionate. Slightly less than midway through the claims period, class counsel attest that more than 220,000 class members have made claims. DE 124-2 at 9. Though the declaration does not break down the claims by type, in all likelihood nearly all of the valid claims will fall into the "without proof" bucket. *See McCrary v. Elations Co.*, 2016 WL 777865, 2016 U.S. Dist. LEXIS 24050, at *15 (C.D. Cal. Feb. 25, 2016) (Only 2 of 3,405 claimants submitted proof of purchase); Supplemental Declaration of Jeanne C. Finegan, APR, *Kumar v. Salov N. Am. Corp.*, No. 14-cv-02411, Dkt. 164 ¶4 (N.D. Cal. May 26, 2017) (attesting that only 33 of more than 53,000 valid claims were submitted with proof of purchase); *Holt v. Foodstate, Inc.*, No. 17-cv-00637, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) (99.5% of claimants submitted claims without proof of purchase); *Kukorinis v. Walmart*, No. 19-cv-20592, Dkt. 97 at 16 n.9 (S.D. Fla. Sept. 20, 2021) (0.0012% of claims made were made with proof of purchase). If we assume an ordinary claims trajectory where there is somewhat of a frontloaded return of submissions, they may end with about 440,000 claims by the deadline. At $5.50 per claim that would amount to a total of $2.42m in submissions. Then, if we generously assume that the administrator ultimately validates claims for 90% of that value, the class's actual payout will be $2.17 million.

Combining this $2.17m with the $3.22m attorney award equates to a "constructive common fund" of about $5.4 million. Because "a defendant is interested only in disposing of the total claim asserted against it" and has "little or no interest" in the allocation between class and counsel, an agreement to set fees creates "a constructive common fund" comprising settlement benefits and negotiated fees. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995) ("*GM Trucks*"); *accord Malchman v. Davis*, 761 F.2d 893, 907 (2d Cir. 1985) (Newman, J., concurring); *Goldberger*, 209 F.3d at 52-53. In violation of Rule 23(e)(2)(C)(iii), class counsel's negotiated payment amounts to about 60% of that constructive common fund (using our claims assumptions). Such a result demonstrates the settlement is unfair and cannot be approved. *See, e.g., Dennis v. Kellogg*, 697 F.3d 858, 868 (9th Cir. 2012) (38.9% award would be "clearly excessive"); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1051 (9th

Cir. 2019) (award of 45% of gross cash fund is "disproportionate"); *Cunningham*, 290 F. Supp. 3d at 225 (62.5% is an "unreasonable and improper" "windfall"); *Brown v. Sega Amusements, U.S.A., Inc.*, 2015 WL 1062409, 2015 U.S. Dist. LEXIS 28442 (S.D.N.Y. Mar. 9, 2015) (rejecting settlement where class counsel sought 56% of the proceeds); *Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 n.29 (E.D.N.Y. 2007) (43% "would clearly be excessive"). As a share of recovery, the "norm" in this Circuit is "within a range of 15% to 33%." *Espinal v. Victor's Cafe 52nd St., Inc.*, 2019 WL 5425475, 2019 U.S. Dist. LEXIS 183642, *6 (S.D.N.Y. Oct. 23, 2019). It is "anomalous and unacceptable for counsel to fare better than the Class." *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 390 (S.D.N.Y. 2005). A fee that consumes over half of the recovery breaches not only bounds of Rule 23 reasonableness, but even the more forgiving bounds of professional conduct. *See In re Martin,* 67 A.3d 1032, 1041-42 (D.C. 2013) (collecting cases on ethical restrictions on excessive contingency fees).

Plaintiffs seek to include notice and administration costs (capped at $750,000) in the accounting of class value. DE 125-1 at 10. Again, this view is mistaken; "[t]hose costs are part of the settlement but not part of the value received from the settlement by the members of the class." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014); *Pearson*, 778 F.3d at 781 (similar). Excluding amounts that revert to the defendants and amounts that are paid to the administrator is a natural corollary to *Baby Products*'s reasoning. Just as the class is "not indifferent" as between money that goes to them and money that goes to third-party cy pres beneficiaries, they are likewise not indifferent as between money that goes to them and money that reverts to the defendants or goes to third-party settlement administration companies. *Baby Prods.,* 708 F.3d at 178. "[I]ncentives to minimize expenses and to allocate resources properly go much farther toward cost efficiency than can post hoc judicial review." *In re Wells Fargo Sec. Litig*, 157 F.R.D. 467, 471 (N.D. Cal. 1994). Courts in this Circuit that have considered the question generally conclude that the accounting should be on a net, not a gross, basis. *Seijas v. Republic of Arg.*, 2017 WL 1511352, 2017 U.S. Dist. LEXIS 64398, at *40 (S.D.N.Y. Apr. 27, 2017) ("no justification" for paying fees on expenses); *In re Libor-Based Financial Instruments Antitrust Litig.*, 2018 WL

3863445, at *4 (S.D.N.Y. Aug. 14, 2018) ("awarding fees as a percentage of net recovery is more consistent with notions of public policy in that doing so encourages class counsel's prudence and discretion in incurring expenses—expenses that may not be as closely scrutinized given that there is no single client footing the bill."); *Alaska Electrical Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, 2018 U.S. Dist. LEXIS 202526, at *15 (S.D.N.Y. Nov. 29, 2018) (agreeing with *Libor-Based Financial Instruments*).[13] Regardless though, even if the Court were to include the maximum $750,000 notice costs as a class benefit within the constructive common fund, plaintiffs' negotiated attorney award would still be disproportionate, likely exceeding 50% of the gross benefit.

### C. Class counsel has negotiated the red-carpet treatment of a clear-sailing clause.

In addition to a discrepancy between fees and class benefit, the settlement contains a second telltale indication of an unfair deal: a "clear-sailing" agreement. *See Redman*, 768 F.3d at 637; *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 602 (9th Cir. 2021). A clear-sailing clause stipulates that an attorneys' fees request will not be contested by the defendants. *See* DE 123. "Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery.'" *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) (quoting *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of certiorari)). "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991); *see also Samsung*, 997 F.3d at 1090 (clear-sailing provisions "cut against the general adversarial nature of our legal system"). The clause lays the groundwork for lawyers to "urge a

---

[13] Contrary to *Pearson*, two circuits have explicitly held that district courts *may* include notice and administration expenses in the settlement valuation. *In re LifeTime Fitness, Inc TCPA Litig.*, 847 F.3d 619, 623 (8th Cir. 2017); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015). Even if the Court has discretion over the calculation, the better policy is to exclude costs and expenses from the accounting of class benefit.

class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees" and "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Weinberger*, 925 F.2d at 518, 524-25. It indicates that the class attorneys have negotiated "red-carpet treatment" to protect their fee award while urging class settlement "at a low figure or less than optimal basis." *Pampers*, 724 F.3d at 718 (internal quotation omitted). "It is unlikely that a defendant will gratuitously accede to the plaintiffs' request for a 'clear sailing' clause without obtaining something in return. That something will normally be at the expense of the plaintiff class." *Malchman v. Davis*, 761 F.2d 893, 908 (2d Cir. 1985) (Newman, J., concurring). As such, a clear-sailing clause is a "questionable feature" that "should be subjected to intense critical scrutiny." *Redman*, 768 F.3d at 637; *accord Malchman*, 761 F.2d at 908 (suggesting that "perhaps they should be forbidden in all cases"); *see generally* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (courts should "adopt a per se rule that rejects all settlements that include clear-sailing provisions."). Clear-sailing is the second indication that the deal is skewed in favor of class counsel.

**D. Class counsel negotiated a segregated fund that insulates their fee from scrutiny and unfairly prevents the class from recovering any reduction.**

Class counsel's proposed $3.2 million attorney award is separate and apart from the monetary relief that A&W has agreed to provide class members. Again, a compartmentalized fee structure "is, for practical purposes, a constructive common fund." *GM Trucks*, 55 F.3d at 785. This "constructive common fund" comprises the "sum" of the class's benefit and the "agreed-on fee amount." *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1080 (11th Cir. 2019) (quoting Manual for Complex Litigation (Fourth) § 21.7 (2004)). "[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *GM Trucks*, 55 F.3d at 821. Because the side settlement agreement here contains a $3.2 million cap on fees, the payment to the class and counsel is a "package deal" that effectively reduces "the payment to the class to

account for the expected payment to counsel." *Home Depot*, 931 F.3d at 1092. "In light of these realities" it is "patently meritless" to believe that the separately-paid fee fund does not impact the class members' interests. *GM Trucks*, 55 F.3d at 820.

A segregated fee structure is an inferior settlement structure for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and/or named representative payments. *See Pearson*, 772 F.3d at 786. If A&W "is content to pay [more than $3 million] to class counsel but the court finds the full amount unreasonable, there is no plausible reason why the class should not benefit from the spillover of excessive fees." *Briseño*, 998 F.3d at 1027.

Plaintiffs, however, appear to tout the segregated fee structure as a benefit to the class. DE 125-1 at 8-9 (citing *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). That fundamentally misunderstands the difference in procedural posture between *Hensley* and a class-action settlement. *Hensley* was a fully-litigated case, and the parties then sought to resolve the collateral 42 U.S.C. § 1988 litigation on fee-shifting after judgment. A class is not potentially prejudiced when that happens, because their relief has already been set in stone by an Article III court. In contrast, when plaintiffs settle a class action, there are two major differences. First, class counsel is not just compromising their fee request, but also compromising the relief available to their putative clients, and this leads to an inherent conflict of interest that could lead to self-dealing. *Pearson*, 772 F.3d at 786-87; *Pampers*, 724 F.3d at 717-18; *GM Trucks*, 55 F.3d at 819-20. Second, *Hensley* involved a bilateral negotiation between one set of class counsel and one set of defendants. In contrast, a class action settlement fee request is a multilateral issue where absent class members were never at the table and never had the opportunity to consent to the fee. A fee agreement between two of the parties does not end collateral litigation, because absent class members continue to have the right to object under Rules 23(e) and (h). The only effect of a side agreement is to prejudice the class's rights without the benefit of preventing collateral litigation. *See generally Pearson*, 772 F.3d at 787 (noting conflicts of interest in class litigation, citing cases, and noting benefit of objectors).

Treating the class recovery separate from adjudging the propriety of the fee request is "the opposite of what Rule 23(e)(2) now requires." *Moses*, 2023 U.S. App. LEXIS 21530, at *19. Allocational issues cannot be waived away simply by structuring the settlement to provide "separate" attorneys' fees, rather than as a traditional common fund. *See Gallego*, 814 F.3d 123; *Pampers*, 724 F.3d at 717-18; *Bluetooth*, 654 F.3d at 943. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).

Neither can sequentially negotiating class benefit and fees allay the inherent conflict when representatives negotiate their own compensation, at least unless "fee negotiations [are] postponed until the settlement was judicially approved." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005) (quoting *GM Trucks*, 55 F.3d at 804); *see also Pearson*, 772 F.3d at 786-87 (finding it implausible that separate negotiation could benefit the class). In other words, as long as the defendant willingly foots both bills, there is no way to avoid the "truism that there is no such thing as a free lunch." *Staton*, 327 F.3d at 964.

Ultimately, in conjunction with clear sailing, fee segregation has the self-serving effect of protecting class counsel by deterring scrutiny of the fee request. *See Pearson*, 772 F.3d at 786 (calling it a "gimmick for defeating objectors"). Courts and potential objectors have less incentive to scrutinize a request because the kicker combined with the clear-sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (arguing that reversionary kicker is per se unethical).

Thus, the segregated fee constitutes the third red flag of a lawyer-driven settlement and begets a "strong presumption of . . . invalidity." *Pearson*, 772 F.3d at 787; *accord Redman*, 768 F.3d 637 (segregation is a "defect"); *Bluetooth*, 654 F.3d at 949 (segregation "amplifies the danger" that is "already suggested by a clear-sailing provision"). "The clear sailing provision

reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Bluetooth*, 654 F.3d at 949.

With a constructive common fund structure, if this Court reduces the excessive fee request to 25%, it can do nothing to remit additional value to class members. It is "not enough" simply to lower the fee request. *Pearson*, 772 F.3d at 787. The parties have hamstrung the Court, preventing it from returning the constructive common fund to natural equilibrium. The only solution is denying settlement approval until the parties amend their agreement.

## IV. Even if the Court grants settlement approval, it should decline to grant the $3.2m attorneys' award requested.

"The court's review of the attorneys' fees component of a settlement agreement is… an essential part of its role as guardian of the interests of class members. To properly fulfill its Rule 23(e) duty, the district court must not cursorily approve the attorney's fees provision of a class settlement or delegate that duty to the parties." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998).[14] Courts must perform a "searching assessment regarding attorneys' fees" "in each case." *McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (quoting *Goldberger*, 209 F.3d at 52)

"For the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that courts should avoid awarding 'windfall fess' and that they should likewise avoid every appearance of having done so." *Grinnell I*, 495 F.2d 448, 469. Otherwise, courts risk reifying the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Id.* (quotation omitted).

### A. The fee motion is procedurally defective.

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), and the numerous decisions following it (*Redman*; *Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017); *Johnson*; *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016)) also contain a timing

---

[14] The duty now also arises from Rule 23(h).

component. Class counsel must file their fee application far enough in advance of the objection deadline to allow class members an "adequate opportunity" to review and comment on the full fee motion. *E.g.*, *Mercury*, 618 F.3d at 994. An adequate opportunity means at least that amount of time that an ordinary litigant has to file a response in opposition to a motion—14 days. *See* L. Civ. R. 6.1(b); *Bell v. Consumer Cellular, Inc.,* 2016 U.S. Dist. LEXIS 71416, *11 (D. Or. May 31, 2016) (requiring "at least two weeks").[15]

Class members had no such opportunity here. It was not until August 18, 2023, ten days before the objection deadline, that plaintiffs filed their fee papers or even public notice that they had reached a side agreement with A&W not to oppose their fee request. *See* DE 123, 125. Worse yet, to this day, the FAQ and class notice on the settlement website still misinform class members that "Defendants have reserved their right to oppose Class Counsel's fee application." *See* Frank Decl. ¶ 11. "Inaccurate notice is equivalent to no notice at all." *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 427 (D.D.C. 2005).

Compounding the Rule 23(h) notice violation, the plaintiffs do not disclose how their proposed fee is to be split between the Reese and Sheehan firms (or perhaps even additional firms). This contravenes L. Civ. R. 23.1, which requires the fee motion notice to "include a statement of the names and addresses of the applicants for such fees and the amounts requested respectively" and "disclose any fee sharing agreements with anyone." Local Rule 23.1 effectuates the Second Circuit's command that "in all… class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated." *Agent Orange*, 818 F.2d at 226. Plaintiffs only

---

[15] At least one court requires thirty-five days. *See* N.D. Cal. Procedural Guidance for Class Action Settlements, *available at* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

An unpublished decision of this Circuit, *Cassese v. Williams*, 503 Fed. App'x 55 (2012), declined to follow *Mercury*'s interpretation of Rule 23(h). Since that time, *Cassese* has become an unpersuasive outlier amongst the circuits. A leading treatise explains: "The Ninth Circuit's approach, as adopted by many other circuits, is clearly preferable, both doctrinally and on policy grounds." William B. Rubenstein, 5 NEWBERG ON CLASS ACTIONS § 5:13 (5th ed. 2020).

say that other than the side agreement to provide clear sailing, "there are no other agreements amongst the parties." DE 124-1 at 23. But that doesn't answer the question required by L. Civ. R. 23.1.

Plaintiffs' fee motion is procedurally defective, and should be denied for that reason.

**B.      The fee request is substantively excessive.**

Plaintiffs' fee request is excessive under both the percentage and the lodestar methods. Generally speaking, the lodestar methodology has fallen into disfavor due to its tendency to create a conflict between class counsel and its clients. *See* Silver, 74 TUL. L. REV. at 1812 (observing "solid consensus that the contingent percentage approach minimizes conflicts more efficiently than the lodestar"). Judicial reliance on the lodestar will "create an unanticipated disincentive to early settlements, tempt lawyers to run up their hours, and compel district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005). In contrast, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Id.* at 122 (internal quotation omitted). "[H]ours can't be given controlling weight in determining what share of the class action settlement pot should go to class counsel." *Redman*, 768 F.3d 622, 635. Even a modest request relative to lodestar cannot justify a misallocated settlement. *See Bluetooth*, 654 F.3d at 943 (reversing even though lodestar "substantially exceed[ed]" fee award); *Baby Prods*., 708 F.3d at 180 n.14 (lodestar multiplier of .37 not "outcome determinative"). Lodestar, however, still has an important role to play as a crosscheck, thereby "prevent[ing] unscrupulous counsel from quickly settling a class's claims to cut a check." *Fresno County Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 72 (2d Cir. 2019).

Plaintiffs err by using a faulty denominator for their percentage-of-recovery calculation. Their "potential benefits" methodology is outmoded, "premised upon a fictive world" rather than reality. *Pampers*, 724 F.3d at 721; *accord Pearson*, 772 F.3d at 781 ("The $14.2 million 'benefit' to class members was a fiction . . . ."). A fee award needs to be attuned to the result actually

achieved for the class, to the money the settlement actually puts in class members' hands. *See, e.g., Baby Prods.*, 708 F.3d at 179. The Advisory Committee Notes agree, counseling that the "fundamental focus is the result actually achieved for class members" and advise "defer[ring] some portion of the fee award until actual payouts to the class are known." Notes of Advisory Committee on 2003 Amendments to Rule 23(h). Using the $5.4 estimated constructive common fund discussed above, a typical 25% attorney award[16] would equate to $1.35 million.

## CONCLUSION

For these reasons, the Court should deny final approval of the settlement. If it grants settlement approval; it should not grant the request for attorneys' fees based on the procedural and substantive defects.

Dated: October 3, 2023

/s/ *Anna St. John*
Anna St. John
HAMILTON LINCOLN LAW INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (917) 327-2392
Email:  anna.stjohn@hlli.org

*Attorney for Objector Theodore H. Frank*

---

[16] Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. OF EMPIRICAL LEGAL STUD. 248, 262 (2010) (surveying cases and finding a mean fee in consumer cases of 25%); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. OF EMPIRICAL LEGAL STUD. 811, 833 (2010) (analyzing 688 class action settlements in 2006 and 2007 and finding a mean of 25% and a median of 25.4% for the award of attorneys' fees "with almost no awards more than 35 percent").

I, Theodore H. Frank, am the objector. I sign this written objection drafted by my attorneys with Hamilton Lincoln Law Institute, whom I retained to represent me in this matter.

Dated: October 3, 2023

_____
Theodore H. Frank

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Objection via the CM/ECF system for the Eastern District of New York, thus sending the Objection to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Dated: October 3, 2023                    */s/ Anna St. John*
                                                Anna St. John